MICHAEL KAUFMAN (SBN 254575)
mkaufman@aclu-sc.org
AHILAN T. ARULANANTHAM (SBN 237841)
aarulanantham@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA  90017
Telephone: (213) 977-5232
Facsimile: (213) 977-5297

*Attorneys for Plaintiffs-Petitioners*
(Additional Counsel listed on following page)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XOCHITL HERNANDEZ, CESAR MATIAS, for themselves and on behalf of a class of similarly-situated individuals,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>LORETTA LYNCH, U.S. Attorney General, JUAN P. OSUNA, Director, Executive Office for Immigration Review, JEH JOHNSON, Secretary, Department of Homeland Security, SARAH R. SALDAÑA, Director, Immigration and Customs Enforcement (ICE), DAVID JENNINGS, Field Office Director, Los Angeles Field Office of ICE, JAMES JANECKA, Warden, Adelanto Detention Facility; CHRISTINA HOLLAND, Jail Administrator, Santa Ana City Jail, CARLOS ROJA, Chief, Santa Ana City Department, JON BRIGGS, Captain, Orange County Sheriff's Department (OCSD), MIKE KRUEGER, Captain, OCSD, SANDRA HUTCHENS, Sheriff, Orange County, in their official capacity only,<br><br>Defendants-Respondents. | Case No. 16-620<br><br>**COMPLAINT – CLASS ACTION** |

MICHAEL TAN*
mtan@aclu.org
JUDY RABINOVITZ*
jrabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

STEPHEN KANG (SBN 292280)
skang@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0779
Facsimile: (415) 395-0950

DOUGLAS A. SMITH (SBN 290598)
Douglas.Smith@probonolaw.com
WINSTON P. HSIAO (SBN 273638)
Winston.Hsiao@probonolaw.com
GRAYCE S. FRINK (SBN 279112)
Grayce.Frink@probonolaw.com
DEVON L. HEIN (SBN 287832)
Devon.Hein@probonolaw.com
MATTHEW E. DELGADO (SBN 306999)
Matthew.Delgado@probonolaw.com
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

*Attorneys for Plaintiffs-Petitioners*

* *pro hac vice* or admission application forthcoming

# INTRODUCTION

1. This class action lawsuit challenges the federal government's policy and practice of setting cash bonds for noncitizens in immigration proceedings, without regard to a noncitizen's financial resources, which has resulted in the incarceration of individuals merely because they are poor. As a result of these policies and practices, many noncitizens—including longtime lawful permanent residents and asylum seekers fleeing persecution (including in some cases unlawful imprisonment)—are ordered released on a cash bond but cannot pay it, and remain detained for prolonged periods while their immigration cases are pending. The detention of such individuals is not justified by any valid interest, but rather is based on nothing more than the fact that they are poor or otherwise lack the financial ability to pay their bonds.

2. Plaintiffs-Petitioners Xochitl Hernandez, a mother and grandmother who has resided in the United States for more than twenty-five years, and Cesar Matias, a Honduran national seeking asylum in the United States, are detained under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). Each Plaintiff has been granted release on a money bond pending their immigration removal proceedings. However, Plaintiffs face months or even years in immigration detention because they are unable to pay the bond set by Defendants. Indeed, Mr. Matias has already been detained nearly three-and-a-half years because he cannot afford to pay his bond.

3. Plaintiffs' detentions result from three flaws in the immigration detention process. First, as a matter of policy and practice, immigration officials are not required to consider an immigration detainee's financial ability to pay when setting a money bond. Second, when they do set the bond amount, immigration officials require noncitizens to post the full cash bond amount to be released, instead of permitting noncitizens to post a deposit, property, or other assets as collateral. And third, as a matter of policy and practice, immigration officials are not required to consider whether alternative conditions of supervision (such as electronic monitoring or periodic reporting requirements), alone or in combination with a lower bond amount,

would be sufficient to mitigate flight risk and thus permit the person's release. The result is that the government incarcerates Plaintiffs and others solely because they lack the financial means to post the full bond amount that Defendants have set.

