

FILED
CLERK, U.S. DISTRICT COURT

10/15/2018

CENTRAL DISTRICT OF CALIFORNIA
BY: ____MG____ DEPUTY

1  Hon. Rosalyn M. Chapman (Ret.)
2  JAMS
   555 West 5th Street, 32nd Floor
3  Los Angeles, CA 90013
   213-253-9776
4  rchapman@jamsadr.com
5  SPECIAL MASTER

6
7              **UNITED STATES DISTRICT COURT**
8              **CENTRAL DISTRICT OF CALIFORNIA**
9

10  XOCHITL HERNANDEZ, CESAR              )
11  MATIAS, for themselves and on behalf  )  Case No. EDCV 16-0620- JGB (KKx)
    of a class of similarly situated individuals,  )
12                                        )   (JAMS no. 1220059390)
                                          )
13          Plaintiffs-Petitioners,       )
                                          )
14              v.                        )
                                          )
15  JEFFERSON B. SESSIONS III,            )
16  U.S. Attorney General, et al.,        )
                                          )
17          Defendants-Respondents.       )
18  _____)

19
20          **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
                  **DEFENDANTS' MOTION TO COMPEL**
21

22          On September 13, 2018, Defendants United States Immigration and Customs

23  Enforcement ("ICE") and the Executive Office for Immigration Review ("EOIR") (collectively,

24  "Defendants") filed a notice of motion and motion to compel responses to Defendants' First Set

25  of Interrogatories to Plaintiffs Xochitl Hernandez ("Hernandez") and Cesar Matias ("Matias"),

26  separately, and First Set of Requests for Production of Documents to Hernandez and Matias,

27  separately (Dkt. No. 221), the Joint Stipulation ("Jt. Stip.") (Dkt. No. 221-1), the supporting

28

declaration of Courtney E. Moran with exhibits ("Moran Declaration" ("Decl.")) (Dkt. No. 221-2), and the opposing declaration of Douglas Smith with exhibits ("Smith Declaration ("Decl.")) (Dkt. No. 221-3). On September 27, 2018, Defendants filed a supplemental memorandum (Dkt. No. 224) and, on the same date, Plaintiffs filed a supplemental memorandum (Dkt. No. 225) and the supporting supplemental declaration of Douglas Smith with exhibits (Dkt. No. 225-1).

On October 5, 2018, the Special Master issued a [Tentative] Order Granting, in part, Defendants' motion to compel, which was served on the parties. Oral argument was held telephonically before Hon. Rosalyn Chapman, Special Master, on October 12, 2018. Michael Kaufman, Staff Attorney with the ACLU Foundation of Southern California, and Douglas A. Smith, an attorney with Skadden Arps Slate Meagher & Flom LLP, appeared on behalf of Plaintiffs, and Brian Ward, Courtney E. Moran and Katherine J. Shinners, attorneys with the Office of Immigration Litigation, United States Department of Justice, appeared on behalf of Defendants.

## Relevant Procedural History

## I.

On April 6, 2016, Plaintiffs filed a putative class action against the United States Attorney General, the Director of EOIR, the Secretary of the Department of Homeland Security, the Director of ICE, and others "challeng[ing] the federal government's policy and practice of setting cash bonds for noncitizens in immigration proceedings, without regard to a noncitizen's financial resources, which has resulted in the incarceration of individuals merely because they are poor." (Dkt. No. 1 at ¶¶ 1, 3, 6). As described by the District Court, Plaintiffs challenge

four federal government policies and practices used by immigration officials:  (1) the failure to "consider detainees' ability to pay when setting bond"; (2) the failure to "consider whether conditions of supervision, alone or in combination with a lower bond amount, would suffice to ensure detainees' appearance during removal proceedings"; (3)  requiring "detainees released on bond to post the full cash bond amount … instead of … a deposit, property, or other assets as collateral"; and (4) the failure to "recognize a detainee's inability to post bond, despite having made a good faith effort to do so, as a 'changed circumstance' warranting a new bond hearing…." (Dkt. No. 84 at 2).

Plaintiffs allege that Hernandez is a Mexican citizen who is detained pending immigration proceedings.  (Dkt. No. 1 ¶ 7).  She came to the United States more than 25 years ago; her children and grandchildren are American citizens.  (Id.).  At a bond hearing in March 2016, Hernandez was authorized to be released on a $60,000 bond; however, she did not have the financial ability to post the bond.  (Id.).  Matias is a citizen of Honduras who is gay; he was persecuted in Honduras because of his sexual orientation.  (Id. ¶ 8).  In November 2012, February and August 2013, and August 2014, Matias was authorized to be released on a $3,000 bond; however, he did not have the financial ability to post the bond.  (Id.).

