JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director
GISELA A. WESTWATER (NE 28101)
Assistant Director
BRIAN C. WARD (IL 6404236)
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
COURTNEY E. MORAN (CA 288394)
OZLEM B. BARNARD (NY 4350583)
LINDSAY M. VICK (MA 685569)
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4023
Email: Lindsay.vick2@usdoj.gov

*Attorneys for the Defendants-Respondents*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

XOCHITL HERNANDEZ, CESAR MATIAS, for themselves and on behalf of a class of similarly-situated individuals,

Plaintiffs-Petitioners,

v.

JEFFERSON B. SESSIONS III, U.S. Attorney General, et al.,

Defendants-Respondents.

CIVIL ACTION NO. 5:16-00620-JGB-KK

**DISCOVERY MATTER**

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Judge: Hon. Jesus G. Bernal
Magistrate Judge: Hon. Kenly Kiya Kato
Special Master: Hon. Rosalyn M. Chapman

Discovery Cutoff Date: Dec. 20, 2018
Pretrial Conference Date: April 15, 2019
Trial Date: April 30, 2019

# TABLE OF CONTENTS

Page


I. Introduction ........ 1

II. Defendants' First Ex Parte Application Was Not Filed in Bad Faith ........ 2

III. Defendants' Second Ex Parte Application Was Not Filed in Bad Faith ........ 5

IV. Even if the Court Could Find Bad Faith, the Court May Only Grant Fees That Resulted Directly and Solely From Misconduct ........ 8

V. Conclusion ........ 10

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Baden*,
796 F.2d 1165 (9th Cir. 1986) .......... 2

*Fields v. Credit Mgmt. Sys.*,
No. EDCV 14-1853JGB (SPx,) 2016 WL 9088755 (C.D. Cal. Apr. 20, 2016) .. 1, 2

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) .......... 1

*Fox v. Vice*,
563 U.S. 826 (2011) .......... 8

*Garcia v. Los Angeles County Sheriff's Dept.*,
Case No.CV09-8943DMG(SHx), 2016 WL 9076797 (C.D. Cal. July 28, 2017) .... 9

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S. Ct. 1178 (2017) .......... 1, 2, 8, 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 1

*Mendez v. Cty. of San Bernardino*,
540 F.3d 1109 (9th Cir. 2008) .......... 2

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) .......... 5

*Schwarz v. Meinberg*,
No. CV1300356-BRO (PLAx), 2016 WL 4370050 (C.D. Cal. Aug. 10, 2016) ...... 1

**Rules**

Fed. R. Civ. P. 6(a)(2)(C) .......... 3

**I. <u>Introduction</u>**

Pursuant to Local Rule 37-2 and this Court's Order of September 14, 2018, ECF No. 223, Defendants hereby submit this supplemental memorandum in support of their Opposition to Plaintiffs' Motion for Attorneys' Fees.

Plaintiffs have not met the high standard for awarding attorneys' fees, and their motion should be denied in its entirety. Generally each party in a lawsuit bears its own attorneys' fees unless a statute provides otherwise. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In certain very-limited circumstances, a court can shift fees under its inherent authority. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *Fink v. Gomez,* 239 F.3d 989, 991 (9th Cir. 2001). But before a court can award fees under its inherent power, the court must specifically find that the party being ordered to pay fees acted in bad faith or with conduct tantamount to bad faith. *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187 (courts can grant fees that were incurred "solely because of a litigant's bad-faith conduct"); *Fink*, 239 F.3d at 989 ("a specific finding of bad faith must precede any sanction under the court's inherent powers." (internal alterations and quotation marks omitted)).

Neither of Defendants' ex parte applications were filed in bad faith, and Plaintiffs' creative interpretation of the discovery correspondence and negotiations between the parties in this case fails to show the bad faith needed to succeed on their Motion for Attorneys' Fees. The mere fact that the Court denied both ex parte applications does not mean they were filed in bad faith. *See, e.g.*, *Schwarz v. Meinberg*, No. CV1300356-BRO (PLAx), 2016 WL 4370050, at *4 (C.D. Cal. Aug. 10, 2016) (holding that pleading nine affirmative defenses that were struck down was not bad faith for purposes of awarding fees); *Fields v. Credit Mgmt. Sys*., No. EDCV 14-1853JGB (SPx,) 2016 WL 9088755, at *3-4 (C.D. Cal. Apr. 20, 2016) (Bernal, J.) (court cannot award fees even if claim is meritless where party seeking fees cannot show plaintiff knew claim was frivolous and pursued it with the intention to harass defendant). As Judge Bernal has noted, "[t]he bad faith requirement 'sets a