4. Plaintiffs are not alone. On any given day, at least a hundred similarly situated immigration detainees remain detained in this District on money bonds set pursuant to Defendants' policies and practices.

5. Defendants' policies and practices violate the INA; the due process and equal protection guarantees of the Fifth Amendment; and the Eighth Amendment's Excessive Bail Clause. A person's poverty or lack of financial resources should not deprive him of his freedom. Indeed, the federal government has recognized in the criminal bail context that "[i]ncarcerating [criminal defendants] solely because of their inability to pay for their release . . . through the payment of . . . a cash bond . . . violates the Equal Protection Clause . . . ." and that bail systems must "take individual circumstances into account"—including the person's financial ability to pay.[1]

6. The same principles should govern here. The INA and U.S. Constitution require that the government both assess an individual's financial ability to pay when setting bond and determine if alternative forms of bond or other conditions of supervision permit the detainee's release. These basic procedures are necessary to ensure that Plaintiffs and similarly situated individuals are not impermissibly imprisoned based solely on their inability to pay.

## PARTIES

7. Plaintiff-Petitioner Xochitl Hernandez is a native and citizen of Mexico. She is detained at the Adelanto Detention Center in Adelanto, California pending immigration removal proceedings. Ms. Hernandez came to the United States as an

---

[1] Statement of Interest of the United States at 1, 8 (hereinafter "Varden Statement"), *Varden v. City of Clanton*, No. 2:15-cv-00034-MHT (M.D. Ala. filed Feb. 13, 2015) (Dkt. 26) *sub nom. Jones v. The City of Clanton*; *accord* U.S. Dep't of Justice, Dear Colleague Letter, Mar. 14, 2016, at 7-8, *available at* https://www.justice.gov/crt/file/832461/download (stating that "[c]ourts must not employ bail or bond practices that cause indigent defendants to remain incarcerated solely because they cannot afford to pay for their release").

2

adolescent, and has lived in the United States for more than 25 years. Ms. Hernandez is a single mother who has raised five children in the United States, and cares for her four grandchildren. All her children and grandchildren are United States citizens. Prior to her detention, Ms. Hernandez lived with her children and grandchildren, and cooked, cleaned, and cared for her family, including her mother who suffers from a heart condition. More than a decade ago, Ms. Hernandez was convicted for shoplifting, for which she was sentenced to one-day in jail; it is the sole crime for which she has been convicted during her decades in the United States. In March 2016, an immigration judge conducted a bond hearing in Ms. Hernandez's case under Section 1226(a) and set her bond at $60,000. Ms. Hernandez and her family do not have the financial ability to pay this bond. Ms. Hernandez's adult children have no assets, and have to dedicate their limited earnings to rent, food, and other basic necessities. Ms. Hernandez remains detained because of Defendants' policy and practice of failing to consider immigration detainees' financial ability to pay a bond; requiring detainees to post the full cash bond amount to be released; and failing to consider whether release on an alternative form of bond or conditions of supervision would sufficiently address any concerns about flight risk. Ms. Hernandez is eligible for cancellation of removal and for a U-visa (as a victim of domestic violence), but faces the prospect of months or years in detention until her immigration case is resolved.

8. Plaintiff-Petitioner Cesar Matias is a native and citizen of Honduras. Prior to his detention, Mr. Matias resided in Los Angeles and worked as a hair stylist. Mr. Matias has been detained for more than four years at the Santa Ana City Jail in Santa Ana, California pending immigration removal proceedings. A gay man, Mr. Matias is seeking protection in the United States on account of the severe persecution he suffered in Honduras because of his sexual orientation. In November 2012, and again in February 2013, August 2013, and August 2014, Defendants authorized Mr. Matias' release on a $3,000 bond under Section 1226(a). However, Mr. Matias has remained

3

detained because of Defendants' policy and practice of failing to consider immigration detainees' financial ability to pay a bond; requiring detainees to post the full cash bond amount to be released; and failing to consider whether release on an alternative form of bond or conditions of supervision would sufficiently address any concerns about flight risk. Mr. Matias' removal case is pending at the Ninth Circuit Court of Appeals, which has ordered a stay of removal and appointed him pro bono counsel in connection with his appeal. He faces the prospect of months or years of additional detention until his case is resolved.