Plaintiffs contend that Defendants' policies and practices violate: (1) the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a); (2) the due process clause of the Fifth Amendment; (3) the equal protection clause of the Fifth Amendment; and (4) the excessive bond clause of the Eighth Amendment.  (Dkt. No. 1 at ¶¶ 5, 52-63).  The gravamen of Plaintiffs' Complaint is that Defendants' policies and practices resulted in their incarceration and the

incarceration of class members "solely because they lack the financial means to post the full bond amount…." (Dkt. No. 84). As a result of Defendants' policies and practices, Plaintiffs and "those similarly situated have 'remain[ed] detained for prolonged periods … while their immigration cases are pending.'" (Id.). Plaintiffs bring the action pursuant to Rule 23(b)(2) on behalf of themselves and "[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge [("IJ")] in the Central District of California"; alternatively, Plaintiffs would proceed under Rule 23(b)(1)(A) and (B). (Dkt. No. 1 ¶¶ 35-43, 50). Plaintiffs seek: (1) certification of the putative class; (2) declaratory judgment as to the illegality of Defendants' policies and practices; (3) writs of habeas corpus for Plaintiffs and an order directing Defendants to grant Plaintiffs new bond hearings; and (4) an injunction ordering Defendants to consider Plaintiffs' and putative class members' ability to pay, alternative forms of secured bond, and other conditions of supervision when setting bond, and to provide them with new bond hearings if they are unable to post bond after making good faith efforts to do so. (Dkt. No. 84 at 4).

On May 16, 2017, Defendants filed an Answer; they raise no affirmative defenses. (Dkt. No. 107).

## II.

On April 22, 2016, Plaintiffs filed a motion for class certification requesting the Court designate Hernandez and Matias as class representatives. (Dkt. No. 24). As part of the motion, Plaintiffs attached their own declarations. In her corrected declaration, Hernandez stated:

4

> My family does not have the money to pay such a high bond [$60,000].  My
> daughter talked to bail bonds companies, but they require a several thousand
> dollars and an asset (like a car or a house) as a deposit, which my family does not
> have.  My family is trying to save up money to pay for the bond, but they have to
> use the money they earn for basic necessities.

(Dkt. No. 34 ¶ 9).  Similarly, Matias averred:  "I remain unable to pay the full amount of the
$3,000 bond.  My family in Honduras has very little money and cannot afford to pay the bond.  I
have lost touch with the few relatives I have in the United States, and I don't know of anyone
else who can help me to pay the bond."  (Dkt. No. 24-7 ¶ 10).

> Both Plaintiffs swore they are prepared to be named class plaintiffs, stating:

> I understand that I am a named plaintiff in this class action lawsuit.  I understand
> my responsibilities and role as a named plaintiff.  I understand I need to stay
> informed with what is happening in the case and that I need to think about the
> interests of other class members and act on those interests.  I am prepared to
> represent the class in this case and will take my responsibilities seriously.

(Dkt. No. 24-7 ¶ 13; Dkt. No. 34 ¶ 12).

> On November 10, 2016, the District Court denied Defendants' motion to dismiss, granted
Plaintiffs' motion for class certification, and granted Plaintiffs' motion for a class-wide

5

preliminary injunction "requir[ing] that immigration officials consider ability to pay when setting a bond amount and release on alternative conditions where appropriate, and set bond at no greater amount than necessary to ensure the person's appearance."  (Dkt. No. 84 at 3, 27-41).  The District Court certified "a class encompassing '[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California.'"  (Id. at 19-27).  In certifying the class, the District Court determined Plaintiffs would adequately represent the class although they both had been released from custody on cash bonds.[1] (Id. at 24-25).

The Ninth Circuit affirmed the District Court's issuance of the class-wide preliminary injunction, finding the Court did not abuse its discretion when it "requir[ed] immigration officials when making bond determinations to, *inter alia*, consider (1) financial ability to obtain bond and (2) alternative conditions of release."  *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).  "Under the terms of the preliminary injunction, ICE and IJs are required to consider, in all future hearings, a detainee's financial circumstances in determining the amount of the bond to be set and to consider whether the person may be released on alternative conditions of supervision.  The order further requires that the parties meet and confer in good faith to develop implementation guidelines and instructions for ICE and IJs, that the government submit a list of class members to Plaintiffs and that the government conduct new bond hearings for current class members whose bonds were set before the order went into effect."  *Id.* at 987.

---

[1]   The District Court noted that Hernandez was enrolled in the Alternatives to Detention program and was placed on ankle monitoring and Matias's bond was paid by a community group.  (Dkt. No. 84 at 10-11).

**The Discovery Disputes**

**III.**

*Background*

On May 3, 2018, Defendants served their First Set of Interrogatories and First Set of Requests for Production of Documents on Plaintiff Hernandez.  Moran Decl. ¶¶ 3-4, Exhs. 2-3. On the same date, Defendants served their First Set of Interrogatories and First Set of Requests for Production of Documents on Plaintiff Matias.  Id. ¶¶ 5-6, Exhs. 4-5. Defendants' Sets of Interrogatories and Requests for Production of Documents to each Plaintiff are identical.  On June 18, 2018, Plaintiff Hernandez responded to Defendants' First Sets of Interrogatories and Requests for Production of Documents, objecting to all of the interrogatories and document requests, answering none of the interrogatories, and producing no documents. Id. ¶¶ 7-8, Exhs. 6-7.   On the same date, Plaintiff Matias responded to Defendants' First Sets of Interrogatories and Requests for Production of Documents, objecting to all interrogatories and document requests, answering none of the interrogatories and producing no documents. Id. ¶¶ 9-10,  Exhs. 8-9.