high threshold' which is not necessarily met even in instances where a litigant's arguments are characterized as frivolous, outrageous, inexcusable, or even when the litigant's behavior is appalling." *Fields*, 2016 WL 9088755, at *4 (quoting *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1132 (9th Cir. 2008)). Plaintiffs cannot meet this standard or show bad faith at all based on Defendants' good faith efforts to keep the Court informed of the status of discovery and the challenges Defendants faced, and their good faith attempts to help Plaintiffs avoid unnecessary work. Plaintiffs' motion for attorneys' fees falls well short of the high standard for shifting fees under the Court's inherent authority.

Additionally, any fees awarded under the inherent authority of a court "must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. A court must specifically establish a causal link "between the litigant's misbehavior and legal fees paid by the opposing party," *id.*, and ensure that any fee award is reasonable. *Brown v. Baden*, 796 F.2d 1165, 1184 (9th Cir. 1986). Plaintiffs fail to make any showing that their fees request is based on work that could not have been avoided or would not have been done anyway had Defendants filed regularly noticed motions, as Plaintiffs argue would have been the appropriate approach.

## II. <u>Defendants' First Ex Parte Application Was Not Filed in Bad Faith</u>

Defendants filed the first ex parte application on December 15, 2017, in an attempt to conform with the local rules and to alert the Court to the fact that Defendants would not be able to meet the December 15, 2017 deadline. As Defendants explained in that filing, "because the requested relief cannot be accommodated through a regularly noticed motion due to the impending Court-ordered deadlines, Defendants submit this ex parte application seeking relief from this Court." ECF No. 138. There was no bad faith or intention to mislead the Court. To the contrary, it was with an intention to alert the Court as soon as possible that Defendants could not meet the Court's short suspense. *See* ECF No 138 at 4. Even if

Defendants had instead filed a regularly noticed motion on the same day as the Court issued its order (and before Defendants had had an opportunity to fully assess their own capacities), the Court likely would not have ruled on the motion until two weeks after the deadline had passed. As Defendants communicated to both the Court and Plaintiffs at the time they filed their first ex parte motion, Defendants' intention was simply to alert the Court as soon as possible that the deadline was impossible to meet.

In ruling on the ex parte application, the Court did not identify any basis for finding that the application was filed in bad faith. The Court denied the ex parte application without prejudice, noting that "it appears the parties are continuing to meet and confer in good faith regarding further extensions." ECF No. 141 at 2.

Plaintiffs argue Defendants engaged in tactics that ensured they would need to work over the weekend, including a holiday weekend. But this is simply untrue. First, Plaintiffs insistence on filing their response over the weekend was not required by the rules. Plaintiffs note that Judge Kato's rules state that an opposition to an ex parte application should be filed within 24 hours. Federal Rule of Civil Procedure 6, which governs the computing of time periods, including "any time period specified in [the Federal] rules, in any local rule or court order," specifically states that when a "period is stated in hours" and "the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(2)(C). Plaintiffs' work over the weekend on a response was thus unnecessary, and they have never explained why they chose to file before the deadline.

Second, Defendants explicitly offered to work with Plaintiffs to avoid any unnecessary work on their part:

> On the timing of your response to our ex parte application, as noted above, our intent is simply to update the Court on the status of compliance and the need to amend the deadline, not to require Plaintiffs to brief these issues over the weekend. If Plaintiffs' understanding of Judge Kato's rules is that you would be required to file a response on

> Saturday, even if the 24-hour response period falls over the weekend, then we would not oppose a reasonable extension.
>
> ….
>
> Perhaps we could agree to extend Plaintiffs' deadline to respond until Wednesday, December 20th? If the Parties are able to reach an agreement on the joint stipulation before then, and the Court approves it, the ex parte application would likely no longer be necessary, and Defendants could at that point withdraw it so that Plaintiffs would not have to spend time drafting a response.
>
> Let us know how you would like to proceed. Although tomorrow is Saturday, we can make sure that someone from our team is available to review a draft extension request if Plaintiffs decide it is necessary to move for an extension tomorrow.