9. Defendant-Respondent Loretta Lynch is the Attorney General of the United States and the most senior official in the U.S. Department of Justice ("DOJ"). She has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA"). She is named in her official capacity.

10. Defendant-Respondent Juan P. Osuna is the Director of EOIR, the agency within DOJ responsible for the immigration courts and the BIA. He is named in his official capacity.

11. Defendant-Respondent Jeh Johnson is the Secretary of the U.S. Department of Homeland Security ("DHS"), an agency of the United States. Secretary Johnson is a legal custodian of Plaintiff-Petitioners and other members of the proposed class ("Plaintiffs"). He is named in his official capacity.

12. Defendant-Respondent Sarah R. Saldaña is the Director of U.S. Immigration and Customs Enforcement ("ICE"). ICE is responsible for apprehension, detention, and removal of noncitizens from the United States. Director Saldaña is a legal custodian of the Plaintiffs. She is named in her official capacity.

13. David Jennings is the Field Office Director for the Los Angeles Field Office of ICE, a component of DHS. Director Jennings has custody of the Plaintiffs and is named in his official capacity.

14. Defendant-Respondent James Janecka is the Warden of the Adelanto Detention Facility in Adelanto, California. Warden Janecka has custody of the Plaintiffs and is named in his official capacity.

15. Defendant-Respondent Christina Holland is the Jail Administrator of the Santa Ana City Jail in Santa Ana, California. Defendant Holland has custody of the Plaintiffs and is named in her official capacity.

16. Defendant-Respondent Carlos Roja is the Chief of the Santa Ana City Department, which operates the Santa Ana City Jail in Santa Ana, California. Chief Holland has custody of the Plaintiffs and is named in his official capacity.

17. Defendant-Respondent Jon Briggs is a Captain in the Orange County Sheriff's Department and the Officer-in-Charge of the Theo Lacy Facility in Santa Ana, California. Captain Briggs has custody of the Plaintiffs and is named in his official capacity.

18. Defendant-Respondent Mike Krueger is a Captain in the Orange County Sheriff's Department and the Officer-in-Charge of the James A. Musick Facility in Irvine, California. Captain Krueger has custody of the Plaintiffs and is named in his official capacity.

19. Defendant-Respondent Sandra Hutchens is the Sheriff of Orange County, which operates the Theo Lacy Facility in Santa Ana, California, and the James A. Musick Facility in Irvine, California. Chief Hutchens has custody of the Plaintiffs and is named in her official capacity.

## JURISDICTION AND VENUE

20. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1361, 1651, 2241; the Suspension Clause, U.S. Const. art. I, § 2; and 5 U.S.C. § 702.

21. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202.

22. Venue is proper in the Central District of California under 28 U.S.C. § 1391 because at least one federal Defendant is in this District, the Plaintiffs are detained in

5

this District, and a substantial part of the events giving rise to the claims in this action took place in this District.

## BACKGROUND

**Legal Background**

23. INA § 236(a), 8 U.S.C. § 1226(a), authorizes immigration officials to release a noncitizen on appropriate conditions pending the resolution of his or her immigration case. Section 1226(a) provides that, "pending a decision on whether the alien is to be removed from the United States,"

> "the Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
>   (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>   (B) conditional parole . . . ."

*Id*.

24. The Attorney General shares his authority to detain or release noncitizens under Section 1226(a) with the Secretary of Homeland Security. *See* 8 U.S.C. § 1103(a) & (g); Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2192.

25. The Department of Homeland Security ("DHS") makes an initial custody determination for each noncitizen detained under the statute, whereby the agency considers him or her for release on bond, recognizance, or other conditions (such as electronic monitoring, periodic reporting requirements, restrictions on travel, or enrollment in a substance abuse program). With some exceptions not relevant here, noncitizens may seek review of an ICE custody determination before an immigration judge ("IJ") at a hearing commonly known as a "bond hearing." *See* 8 C.F.R. §§ 1003.19(a) & (h)(2)(i). At the bond hearing, the IJ likewise determines whether the noncitizen can be released on bond, recognizance, or other conditions. *See* 8 C.F.R. § 1236.1(d)(1); 8 C.F.R. § 1003.19.