Thereafter, the parties exchanged a series of letters and met-and-conferred telephonically in an attempt to resolve their differences.  Id. ¶¶ 11-16, Exhs.10-15; Smith Decl. ¶ 1, Exh. 1. On or about August 23, 2018, Plaintiffs made the following Proposal to Defendants in lieu of responding to Defendants' discovery:

> Plaintiffs … [propose to] serve under oath fact sheets detailing their financial circumstances around the time of their bond hearings and periods of detention.

Because Hernandez was detained between February 24 and September 9, 2016, and had bond hearings on March 9, April 13, and August 23, 2016, she would provide a sworn financial circumstances fact sheet for 2016.  Because Matias was detained between March 29, 2012 and June 7, 2016, and had bond hearings on November 8, 2012; February 1, 2013; August 2014; and January 21, 2016, he would provide a sworn financial circumstances fact sheet for each year between and including 2012-2016.

In addition to providing sworn financial circumstances fact sheets, Plaintiffs propose producing defined document sets, such as loan agreements or mortgages to the extent they exist….

Moran Decl. ¶ 15, Exh. 14.

### *Motion to Compel*

Defendants seek to compel answers from each Plaintiff to Defendants' First Set of Interrogatories, Nos. 1 through 9, and documents responsive to Defendants' First Set of Requests for Production of Documents, Nos. 1-10.  For discussion purposes, the Special Master has grouped the interrogatories into two categories:   (a) questions seeking information about Plaintiffs' identities and financial resources; and (b) questions seeking information about Plaintiffs' danger to the community and flight-risk.  Interrogatory ("Rog") Nos. 1, 6, 7, 8 and 9 come within category (a) and Rog Nos. 2, 3, 4 and 5 come within category (b).

More specifically as to category (a):

- Rog No. 1 seeks information about Plaintiff's aliases or identities used here and abroad, including forms or types of identification, such as a driver's license, identification card, Social Security number and the like;[2]

- Rog No. 6 seeks information about the receipt of governmental benefits by Plaintiff, her/his dependents and household members;[3]

- Rog No. 7 seeks information about Plaintiff's residences in the United States, including the addresses, co-occupants, and who paid for the housing;

- Rog No. 8 seeks information about *all* of Plaintiff's relatives living in the United States; and

- Rog No. 9 seeks information about Plaintiff's relatives living outside the United States who Plaintiff supports or who support Plaintiff.[4]

As to category (b):

- Rog No. 2 seeks information about Plaintiff's entries into the United States, including who assisted Plaintiff, accompanied Plaintiff, and how the entries were paid for;

- Rog No. 3 seeks information about Plaintiff's role in assisting others in entering

---

[2]  Defendants have agreed to amend Interrogatory No.1 by dropping the last clause pertaining to places of residence. Jt. Stip. at 47:5-12.

[3]   Defendants have agreed to limit the time period for Interrogatory No. 6 to six months before and six months after Plaintiff's period of detention.  Jt. Stip. at 88:6-9.

[4]   Defendants have agreed to limit the time period for Interrogatory No. 9 to six months before and six months after Plaintiff's period of detention.  Jt. Stip. at 108:14-17.

the United States, including whether Plaintiff paid money;

- Rog No. 4 seeks information about any crimes Plaintiff committed in the United States; and

- Rog No. 5 seeks information about whether Plaintiff has been detained by law enforcement authorities, and whether she/he complied with the terms of release, if any.

The Requests for Production of Documents seek information about Plaintiffs' identities and financial resources:[5]

- RPD No. 1 seeks all documents relating to Plaintiff's identities and alias;

- RPD No. 2 seeks all documents relating to Plaintiff's' financial status and net worth, including for example bank statements, mortgage statements and the three most recent federal and state tax returns filed as individuals, businesses or partnerships;

- RPD No. 3 seeks all documents relating to Plaintiff's income and financial support of themselves, dependents and household members, including for example wire transfers, employment timesheets, unemployment benefits, credit card statements, governmental benefits and the like;

- RPD No. 4 seeks all documents relating to Plaintiff's expenditures on their own behalf and members of their households, including for example residential documents, insurance records, medical and dental costs, transportation, and tax

---

[5]   Defendants have agreed to limit the time period for Requests for Production Nos. 2 through 8 to six months before and six months after Plaintiff's period of detention.  Jt. Stip. at 122:17-20.

records (including foreign taxes, if any);

- RPD No. 5 seeks all documents relating to Plaintiff's debts, including for example unsecured loans, credit card statements;

- RPD No. 6 seeks all documents relating to Plaintiff's ability to pay or obtain bail or bond, including for example, communications with others about bail or bond;

- RPD No. 7 seeks all documents relating to Plaintiff's assets, including for example, certificates of deposit, bills, receipts, bank statements, store accounts, and the like;

- RPD No. 8 seeks all documents relating to the receipt of governmental benefits by Plaintiff, her/his dependents and members of their households;

- RPD No. 9 seeks all documents Plaintiff contends support her/his claims; and

- RPD No. 10 seeks any documents identified in Plaintiff's responses to Defendants' Interrogatories, if not otherwise requested in Defendants' Requests for Production of Documents.