Ward Decl. Ex. 1, ECF No. 226-3.

Plaintiffs ignored these reasonable offers and instead chose to file a response over the weekend. As the Court approved the Parties' joint stipulation and dismissed Defendants' ex parte application without prejudice on the following Monday, had Plaintiffs simply followed Rule 6 or agreed to Defendants' offer of an extension, there would have been no need for Plaintiffs to respond to Defendants' ex parte application at all.

Plaintiffs also argue that Defendants' first request for ex parte relief was unnecessary in light of the earlier-filed stipulation, but this argument is belied by the Rule 37-1 Letter served on Defendants on *Saturday*, December 16, 2017, conveying Plaintiffs' intent to seek sanctions against Defendants for failing to meet the December 15, 2017 deadline. Ward Decl. Exs. 1, 2, ECF No. 226-3. Although Plaintiffs now argue that the stipulation was sufficient and made the ex parte application unnecessary, Plaintiffs' own position at the time was apparently that the stipulation alone was insufficient and that Defendants should be subject to a range of possible sanctions as a result. Ward Decl. Ex. 2 at 2, ECF No. 226-3 (suggesting that the Court should order a range of sanctions under Rule 37(2)(A)(i)-(vii), including ordering that the facts Plaintiffs alleged "be taken as established"). Sanctions of this

nature would have irreparably prejudiced Defendants. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Defendants' choice to file the ex parte application in these circumstances was reasonable. Defendants did not file the ex parte application in bad faith, and Plaintiffs have not shown otherwise.

## III. <u>Defendants' Second Ex Parte Application Was Not Filed in Bad Faith</u>

On February 23, 2018, Defendants filed a second ex parte application to amend the production deadlines. Like the previous application, this application was not filed in bad faith. Just as before, it was a good faith effort to notify the Court that Defendants would not be able to meet the Courts' February 28, 2018 deadline. Defendants informed Plaintiffs of the emerging challenges they faced in meeting the stipulated production deadlines as those challenges became apparent and tried to negotiate solutions in good faith, including by requesting reasonable limitations on the scope of discovery and possible stipulations to extend the production timeline. When those negotiations failed too close to the deadline to file a regularly noticed motion, Defendants filed an ex parte application.

Plaintiffs argue that Defendants did not do sufficient research to determine how long it would take them to comply with the Court's order compelling discovery and should have been aware of the impossibility to meet the deadline sooner. However, Defendants had insufficient time to gather adequate information. Prior to October 2017, Defendants believed in good faith that discovery was premature and had explained their rationale in a pending motion to stay discovery. Defendants made efforts to assess the possible volume of discovery after that motion was withdrawn following the Ninth Circuit's issuance of its decision on Defendants' appeal, but Defendants' ability to collect and assess the possible volume of documents was severely limited by the Court's 14-day deadline, leaving no time for Defendants to engage in fully informed negotiations. Nonetheless, Defendants made good faith efforts to gather as much information as possible before first agreeing to a new

production schedule. Thereafter, Defendants faced a range of unexpected technical problems, an unforeseeably large volume of data, and Plaintiffs who were unwilling to negotiate reasonable limitations on the scope of discovery.[1] Defendants shared the information available to them with Plaintiffs during the negotiations, believed they were on track to meet the deadlines in early 2018, and when it became clear that the anticipated timeline had changed, Defendants reached out to Plaintiffs to discuss possible solutions. This process ultimately concluded too close to the February 28, 2018 deadline to file a regularly noticed motion. There is no evidence that Defendants acted in bad faith through this process or by filing the second ex parte application. And there is no basis to argue it was filed to harass Plaintiffs.