26. To obtain release from ICE or the IJ, the noncitizen must "demonstrate to the satisfaction of the officer that [his or her] release would not pose a danger to property

or persons, and that [he or she] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999). A noncitizen found to present a danger to persons or property is ineligible for release on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). If the person does not pose a danger and is likely to appear at future proceedings, the ICE officer or IJ determines whether the noncitizen may be released on recognizance, bond, or other conditions that will sufficiently address any concerns about flight risk. *See id.* at 39-40.

27. There is presently no requirement that ICE consider a detainee's poverty or financial ability to pay when setting a bond under Section 1226(a). Nor is there any requirement that ICE determine whether conditions of supervision, alone or in combination with a lower bond, would suffice to allow for the person's release.

28. Under BIA precedent, the IJ has "broad discretion in deciding the factors that he or she may consider in custody redeterminations." *Guerra*, 24 I. & N. Dec. at 40. However, there is no requirement that IJs consider an individual's ability to pay the bond. Indeed, in a series of unpublished decisions, the BIA has held that a person's financial circumstances are *irrelevant* to a bond determination. *See In Re Sandoval-Gomez*, 2008 WL 5477710, at *1 (BIA Dec. 15, 2008) ("an alien's ability to pay the bond amount is not a relevant bond determination factor"); *In Re Castillo-Cajura*, 2009 WL 3063742, at *1 (BIA Sept. 10, 2009) (same). Nor is there any requirement that IJs determine whether conditions of supervision, alone or in combination with a lower bond, would sufficiently address any concerns about flight risk and therefore suffice to allow for the person's release.

29. The regulations further permit the noncitizen to seek a new bond redetermination by the IJ, but "only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). However, Defendants do not recognize a person's financial inability to post bond, despite having made good faith efforts to do so, as a "changed circumstance" that warrants a new bond hearing.

30. Section 1226(a) imposes a minimum $1,500 bond, "with security approved by . . . the Attorney General." However, in practice ICE or IJs routinely set higher bonds, such as $20,000, $25,000, and even $100,000 or more.

31. Moreover, although Section 1226(a) refers broadly to "security approved by . . . the Attorney General," the government has a policy and practice of requiring immigration detainees to post the full cash value of the immigration bond to obtain release. In sharp contrast to the criminal justice system, no other forms of secured bonds are deemed acceptable, such as deposit bonds—where the noncitizen would post a percentage (such as 10%) of the bond as security, and the total bond amount becomes due only if he fails to appear—or property bonds, where property valued at the full bond amount would be posted as security and would be forfeited if the person fails to appear.

32. The government's reliance on full cash bonds—without consideration of an individual's financial ability to pay the bond—is out of step with well-established procedures in federal and state courts. Under the federal Bail Reform Act, a district court must consider a range of alternative conditions before ordering release on monetary bond and "may not impose a financial condition that results in the pretrial detention of the person." *See* 18 U.S.C. § 3142(a)-(c). Likewise, state criminal justice systems in this Circuit require that judicial officers must consider a defendant's financial ability to pay at custody hearings. *See, e.g.*, Alaska Stat. Ann. § 12.30.011(c)(8) (requiring court to consider "assets available to the person to meet monetary conditions of release"); Cal. Penal Code § 1270.1 (requiring court to consider detained person's "ability to post bond"); Nev. Rev. Stat. Ann. § 178.498 (requiring bail to be set with regard to "[t]he financial ability of the defendant to give bail"); Mont. Code Ann. § 46-9-301 (requiring bail to be "considerate of the financial ability of the accused"); Haw. Rev. Stat. Ann. § 804-9 (amount of bail should be determined so as not "to render the privilege useless to the poor"); Wash. Rev. Code Ann. § SUPER CT CR CrR 3.2(b)(6) ("If the court determines that the accused must

8

post a secured or unsecured bond, the court shall consider, on the available information, the accused's financial resources for the purposes of setting a bond that will reasonably assure the accused's appearance."). *See also Gusick v. Boies*, 72 Ariz. 233, 237 (1951) (noting that that court should consider "the ability of the accused to give bail" when setting bail to comport with the prohibition of excessive bail).