**The Parties' Positions.**

Defendants assert that the information they seek "directly relates to factual and legal questions relevant to Plaintiffs' constitutional claims and Defendants' defenses. Specifically, Defendants seek information and documents … regarding the factors relevant to the determination of an appropriate bond amount, including financial circumstances and flight risk." Jt. Stip. at 14. Defendants further assert that they "are entitled to discovery to provide the Court with the full context through which to evaluate the efficacy of, and the burdens in implementing, the procedural changes that Plaintiffs request." Id. Such information is relevant to Plaintiffs'

due process and equal protection claims.  Defendants contend that Plaintiffs' Proposal ignores "the nuances involved in obtaining a complete picture of financial circumstances relevant to a bond determination, which includes, among other things, financial information from Plaintiffs' family and household members."  Id. at 16.

On other hand, Plaintiffs object to all interrogatories and requests for production of documents on the grounds of relevancy, arguing their action challenges only Defendants' policies and procedures that fail to account for class members' ability to pay; not the amounts of Plaintiffs' initial bonds or Defendants' policies and practice of determining danger or flight risk under *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).  Thus, information related to Plaintiffs' financial circumstances and the *Guerra* factors is irrelevant.  Jt. Stip. at 17-18.  Even if the requested financial or other information were relevant to whether Plaintiffs are proper class representatives, such inquiries are now tardy since the class has been certified.  Id. at 19. Nevertheless, Plaintiffs are willing to abide by the Proposal made during the meet-and-confer process.  Id. at 20.

Plaintiffs also make numerous General Objections to Defendants' First Sets of Interrogatories[6] and Requests for the Production of Documents.[7]  In response, Defendants argue

---

[6]  As to Defendants' First Set of Interrogatories, Plaintiffs make the following General Objections: (1) privilege  -- attorney-client privilege, work product protection, common interest privilege, Fifth Amendment, Article I section 15 of the California Constitution; (2) unreasonable, oppressive, disproportionate to the needs of the case, under burden and expense; (3) irrelevant and seek information greater than imposed by law; (4) premature since investigation is ongoing; (5) calls for legal conclusions; and (6) more than 25 interrogatories in violation of Rule 33(a)(1).  Jt. Stip. at 20-22.

[7]  As to Defendants' First Set of RPDs, Plaintiffs make the following General Objections: (1) privilege  -- attorney-client privilege, work product protection, common interest privilege, Fifth Amendment, Article I section 15 of the California Constitution; (2) vague, ambiguous, overbroad, and unduly burdensome; (3) irrelevant; (4) fails to

that the General Objections are improper under the Federal Rules since they do not state the grounds with specificity as to each interrogatory and document request, as required by Rules 33 and 34, and each of the nine interrogatories relates to a "single theme" and, thus, comes within the 25 interrogatories limitation of Rule 33(a)(1).  Id. at 22-23.

In addition to their General Objections, Plaintiffs object to several of the Definitions Defendants use in the interrogatories and document requests.  First, Plaintiffs object to the definition of "ASSET" on the ground it is overbroad, unduly burdensome, and confusing.  Id. at 29-30.  Plaintiffs propose their own definition of the word "ASSET": "An item that is owned and has value."  Defendants decline to accept Plaintiffs' rewriting of the definition, contending Plaintiffs' proposed definition is too limiting since it excludes non-tangible items, such as "debts owed Plaintiffs, lines of credit, and intellectual property."  Id. at 30.

Second, Plaintiffs object to the definitions of "IDENTITY" or "IDENTIFY" on the ground that applying the definition to a document, non-natural person, real property, or event is unduly burdensome; however, they do not object to applying the definitions to a natural person. Id. at 33-34.  Plaintiffs propose their own definitions of the words "IDENTITY" or "IDENTIFY" in the contexts of a non-natural person, real property, event and document.  As to a document, Plaintiffs propose to respond under Rule 33(d).   Id. at 34.   Defendants accept Plaintiffs'

---

describe with reasonable particularity; (5) already in Defendants' possession or publically available; (6) in accurate or express or implicit characterizations; and (7) not completed investigation. Id. at 27.

definitions except as applied to a document, id. at 34-35,[8] arguing that the mere production of a document is insufficient since Defendants seek substantial information about the document that might not be observed from reviewing the document itself, such as identifying the persons known to have seen or received the document, and if the document is no longer in Plaintiffs' possession, and requiring Plaintiffs to state whether the document is missing, lost, transferred, or the like.  In turn, Plaintiffs argue that under the parties' ESI protocol, the metadata should be sufficient to meet Defendants' definitions.  Id. at 35.

Third, Plaintiffs object to the definitions of "HOUSEHOLD" and "'MEMBER' of YOUR HOUSEHOLD" on the grounds of vagueness and ambiguity because the definitions use the term "economic unit," which is not defined.  Id. at 36.  Plaintiffs propose their own definitions of the word "HOUSEHOLD" and the term "'MEMBER' of YOUR HOUSEHOLD": "any natural person residing in the same housing unit as [Plaintiff]." Id. at 36.  Defendants apparently agree that their definitions need to be changed and now propose to define "HOUSEHOLD" as: "any and all natural PERSONS with whom YOU share financial resources."  Id.  Plaintiffs disagree, noting that generally a household means those who dwell under the same roof; not persons living elsewhere. Id. at 36-37.[9]

---

[8]  In light of this apparent agreement, the Special Master is at a loss to understand the parties' inclusion of this issue in the Joint Stipulation.  It wastes the Special Master's time to review matters upon which the parties now agree.

[9]  The Special Master is at a loss to understand why issues are presented in the Joint Stipulation which the parties apparently are continuing to negotiate, such as this; the Joint Stipulation is not supposed to be a "moveable feast."