Plaintiffs also argue that Defendants made misrepresentations about the number of custodians from whom they were collecting data. This claim is false. Plaintiffs refer to a December 26, 2017, letter from Defendants listing potential custodians. Ward Decl. Ex. 4, ECF No. 226-3. Defendants noted in the letter that they were providing a "preliminary list of custodians identified as most likely to have responsive information." *Id*. Defendants further explicitly stated: "Please note custodians may be added to this list if additional custodians are identified or custodians may be removed from this list if they are found not to hold responsive information." *Id*. Plaintiffs strongly objected to placing any reasonable limits on the number of custodians from whom documents were to be collected. Ward Decl. Ex. 3, ECF No. 226-3. In response, Defendants were forced to expand the list beyond the custodians believed most likely to have responsive and non-duplicative information. The existence of other possible custodians who were less likely to have responsive information did not make Defendants' suggested preliminary list of custodians a

[1] Defendants note that, after prompting by the Special Master, Plaintiffs have now agreed to many of the reasonable proposals Defendants raised previously. For example, although Plaintiffs rejected narrowing the start of the relevant time period to 2016, at the first meeting with the Special Master in July 2018, Plaintiffs volunteered this time-period limitation. Had Plaintiffs agreed to these limitations earlier, it would have significantly altered the progress of discovery in this case.

misrepresentation. Notably, the December 26 custodian list contained seven custodians for Defendant EOIR. Recently, under the Special Master's direction to meet and confer to properly limit the number of custodians, Plaintiffs agreed to reduce the custodian list for Defendant EOIR to seven custodians. *See* ECF No. 217, Joint Report. This is another example of Plaintiffs' unwillingness to agree, absent Court intervention, to reasonable, proportional limits on the scope of discovery. Prior to appointment of the Special Master, Plaintiffs continually invoked the broadly worded December 1, 2017 order and insisted Defendants produce documents only marginally touching on the subject matter of the case, which drastically expanded the volume of documents and pushed the timeline for production far beyond what Defendants had reasonably anticipated in their earlier stipulations. Defendants' attempt to limit EOIR custodians to those most likely to have responsive information was not a misrepresentation and was not done in bad faith.

Finally, Plaintiffs argue that ex parte applications are improper and unfair if used to surprise the opposing party, particularly if the moving party's filing reflects weeks of preparation. But that is not what happened in this case. Defendants communicated their intent to file both ex parte applications to Plaintiffs as early as possible, and there was no attempt to surprise Plaintiffs. Given the timing of when Defendants learned ex parte relief would be necessary, it was not possible for Defendants to spend weeks preparing the filings. Moreover, in the weeks leading up to the February deadline, Defendants were fully occupied with trying to bridge the technical problems impeding production, reviewing and producing the large number of documents that had been successfully collected and processed, and negotiating with Plaintiffs to limit discovery or to stipulate to an extension. If Defendants had been able to anticipate the need to move for an extension far in advance of the deadline, Defendants would have filed a regularly noticed motion instead. Plaintiffs' other reasons for claiming Defendants abused the ex parte process—by failing to orally notify Plaintiffs and forcing them to respond over the weekend—are simply

untrue. Far from engaging in "gamesmanship," as Plaintiffs allege, Defendants' intent was simply to alert Plaintiffs and the Court as soon as possible that the production deadlines would be impossible to meet.

## IV. Even if the Court Could Find Bad Faith, the Court May Only Grant Fees That Resulted Directly and Solely From Misconduct

Even in the unlikely event that the Court finds Defendants' conduct was tantamount to bad faith, attorneys' fees can only be granted for work that would not have been incurred "but for" the alleged misconduct at issue, in this case the ex parte applications. *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187. As the Supreme Court has said, "the trial court must determine whether the fees requested would not have accrued but for the frivolous claim." *Fox v. Vice*, 563 U.S. 826, 839 (2011). If a party would have incurred an expense in any event, he has suffered no incremental harm even if the claim the party responded to was frivolous, and without a showing that the party incurred some added expense, "the court lacks a basis for shifting the expense." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187.

Plaintiffs' inability to show any additional expense incurred from responding to the ex parte applications is a separate basis on which the Court should reject Plaintiffs' fee request in full. All the work Plaintiffs did responding to the first ex parte application was avoidable. Had Plaintiffs followed the Federal Rules or accepted Defendants' extension offer, they could have avoided 100% of the hours they devoted to that response. Plaintiffs also could have avoided any work over the weekend on their responses to either ex parte application. Plaintiffs cannot argue that this work was a necessary result of Defendants' actions.