33. Bond systems for criminal detainees also routinely accept the posting of deposit or property bonds, rather than insisting on payment of a full cash bond.

34. Federal and state officials—including the U.S. Department of Justice—are increasingly calling for an end to the over-reliance on monetary bond, fines, fees, and other financial constraints that disproportionately affect low-income individuals in the criminal justice system.[2] However, the federal government's immigration detention policies practices suffer from the same flaws.

## CLASS ACTION ALLEGATIONS

**Defendants' Policies and Practices for Setting Immigration Bonds in the Central District of California**

35. ICE detains several thousand noncitizens in the Central District of California (the "District") at any given time, primarily at four detention facilities. The largest, the Adelanto Detention Facility in Adelanto, California, is operated by the GEO Corporation and has capacity to hold approximately 1,950 immigrants. ICE also detains noncitizens in three other detention centers located in Orange County. The James A. Musick Facility in Irvine, California, is operated by the Orange County Sheriff and has capacity to hold approximately 350 immigrants. The Theo Lacy Facility in Orange, California, is operated by the Orange County Sheriff and has capacity to hold approximately 475 immigrants. The Santa Ana City Jail in Santa Ana, California, is operated by the Santa Ana City Police and has capacity to hold approximately 200 immigrants.

36. As a matter of policy, practice, or both, ICE and IJs in the District are not

---

[2] *See* Varden Statement at 5-8, 11, 13-14.

9

1 required to consider an individual's financial resources in setting bond amounts under
2 Section 1226(a).
3 37.   As a matter of policy, practice, or both, Defendants require that immigrants post
4 the full cash bond to be released.
5 38.   As a matter of policy, practice, or both, ICE and IJs are not required to consider
6 whether an alternative form of bond or conditions of supervision, alone or in
7 combination with a lower bond, would suffice to address flight risk and permit
8 release.
9 39.   On any given day, at least 100 immigrants—and likely many more—remain
10 detained in this District under Section 1226(a) on a bond set pursuant to these policies,
11 practices, or both. This is so even though, by setting a bond, Defendants have already
12 determined that such individuals do *not* pose a danger to the community or a level of
13 flight risk that requires their detention.
14 40.   The stories of the individual Plaintiffs are typical of the detention practices in
15 this District. For example, Plaintiff Matias was ordered released on a $3,000 bond
16 following a bond hearing in immigration court in approximately November 2012. At
17 the hearing, the IJ did not ask any questions about his financial circumstances or
18 ability to pay a bond. At a court hearing in February 2013, Mr. Matias again requested
19 release from detention to retrieve documents for his removal case. The IJ refused,
20 telling him the bond set was "pretty generous" even though he could not afford it. In
21 approximately August 2013, ICE re-evaluated Mr. Matias's custody, but did not
22 inquire into his financial circumstances or ability to pay a bond. ICE issued a decision
23 ordering him released on a $3,000 bond, the same bond amount ordered by the IJ that
24 he had been unable to afford. At a hearing in approximately August 2014, Mr. Matias
25 requested that the IJ consider releasing him on non-monetary conditions but the IJ
26 refused, stating that the $3,000 bond amount was "reasonable," even though Mr.
27 Matias had been unable to afford it for more than a year and a half at that point. As of
28 this time, Mr. Matias has remained detained for more than three and a half years since

his bond was initially set.

41. Similarly, Ms. Hernandez was ordered released on a $60,000 bond following a bond hearing in immigration court in March 2016. The immigration judge found that Ms. Hernandez was not a danger to the community, but that she "posed a flight risk" because she might not win her immigration case. However, prior to setting the bond, the immigration judge did not inquire into Ms. Hernandez's financial circumstances or her ability to pay a bond, and did not state whether he considered whether she could be released on non-monetary conditions that would suffice to address concerns about flight risk. Because Ms. Hernandez and her family lack the resources to pay the bond, she has been detained for several weeks since the bond was initially set, and faces the prospect of months or years of additional time in detention until her case completes.