# DISCUSSION

# IV.

Discovery is governed by Rule 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed.R.Civ.P. 26(b)(1).[10] "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

Generally, the purpose of discovery is to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble*, 358 U.S. 677, 682 (1958).  In other words, discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635-36 (C.D. Cal. 2005); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).  "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information although the information need not be admissible at trial."  *Moon*, 232 F.R.D. at 635-636; *Jones v.*

---

[10]  Regarding electronically stored information, Rule 26(b) further provides, in part:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.

Fed.R.Civ.P. 26(b)(2)(B).

*Commander, Kansas Army Ammunictions Plant*, 147 F.R.D. 248, 250 (D.Kan. 1993).  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

"Rules 33 and 34 are cumulative, not alternative."  *Duran*, 258 F.R.D. at 378.  Rule 33 of the Federal Rules of Civil Procedure provides, in part, for the serving on any other party of interrogatories that "relate to any matter that may be inquired into under Rule 26(b)." Fed.R.Civ.P. 33(a)(2).   "The grounds for objecting to an interrogatory must be stated with specificity."  Fed.R.Civ.P. 33(b)(4).  The party to whom the interrogatories are directed must sign the answers and must, "to the extent it is not objected to, …. answer[] separately and fully in writing under oath."  Fed.R.Civ.P. 33(b)(3), (5).   As an exception, Rule 33(d) allows a party to whom interrogatories are directed to produce or offer for inspection "business records" (including electronically stored information), "if the burden of deriving or ascertaining the answer will be substantially the same for either party," by specifying the records to be reviewed. Fed.R.Civ.P. 33(d).

Rule 34 provides for the production of documents and things within the scope of Rule 26(b), requiring a party to produce or permit inspection of documents responsive to a document request when such documents are in the party's "possession, custody or control."  Fed.R.Civ.P. 34(a)(1).   A request "must describe with reasonable particularity each item or category of items…."   Rule 34(b)(1)(A).  "[D]ocuments are deemed to be within [a party's] 'possession,

custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand." *Duran*, 258 F.R.D. at 379 (emphasis in original; internal quotation marks and citations omitted). "Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery." *Id.* "[T]he response must either state that [production or] inspection … will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed.R.Civ.P. 34(b)(2)(B).

Under Rule 37, "a party may move for an order compelling disclosure or discovery." Fed.R.Civ.P. 37(a)(1).  For purposes of a motion to compel discovery, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed.R.Civ.P. 37(a)(4).

### **Interrogatories.**

Plaintiffs object to each of the interrogatories in Defendants' First Set of Interrogatories on the ground the interrogatory seeks irrelevant information.  To facilitate analysis of the relevancy of the interrogatories, the Special Master has grouped the interrogatories into two categories: (a) questions seeking information about Plaintiffs' identities and financial resources; and (b) questions seeking information about Plaintiffs' danger to the community and flight-risk. Interrogatory Nos. 1, 6, 7, 8 and 9 come within category (a) and Interrogatory Nos. 2, 3, 4 and 5 come within category (b).

As to category (a), Plaintiffs argue that information about their identities and financial

17

circumstances is irrelevant since Plaintiffs and class members challenge Defendants' policies and practices of setting cash bonds for noncitizens in immigration proceedings without regard to a noncitizen's financial resources; not the amounts of cash bonds set for Plaintiffs.   And if financial information is considered to be relevant, the Proposal is the best way for Plaintiffs to provide that information.   As to category (b), Plaintiffs argue that information related to the *Guerra* factors is not relevant since Plaintiffs were found not to be either a danger to the community or a flight-risk and eligible for release from detention with the posting of cash bonds.

"District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see also Independent Living Center of So. Cal. v. City of Los Angeles*, 296 F.R.D. 632 (C.D. Cal. 2013) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." (internal quotation marks and citation omitted)).   "[O]ne of the purposes of discovery is to obtain information for use on cross-examination and for the impeachment of witnesses." *U.S. v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D. N.Y. 1974); *Shelby Hosp. Corp. v. Mosley*, 2017 WL 5586729, at *17 (E.D. Tenn. Nov. 20, 2017); *see also Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997) (Relevant information for discovery purposes "relates to … the credibility of any witness." (internal quotation marks and citation omitted)).

Here, the financial inability of Plaintiffs to pay the cash bonds initially set for their release is an element of each claim in the Complaint.   Although Plaintiffs challenge federal

immigration policies and practices, they also challenge the application of such policies and practices to them.  If Defendants are not allowed to inquire into the credibility of Plaintiffs' statements about their financial circumstances, as Plaintiffs urge, what other discovery on Plaintiffs would be relevant?  In other words, carrying Plaintiffs' relevancy objection to its logical conclusion, Defendants would not be able to conduct any discovery on Plaintiffs.  There is absolutely no legal authority to support this extreme position.  In fact, Plaintiffs implicitly acknowledged the relevancy of their individual financial circumstances in their declarations supporting the motion for class certification, wherein each Plaintiff attested to her or his financial inability to pay the cash bonds as initially set (quoted in Part II above).  Since Rog Nos. 6, 7 and 9 seek information about Plaintiffs' financial circumstances, these interrogatories are relevant to determining Plaintiffs' credibility.