Moreover, to the extent Plaintiffs had to do any work at all in response to Defendants extension requests, the ex parte applications were not the "but for" cause of that work. Plaintiffs' repeated argument above that Defendants should have raised their claims through regularly noticed motions rather than ex parte applications undermines their argument that fees are appropriate under the Court's inherent

authority. If Plaintiffs would have spent the same time—and potentially even *more* time—responding if Defendants had filed motions in place of the ex parte applications, then they cannot argue that the ex parte applications caused them work that could have been avoided but for those ex parte applications. Since fees under the Court's inherent authority are strictly limited to compensating a party for work that otherwise would not have been done, if the ex parte applications caused Plaintiffs no extra work, there is no basis for fees even if Plaintiffs other allegations were true. *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187 (The "fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior.").

Defendants note that this is not the first time Plaintiffs have filed unreasonable or improper fee requests. *See* ECF No. 150 at 2 ("the Court finds the requested amounts unreasonable"); ECF No. 167 at 2 (rejecting Plaintiffs' attempt to seek fees "on an ex parte basis"). As Judge Kato previously noted in this case, fees are not appropriate for hours that are excessive, redundant, or otherwise unnecessary. ECF No. 150 at 2.[2] The Court should find that all the hours Plaintiffs spent responding to Defendants' two ex parte applications were either unnecessary because they involved work that Plaintiffs could have avoided or involved work that otherwise would have been done in response to a regularly noticed motion. As a result, Plaintiffs have not identified a basis for the Court to shift any fees.

---

[2] Despite the Court previously finding Plaintiffs' fee request unreasonable, Plaintiffs in this filing seek to *increase* the hourly rate for several of their attorneys from $550 to $620. Defendants object to any increase beyond the rates the Court previously set. Moreover, Plaintiffs rely on cases involving law firm partners to argue these increased rates are appropriate. *See Garcia v. Los Angeles County Sheriff's Dept.*, Case No. CV 09-8943 DMG (SHx), 2016 WL 9076797 (C.D. Cal. July 28, 2017) (noting courts had found "$600/hour was a reasonable rate for a Milbank partner, $225/hour to $375/hour was a reasonable rate for a Milbank associate"). No partners worked on these filings and Plaintiffs have not put forth any argument, nor could they, that these filings were particularly complex or required the expertise of an experienced attorney or partner. *See* Order Granting Part, and Denying Part, Defendants' Mot. to Compel, ECF No. 228 at 23 (noting "this particular class action is a fairly simple case").

**V. <u>Conclusion</u>**

The Court should deny Plaintiffs' request for attorneys' fees. Throughout this case, Plaintiffs have taken aggressive, uncompromising, and unjustified positions on the scope and timeline for discovery. At times, discussions between the parties demonstrate that Plaintiffs have not even reviewed the documents they have demanded and received from Defendants, raising questions about whether Plaintiffs' positions on discovery are based on the needs of the case or simply designed to harass Defendants. Plaintiffs' positions have required Defendants to engage in motions practice and twice, given particular time constraints, ex parte applications.

None of Defendants' actions taken in this case, with respect to the ex parte applications or otherwise, were a result of bad faith, frivolous, or harassing motives. Instead, it is Plaintiffs who have surprised Defendants. Defendants were surprised in October 2017 when Plaintiffs served them with a 129-page motion to compel within weeks of the Ninth Circuit's decision, when Defendants had withdrawn their motion to stay discovery and the Parties' negotiations on the scope and timing of discovery were ongoing and making progress. Defendants were equally surprised by Plaintiffs' refusal to agree to a reasonable extension of time to respond to the motion to compel and their decision to take the extraordinary step of filing the motion without waiting for Defendants' response. Defendants were further surprised when the Court ordered Defendants to produce voluminous discovery on an impossibly short timeline. Defendants responded by engaging in good faith and reasonable efforts to negotiate with Plaintiffs under significant time pressures, complied with the deadlines when possible, and sought relief from the Court when negotiations failed. The Court should decline to reward Plaintiffs' gamesmanship, unwillingness to compromise, and relentless attempts to extract fees from Defendants.

Accordingly, Defendants respectfully request that the Court deny the motion for attorneys' fees in its entirety.

DATED: October 23, 2018

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

KATHERINE J. SHINNERS
BRIAN C. WARD
Senior Litigation Counsel

/s/ *Lindsay M. Vick*
LINDSAY M. VICK
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4023
Fax: (202) 305-7000
Email: Lindsay.vick2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 23, 2018

Respectfully submitted,

/s/ Lindsay M. Vick
LINDSAY M. VICK