42. Plaintiffs' experiences are similar to those of other proposed class members. For example, in one case of a detainee held in the Central District, an IJ refused to lower a bond to an amount the detainee's family could afford on the ground that evidence of financial circumstances was "irrelevant" to the bond amount determination. In another case of a detainee held in the Central District, a different IJ refused to consider a detainee's indigence and dismissed evidence of financial hardship because "everyone is poor in here."

**This Action Satisfies the Requirements of Federal Rule of Civil Procedure 23**

43. Plaintiffs Hernandez and Matias bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) on behalf of themselves and all other persons similarly situated. The proposed class is defined as follows:

> All individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California.

44. The requirements of Rule 23(a)(1) are met in this case because the class is so numerous that joinder of all members is impracticable. At any given time, at least 100 persons remain detained on a bond set by government officials in this District

11

pursuant to the bond policies and practices that Plaintiffs challenge. More individuals will become class members in the future, as Defendants continue to detain additional noncitizens under Section 1226(a) on a monetary bond pursuant to their bond policies and practices.

45. Moreover, because Plaintiffs and proposed class members are detained pending removal proceedings, they may win their cases and be released or deported upon the conclusion of their removal cases. The inherently transitory state of the proposed class further demonstrates that joinder is impracticable.

46. The proposed class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2) because all proposed class members are subject to Defendants' three common policies or practices: Defendants' failure to require that ICE and IJs consider an individual's ability to pay in setting a bond under Section 1226(a); Defendants' requirement that detainees post full cash bonds rather than other forms of secured bonds; and Defendants' failure to require a determination that no conditions of supervision, alone or in combination with a lower bond, would mitigate flight risk. Defendants have concluded that they are not required to make such inquiries or to accept alternative forms of secured bonds, and this policy applies to all members of the proposed class.

47. The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the claims of the class. Plaintiffs Hernandez, Matias, and the class they seek to represent are all individuals who are or will be detained on a full cash bond pursuant to Section 1226(a), and whose bonds have been set or will be set without any requirement that Defendants consider their financial ability to pay or the adequacy of an alternative bond or alternative conditions of supervision. Plaintiffs Hernandez, Matias, and the proposed class also share the same legal claims, which challenge the legality of these bond policies and practices under the INA, the Due Process Clause and equal

protection guarantee of the Fifth Amendment, and the Eighth Amendment's Excessive Bail Clause.

48. The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). Plaintiffs Hernandez and Matias seek the same relief as the other members of the class—namely, custody decisions that require consideration of both their financial ability to pay a money bond and the adequacy of alternative conditions of supervision, as well as the opportunity to post forms of security other than a full cash bond—and they do not have any interests adverse to those of the class as a whole.

49. In addition, the proposed class is represented by counsel from the American Civil Liberties Union of Southern California, the American Civil Liberties Union Immigrants' Rights Project, and experienced pro bono attorneys. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of immigration detainees.

50. Finally, the proposed class satisfies Federal Rule of Civil Procedure 23(b)(2) because the immigration authorities have acted on grounds generally applicable to the class by failing to apply procedures required by the U.S. Constitution and Section 1226(a) to all members of the proposed class. Thus, final injunctive and declaratory relief is appropriate with respect to the class as a whole.

51. In the alternative, the class also qualifies for certification under Federal Rules of Civil Procedure 23(b)(1)(A) and (b)(1)(B).

## CLAIMS FOR RELIEF

### First Claim
### Violation of the Immigration and Nationality Act

52. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

53. Defendants' policies and practices for setting bond violate the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). Properly construed, Section 1226(a)

13

does not permit the government to detain Plaintiffs and proposed class members on a full cash bond absent consideration of the person's financial ability to pay the bond amount and consideration of whether an alternative form of bond or other conditions of supervision, alone or in combination with a lower bond, would sufficiently mitigate flight risk. Plaintiffs' detention under Section 1226(a) in the absence of such procedures violates the INA.