Although information relating to Plaintiffs' identities or aliases may relate to the *Guerra* factors of danger to the community and flight risk, the information *also* relates to Plaintiffs' financial circumstances.  For example, Plaintiffs may receive income or hold assets under names other than the names they use in this action, especially if the funds or assets are derived from outside the United States or held abroad.  Thus, Rog No. 1, which seeks information about Plaintiffs' true identities and names seeks information relevant to Plaintiffs' credibility.

Nevertheless, it appears that Rog No. 8, although indirectly relating to Plaintiffs' true identities by seeking information identifying relatives in the United States, should more properly be grouped in category (b), as seeking information related to the *Guerra* factors of danger to the community and flight risk.  Rog No. 8 seeks information about *all* of Plaintiff's relatives living

in the United States, regardless of whether the relatives have any financial ties with Plaintiffs or were unable to help Plaintiffs financially despite being asked to do so.  Thus, Rog No. 8 does not probe Plaintiffs' credibility, as Defendants assert, and Plaintiffs' relevancy objection to it is sustained.

In addition to being relevant to Plaintiffs' credibility, category (a) interrogatories (Rog Nos. 1, 6, 7 and 9) also seek information relevant to Plaintiffs' roles as class representatives. Discovery on class representatives does not necessarily end when the class action is certified and the named plaintiffs are determined to be adequate class representatives.  *See, e.g., Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2014) ("The Court has a continuing duty to ensure compliance with class action requirements pursuant to Rule 23, and therefore may decertify a class at any time."  (citation omitted)).  Under Rule 23, "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Fed.R.Civ.P. 23(c)(1)(C).

In deciding whether to decertify a class, the court applies the same standards used in deciding whether to certify the class.  *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 944 (9th Cir. 2011); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000).  A court will consider "subsequent developments in the litigation" and the nature and range of proof in making the decision whether to decertify a class.  *Makaeff v. Trump University*, 309 F.R.D. 631, 635 (S.D. Cal. 2015) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982)). "Subsequent developments in litigation" may include new information about the adequacy of the named plaintiffs to represent the class.  Thus, there is no merit to Plaintiffs' broad relevancy objection and to the more limited relevancy objection to the temporal period for Rog Nos. 6 and

9, which covers six months *after* detention.   Interrogatories into Plaintiffs' post-detention financial circumstances may affect Plaintiffs' continued adequacy as class representatives.

On the other hand, the Special Master concludes that category (b) interrogatories do not seek relevant information.  The Complaint does not contest the application of the *Guerra* factors regarding danger to the community or flight risk, and both Hernandez and Matias were found not to be either a danger to the community or a flight risk; both were determined to be eligible for release from detention with cash bonds.   Defendants' attempts to recast category (b) interrogatories as seeking financial information is unsuccessful when Defendants have propounded more direct financial interrogatories in category (a).

Plaintiffs also object to three of the defined words or terms used in Defendants' First Sets of Interrogatories and Requests for Production of Documents.   First, Plaintiffs object on the ground of unduly burdensome to the definitions of "IDENTITY" or "IDENTIFY" when applied to a document.  Although all category (a) interrogatories use the definitions of "IDENTITY" or "IDENTIFY," none of the interrogatories specifically refers to documents. Similarly, Plaintiffs' objection to the definition of "ASSET(S)" does not apply to any of the category (a) interrogatories.  Thus, these definitional disputes do not apply to the interrogatories found to seek relevant information and need not be addressed.

However, Plaintiffs' objections to the definitions of "HOUSEHOLD" and "'MEMBER' OF YOUR HOUSEHOLD" must be addressed since the definitions apply to Rog No. 6. Plaintiffs object to the definitions of "HOUSEHOLD" and "'MEMBER' OF YOUR

HOUSEHOLD" on the grounds of vagueness and ambiguity stemming from the inclusion in the definitions of the term "economic unit," which itself is not defined.  Although "economic unit" is not defined, a reasonable inference may be drawn that "economic unit" means any group of individuals with whom Plaintiff shares finances, either by receiving monies from or giving monies to such individuals.  And this is the definition Defendants agree to accept as stated in the Joint Stipulation.  Thus, the term "economic unit" is broader than a group of individuals living under the same roof, which is Plaintiffs' preferred definition of "HOUSEHOLD."  Although Defendants' definition of "HOUSEHOLD" is not necessarily the traditional meaning of the word, it certainly is not vague or ambiguous; the definition is readily understood.  For these reasons, there is no merit to Plaintiffs' vagueness and ambiguity objections to the definitions of "HOUSEHOLD" and "'MEMBER' OF YOUR HOUSEHOLD" and the objections are overruled.

As an alternative to answering Defendants' interrogatories *and* responding to Defendants' document requests, Plaintiffs put forth their Proposal to provide certain financial information under oath.  However, Defendants object to the Proposal, noting the sole authority upon which Plaintiffs rely to support the Proposal is inapposite.  The Special Master agrees.  The case upon which Plaintiffs rely was Multi-District Litigation (MDL), involving hundreds of cases and thousands of plaintiffs, in which the district court as part of its case management responsibilities implemented an abbreviated discovery protocol in order to move the MDL toward resolution.  And on appeal, the Ninth Circuit noted that procedures utilized in MDL proceedings may be unique to MDLs.  *See, In re Phenylpropanolamine (PPA) Prods. Liability Lit.*, 460 F.3d 1217, 1222 (9th Cir. 2006) ("[T]he considerations that inform the exercise of discretion in multidistrict

litigation may be somewhat different, and may tip the balance somewhat differently, from ordinary litigation on an ordinary docket.").