### Second Claim
### Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution

54. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

55. The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process requires that civil immigration detention be reasonably related to preventing flight and danger to the community and be accompanied by adequate procedures to ensure those goals are being met.

56. For these reasons, due process does not permit the government to detain Plaintiffs on a full cash bond absent a determination of a person's financial ability to pay the bond amount and whether an alternative form of bond or other conditions of supervision, alone or in combination with a lower bond, can sufficiently mitigate flight risk.

### Third Claim
### Violation of the Equal Protection Guarantee of the Fifth Amendment

57. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

58. The Fifth Amendment prohibits denying individuals the equal protection of the laws.

59. The government's detention of individuals because they lack the financial resources to pay a money bond, while affording release to individuals who can afford

14

a money bond, discriminates against individuals who are indigent or lack the resources to pay their bonds.

60. For this reason, equal protection does not permit the government to detain Plaintiffs on a full cash bond absent a determination of a person's ability to pay the bond amount and whether an alternative form of bond or other conditions of supervision, alone or in combination with a lower bond, can sufficiently mitigate flight risk.

### Fourth Claim
### Violation of the Excessive Bail Clause of the Eighth Amendment to the United States Constitution

61. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

62. The Eighth Amendment provides that "[e]xcessive bail shall not be required . . . ." U.S. Const. amend. VIII. "[B]ail must be set by a court at a sum designed to ensure" the government's goals of preventing flight and danger—"and no more." *United States v. Salerno*, 481 U.S. 739, 754 (1987).

63. Thus, the Eighth Amendment does not permit the government to detain Plaintiffs on a full cash bond absent a determination of a person's ability to pay the bond amount and whether an alternative form of bond or other conditions of supervision, alone or in combination with a lower bond, can sufficiently mitigate flight risk.

### **PRAYER FOR RELIEF**

Plaintiffs ask this Court to grant the following relief:

1. Certify this case as a class action lawsuit, as proposed herein, appoint Plaintiffs Hernandez and Matias as representatives of the class and the undersigned counsel as class counsel;

2. Declare that Defendants' policy and practice, as described in this Complaint, of detaining class members on a full cash bond without requiring that ICE and the IJ consider class members' financial ability to pay when setting a bond, as well as the

1  adequacy of an alternative form of secured bond and alternative conditions of
2  supervision, violates the INA, 8 U.S.C. § 1226(a), and the Fifth and Eighth
3  Amendments to the U.S. Constitution;

4  3.      Order the Defendants to assess each class member's financial ability to pay in
5  setting a bond under 8 U.S.C. § 1226(a) and consider whether an alternative form of
6  secured bond or other conditions of supervision, alone or in combination with a lower
7  bond, would mitigate flight risk and permit the class member's release. If a class
8  member is unable to pay any bond set by the IJ after making good faith efforts to do
9  so, Defendants must provide the class member with a new bond hearing before the IJ
10 to determine if he or she may be released on an alternative form of secured bond or
11 other conditions of supervision, alone or in combination with a lower bond;

12 4.      Grant Plaintiffs Hernandez and Matias's writs of habeas corpus and order a
13 bond hearing where the IJ considers their financial ability to pay a monetary bond and
14 whether an alternative form of secured bond or other conditions of supervision, alone
15 or in combination with a lower bond, would mitigate flight risk and permit the
16 Plaintiffs' release. If the Plaintiff is unable to pay any new bond set by the IJ after
17 making good faith efforts to do so, Defendants must provide him or her with a new
18 bond hearing before the IJ to determine if he or she may be released on an alternative
19 form of secured bond or other conditions of supervision, alone or in combination with
20 a lower bond;

21 5.      Grant an award of attorneys' fees and costs; and
22 6.      Grant such other relief as may be just and reasonable.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated:  April 6, 2016         /s/ Michael Kaufman
                              MICHAEL KAUFMAN
                              Counsel for Plaintiffs-Petitioners