Apart from the dearth of authority supporting the adoption of their Proposal, Plaintiffs do not really explain why the Proposal should be preferred to the well-established procedures in Rules 33 and 34. It does not appear that Plaintiffs are significantly different from any other plaintiffs in class action litigation where the traditional procedures under Rules 33 and 34 are routinely used. Moreover, this particular class action is a fairly simple case, with only two named Plaintiffs and a relatively small number of class members. It does not require any special discovery protocol, such as Plaintiffs' Proposal.

For the foregoing reasons, Defendants' motion to compel answers to Defendants' Interrogatories (First Set) **is granted** as to Interrogatory Nos. 1, 6, 7, and 9 as amended herein**,** and **is denied** as to Interrogatory Nos. 2, 3, 4, 5 and 8**.**

### Requests for Production of Documents.

Plaintiffs object to all of Defendants' requests for production of documents on relevancy grounds, making similar arguments to their relevancy objections to Defendants' interrogatories. Since the document requests seek information related to Plaintiffs' true identities, financial circumstances, and claims in this action, the Special Master finds that Defendants' Requests for Production of Documents seek relevant information within the meaning of Rule 26(b) and overrules Plaintiffs' objection. In making this ruling, the Special Master accepts Defendants' temporal limitations of six months before and six months *after* detention for RPD Nos. 2 through

8, for the reasons discussed above.

Nevertheless, the Special Master finds merit in Plaintiffs' objections to producing state and federal tax returns or records, which Defendants seek in RPD No. 2(e) and RPD No. 4(b). Although federal tax returns "do not enjoy an absolute privilege from discovery … a public policy against unnecessary public disclosures arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975); *see also Weingarten v. Sup. Ct.,* 102 Cal. App. 4th 268, 274 (2002) ("California courts … have interpreted state taxation statutes as creating a statutory privilege against disclosing [state] tax returns."); *A.Farber and Partners, Inc. v. Garber,* 234 F.R.D. 186, 191 (C.D. Cal. 2006) ("Although there is no federal common law privilege akin to the right of privacy, 'federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.'"  (citing *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (citations omitted)).

To determine whether the disclosure of federal tax returns is required, the courts generally apply a two-pronged test:

> to assure a balance between the liberal scope of discovery and the policy favoring confidentiality of tax returns.  First, the court must find that the returns are relevant to the subject matter of the action.  Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.

24

*Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997) (internal quotation marks and citation omitted); *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216-217 (W.D. Va. 1997).  "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable."  *Hilt*, 170 F.R.D. at 189 (internal quotation marks and citation omitted).

Here, Defendants have shown the relevancy of Plaintiffs' state and federal tax returns. However, they also have propounded category (a) interrogatories, discussed above, and detailed document requests, which should be sufficient to afford the same financial information as Plaintiffs' state and federal tax returns.  Thus, the motion to compel state and federal tax returns in response to RPD Nos. 2(e) and 4(b) should be denied without prejudice.  If the financial information Defendants obtain from Plaintiffs turns out to be deficient or insufficient, Defendants may renew their motion to compel state and federal tax returns in response to RPD Nos. 2(e) and 4(b).

Plaintiffs also object on the grounds of vagueness and ambiguity to the definitions of "HOUSEHOLD" and "'MEMBER' of YOUR HOUSEHOLD" in RPD Nos. 3, 4 and 8; on the grounds of overbreadth, unduly burdensome and confusing to the definition of "ASSET(S)" in RPD No. 7; and on the ground of unduly burdensome to the definitions of "IDENTITY" or

"IDENTIFY" when applied to a document in RPD No. 10.[11]

There is no doubt that Defendants' Definitions tend to be overly inclusive; they appear to be better suited to a securities fraud or anti-trust action than this case.  But having said that, the party serving a document request generally should be able to define a term used in the discovery in the manner the party deems best meets its purposes, unless the definition is incomprehensible or responding to the discovery would be disproportionate to the needs of the case considering the six factors set forth in Rule 26(b)(1).   This is especially true, here, when Plaintiffs likely will have few, if any, documents coming within the scope of Defendants' definitions.

As discussed above regarding Defendants' First Set of Interrogatories, Plaintiffs' objections to the definitions of "HOUSEHOLD" and "'MEMBER' OF YOUR HOUSEHOLD" are not well-taken.  On the other hand, Plaintiffs' objection to the definition of "ASSET(S)" on the ground of overbreadth has merit.   Defendants' definition of "ASSET(S)" has *26 subcategories* of assets, including intellectual property, negotiable and non-negotiable instruments, "[c]ontingent and non-contingent interests in estate of a decedent," personal property, items that have been or are licensed, etc.  There is no doubt that the definition is overly broad and not directed to Plaintiffs in this action.  (The Special Master would be surprised if Hernandez or Matias owns bearer bonds or has licensed intellectual property.)

Without an agreement by the parties regarding the definition of "ASSET(S)," the Special

---

[11]   The Joint Stipulation appears to ignore RPD No. 5(r), to which the disputed definition also applies in the context of a document.  Plaintiffs' objection to the definition in RPD No. 5(r) has been waived by the failure to discuss the objection in the Joint Stipulation.

Master sustains Plaintiffs' objection of overbreadth.  That does not mean, however, that Plaintiffs need not respond to RFD No. 7.  Rather, they should respond using the commonly understood definition of the word asset(s) instead of Defendants' definition.  The Special Master suggests the commonly understood definition of asset(s) is:

> A financial contract or physical object with value that is owned by an individual, company, or sovereign, which can be used to generate additional value or provide liquidity.  Assets are credits to the balance sheet, and may include cash, investments, accounts receivable, loans granted, inventory, real estate, plant and equipment, and goodwill.  Assets are characterized by varying degrees of liquidity, and may be funded through debt or equity.

Black's Law Dictionary (2d ed.).

Lastly, Plaintiffs object to the definitions of "IDENTITY" or "IDENTIFY" on the ground the definitions are unduly burdensome when applied to a *document*.[12]  It appears that the objected-to definitions apply only to RPD No. 10, relating to documents not otherwise identified

---

[12]  Defendants' definitions of "IDENTITY" or "IDENTIFY" require Plaintiffs to provide for each document:  title if any, date, author, sender, recipient, identities of signatories if any, type of document, names of persons known to have seen or received a copy, present location or custodian, and description of the document.  However, in lieu of providing the foregoing information, Plaintiffs may attach a legible copy of a document, specifying the document request and identifying the present custodian of the original or stating whether the document is missing, lost, destroyed or otherwise not in Plaintiffs' possession and identifying the location and custodian, if known.

Instead of using Defendants' definitions, Plaintiffs propose to respond to RPD No. 10 under Rule 33(d).  However, Rule 33(d) is an inapplicable.  First, Rule 33(d) applies to answering an interrogatory; not responding to a document request under Rule 34.  Second, Rule 33(d) applies solely to a party's "business records"; not an individual's personal records.  And third, Rule 33(d) is intended to be used when a party answering an interrogatory would have great difficulty because the party would need to identify voluminous records.  **When responding to RPD No. 10, Plaintiffs must respond as directed by Defendants.**

in response to the First Set of Interrogatories. *However, Plaintiffs have not yet answered any of Defendants' interrogatories!* Thus, Plaintiffs have not – and cannot --- meet their burden to show that responding to RPD No. 10 would be unduly burdensome or disproportionate to the needs of this case. And in any event, Defendants have offered to allow Plaintiffs in lieu of identifying responsive documents, to produce legible copies of the documents or to explain where the documents may be found if they are not in Plaintiffs' possession, custody or control severely undercuts Plaintiffs' objection. In short, Plaintiffs' unduly burdensome objection is without any basis and is not sustained.

For the foregoing reasons, Defendants' motion to compel responses to Requests for Production of Documents (First Set) **is granted** as to RPD Nos. 1, 2(a) through (d), 3, 4(a) and (c) through (r), 5 through 8 as amended herein, 9 and 10, and **is denied without prejudice** as to RPD Nos. 2(e) and 4(b).

## V.

The Special Master would like to take this opportunity to address a couple of glaring problems with the Joint Stipulation. First, the scope of the parties' discovery disputes shifts throughout the extremely lengthy Joint Stipulation. It is unclear which disputes have been resolved; which disputes are "alive" and need to be resolved by the Special Master; whether a party's proposed solution to a dispute has been subject to the meet-and-confer process; and whether a party's proposed solution to a dispute is raised for the first time in the Joint Stipulation. For example, as noted, it is not clear why the parties discuss Plaintiffs' General Objections to Defendants' discovery when Plaintiffs do not appear to rely on the General

Objections in their portion of the Joint Stipulation and, thus, have waived such objections. In short, the Special Master would like to take this opportunity to remind counsel that the Joint Stipulation should not set forth matters that are **not** in dispute. L.R. 37-2.

## ORDER

1.   Defendants' motion to compel responses to Defendants' First Set of Interrogatories **is granted** as to Interrogatory Nos. 1, 6, 7, and 9 as amended herein, and Plaintiffs Xochitl Hernandez and Cesar Matias, separately, shall provide answers to these interrogatories, no later than ten (10) from the entry of this Order.

2.   Defendants' motion to compel responses to Defendants' First Set of Interrogatories **is denied** as to Interrogatory Nos. 2, 3, 4, 5 and 8**.**

3.   Defendants' motion to compel responses to Defendants' First Set of Requests for the Production of Documents **is granted** as to RPD Nos. 1, 2(a) through (d), 3, 4(a) and (c) through (r), 5 through 8 as amended herein, 9 and 10**,** and Plaintiffs Xochitl Hernandez and Cesar Matias, separately, shall provide responsive documents, no later than ten (10) from the entry of this Order.

4.   Defendants' motion to compel responses to Defendants' First Set of Requests for the Production of Documents **is denied without prejudice** as to RPD Nos. 2(e) and 4(b).

5.   The Case Manager shall promptly file and serve this Order on the parties and the District Court.

Date:  October 15, 2018          By:  _Rosalyn M. Chapman_____

1220059390.6                          Hon. Rosalyn Chapman (Ret.),
                                      Special Master

29