Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street, 32nd Floor
Los Angeles, CA 90013
213-253-9776
rchapman@jamsadr.com
SPECIAL MASTER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XOCHITL HERNANDEZ, CESAR MATIAS, for themselves and on behalf of a class of similarly situated individuals, | Case No. EDCV 16-0620- JGB (KKx) |
| Plaintiffs-Petitioners, | (JAMS no. 1220059390) |
| v. | |
| WILLIAM P. BARR, U.S. Attorney General, et al., | |
| Defendants-Respondents. | |

**ORDER GRANTING, IN PART,
PLAINTIFFS' MOTION TO COMPEL DOCUMENTS REGARDING
IMPLEMENTATION OF PRELIMINARY INJUNCTION**

On February 19, 2019, Plaintiffs Xochitl Hernandez and Cesar Matias (collectively, "Plaintiffs") filed a notice of motion, motion and Joint Stipulation to compel Defendants United States Department of Homeland Security ("DHS") and Department of Justice ("DOJ") to respond or to further respond to discovery regarding the implementation of the preliminary injunction (Dkt. No. 273), the supporting declaration of Michael Kaufman with exhibits (Dkt. No. 273-1), and the opposing declaration of Lindsay M. Vick with numerous exhibits (the "Vick

Declaration" ("Decl.")), which attaches declarations by Jeffrey W. Wilson (Exhs.1-2), Clayton McLean (Exh. 4) and Jean King (Exh. 10) (Dkt. No. 273-2).  On February 25, 2019, Plaintiffs filed a supplemental memorandum (Dkt. No. 274) and a notice of errata re Exhibit 3 to the Kaufman Declaration (Dkt. No. 275), and Defendants filed a supplemental memorandum. (Dkt. No. 276).  Pursuant to the Special Master's Order, Defendants provided the Special Master with the Status Report filed under seal on February 16, 2018 (Dkt. No. 162). (Dkt. No. 281).

On March 7, 2019, the Special Master issued a [Tentative] Order granting, in part, Plaintiffs' motion to compel documents regarding implementation of the preliminary injunction, which was served on the parties.  Oral argument was held telephonically before Hon. Rosalyn Chapman, Special Master, on March 19, 2019.  Michael Kaufman, Staff Attorney with the ACLU Foundation of Southern California, and Douglas A. Smith, an attorney with Skadden Arps Slate Meagher & Flom LLP, appeared on behalf of Plaintiffs, and Brian Ward and Katherine J. Shinners, attorneys with the Office of Immigration Litigation, United States Department of Justice, appeared on behalf of Defendants.

**I.  Relevant Background.**

On November 10, 2016, the District Court denied Defendants' motion to dismiss, granted Plaintiffs' motion for class certification, and granted Plaintiffs' motion for a class-wide preliminary injunction. (Dkt. No. 84).  The District Court certified "a class encompassing '[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California.'"  (Id. at 19-27). The District Court granted a preliminary injunction "requir[ing] that

immigration officials consider ability to pay when setting a bond amount and release on alternative conditions where appropriate, and set bond at no greater amount than necessary to ensure the person's appearance." (Id. at 3, 27-41).

The class-wide preliminary injunction (Part I) requires that officials of Immigration and Customs Enforcement ("ICE") and Immigration Judges ("IJs") of the Executive Office of Immigration Review ("EOIR") (as well the Board of Immigration Appeals ("BIA") on appellate review), when considering whether to detain noncitizens in the Central District of California ("District") under 8 U.S.C. § 1226(a) by "setting, re-determining, and/or reviewing the terms of any person's release, must (a) consider the person's financial ability to pay a bond; (b) not set bond at a greater amount than that needed to ensure the person's appearance; and (c) consider whether the person may be released on alternative conditions of supervision, alone or in combination with a lower bond amount, that are sufficient to mitigate flight risk." (Dkt. No. 85 ¶ 1). The preliminary injunction (in Part I) further requires counsel for the parties, within 30 days, to jointly develop guidelines for ICE and IJs to apply, instructions for ICE and IJs, and notice for class members; to hold new custody redetermination hearings for class members within 45 days; to provide at least seven days' notices of the redetermination hearings; and for BIA to review on appeal whether an IJ has properly performed the foregoing analysis. (Id. ¶¶ 2-6).

Additionally, the preliminary injunction (in Part II) requires Defendants, within 60 days, to provide a Status Report "describing the steps taken to timely identify all class members and ensure that they receive custody redeterminations as required" and to list for each class member information including identity, booking date into ICE custody, date and outcome(s) of custody

determination(s) and bond(s) set or other condition(s) of release, any new custody redetermination(s) and outcome(s) and bond(s) set or other condition(s) of release, and information regarding any appeal(s) and bond(s) set or other condition(s) of release. (Id. ¶¶ 7-8).

On December 12, 2016, Defendants filed an interlocutory notice of appeal to the Ninth Circuit Court of Appeals. (Dkt. No. 87). On January 4, 2017, the Court of Appeals issued an order staying the proceedings, which was subsequently clarified as a stay of only the preliminary injunction. (Dkt. Nos. 94, 105).

On October 2, 2017, the Ninth Circuit affirmed the District Court's issuance of the class-wide preliminary injunction, finding the Court did not abuse its discretion when it "requir[ed] immigration officials when making bond determinations to, *inter alia*, consider (1) financial ability to obtain bond and (2) alternative conditions of release." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017). (Dkt. No. 118). The Court of Appeals also lifted the stay of the preliminary injunction. (Id.). In affirming the issuance of the preliminary injunction, the Ninth Circuit noted the District Court properly ordered that the "government submit a list of class members to Plaintiffs and that the government conduct new bond hearings for current class members whose bonds were set before the order went into effect." *Id.* at 987. The mandate from the Ninth Circuit was spread on the record on January 10, 2018. (Dkt. No. 151).

On November 21, 2017, the District Court, pursuant to the parties' joint stipulation, extended the deadlines in the preliminary injunction to: November 27, 2017, for Defendants to

implement the guidelines, instructions, and notice provisions; February 2, 2018, for Defendants to conduct new bond hearings for class members; and February 16, 2018, for Defendants to file the Status Report. (Dkt. No. 127). On February 16, 2018, Defendants filed the Status Report. (Dkt. No. 162).

On December 1, 2017, Magistrate Judge Kato granted Plaintiffs' motion to compel Defendants to provide supplemental responses and production of responsive documents without objection to Interrogatory Nos. 1 through 5 served on DOJ; Interrogatory Nos. 1 through 8 served on DHS; Request for Production of Documents ("RPD") Nos. 1 through 9 served on DOJ; and RPD Nos.1 through 15 served on DHS, as well as Plaintiffs' request for attorney fees ("Discovery Order"). (Dkt. No. 129). The Court ordered Defendants to provide supplemental responses and produce responsive documents to Plaintiffs within fourteen (14) days. (Id. at 6).

The parties and the Court several times extended all or some of the deadlines for Defendants to comply with the Discovery Order, see, e.g., Docket Nos. 137, 140, 146-147, 155, 157, and modified, to some extent, the manner in which Defendants would search for responsive documents and the documents required to be produced. See, e.g., Docket Nos. 149, 170, 173-176, 185. On December 21-22, 2017, the District Court approved and entered a Protective Order. (Dkt. Nos. 145, 148).

At the direction of the Special Master, the parties filed Initial Disclosures (Dkt. Nos. 191, 193) and a Joint Report and Rule 26(f) Discovery Plan (Dkt. No. 199). To assure Defendants' compliance with the Discovery Order, the Special Master on July 10, 2018, ordered Defendants

*inter alia* to: initially produce, within approximately 50 days, all responsive Bond Management Information System ("BMIS") documents covering the time period of January 1, 2016, through the present; twice monthly make rolling productions of documents to Plaintiffs, starting August 3, 2018; file declarations explaining in detail, and on a monthly basis, the steps ICE and EOIR have taken to comply with the Discovery Order since its issuance; file declarations explaining the several data bases maintained under the BMIS and to explain in detail, and on a monthly basis, the steps ICE took to produce information from the BMIS data bases; and to file privilege logs identifying documents withheld on claims of attorney-client or work product protection, within 30 days of claiming privilege in response to a discovery request. (Dkt. No. 195).

**II. The Discovery Disputes.**

Plaintiffs seek information regarding the implementation of the preliminary injunction, arguing such information is essential for determining the scope of the permanent injunction and information regarding Defendants' compliance with the preliminary injunction. They rely on the Rule 30(b)(6) deposition of IJ Robert Print Maggard as evidence of Defendants' questionable compliance. See, e.g., Kaufman Decl. ¶ 3, Exh. 2 at 143:5-8 (Q: "Does this obligation [not to set bond at a greater amount than that needed to ensure the person's appearance] impose a different requirement than what previously applied at bond hearings in the Central District?" A: "I do not believe so."); at 144:20-23 (Q: "In your view, this [requirement that conditions or bond amount is sufficient to ensure appearance at non-detention hearing] is the same standard in terms of evaluating flight risk as applied prior to the injunction in this case?" A: "Yes."); at 145:2-7 (Q: "I understood your position to be that the injunction did not change practices in the Central District except with respect to considering release on alternatives alone. Is that an accurate

statement?" A: "Yes").

To obtain information related to Defendants' compliance with the preliminary injunction, and to assist in determining the proper scope of a permanent injunction, Plaintiffs move to compel Defendants to respond to new requests for production of documents ("RPD") that essentially seek information since the issuance of the preliminary injunction in late 2017. Specifically, Plaintiffs move to compel responses from Defendants DOJ and DHS to identical document requests -- RPD No. 10 to DOJ and RPD No. 25 to DHS -- which seek current information or updated information for the period 2012 through late 2017 under the Discovery Order, when Defendants DOJ and DHS previously responded to RPD Nos. 1 and 2, respectively. Plaintiffs argue such discovery merely satisfies Defendants' ongoing obligation to supplement responses under Rule 26(e).

RPD No. 10 to DOJ and RPD No. 25 to DHS are identical:

> All electronic DATABASE records CONCERNING IMMIGRATION DETAINEES held under 8 U.S.C. § 1226(a) at any time during the Relevant Time Period – that is *between January 1, 2012 and the date of production* – including but not limited to electronic database records CONCERNING their detention, CUSTODY DETERMINATIONS, CUSTODY REDETERMINATIONS, IMMIGRATION BONDS, ALTERNATIVE CONDITIONS OF RELEASE, *representation by counsel,* removal proceedings, custody *and merits appeals* to the Board of Immigration Appeals, removal, *and appearances for removal*

*proceedings and removal.*

Jt. Stip. at 10:8-17, 29:16-30:2 (emphases added).

Plaintiffs also move to compel responses from Defendant DOJ to new RPD No. 14, which asks for EOIR's Records of Proceedings ("ROP") for 40 detainees, who, according to Defendants' February 2018 Status Report (Dkt. No. 162), were the subjects of detention hearings or redeterminations following the issuance of the preliminary injunction. Essentially, RPD No. 14 seeks information supplemental to information Defendant DOJ previously provided Plaintiffs in response to an earlier document request under the Discovery Order, RPD No. 5, wherein DOJ provided Plaintiffs with ROPs for 200 detainees. Jt. Stip. at 34:12-36:4. ROPs are case files that include all records from a detainee's case, including transcripts, filings, and written orders and decisions from bond hearings. Id. at 1 fn.1.

Defendants object to the motion to compel on several grounds, including that the requests are burdensome, unreasonably cumulative and duplicative, overbroad, seek irrelevant information, and are not proportional to the case. In particular, Defendants contend Plaintiffs have not shown why the information they have received to date is insufficient to determine the scope of a permanent injunction. Apart from the massive written discovery Defendants have provided, Plaintiffs have deposed several of Defendants' witnesses and had ample opportunity during those depositions to obtain post-injunction information. Further, Defendants contend they have no obligation to supplement their responses under Rule 26(e) since there is no *material* respect in which their responses are incomplete or incorrect.

Defendants further contend that Plaintiffs have not provided evidence to show there is any doubt regarding Defendants' compliance with the preliminary injunction; the ambiguous statements by IJ Maggard during his deposition certainly do not show non-compliance. Moreover, the District Court in Part II of the preliminary injunction set forth reporting requirements designed to determine compliance, and Defendants have fully complied with those reporting requirements.

Defendants argue that the Vick Declaration, paragraphs 15-22, clearly shows the massive documentation Defendants have produced to Plaintiffs, and that responding to the new requests would be both cumulative and duplicative. Since the issuance of the preliminary injunction, Defendants have made the following productions of documents: on June 22, 2018, in response to RPD Nos. 2 and 3 to Defendant DHS: a spreadsheet of Risk Classification Assessment ("RCA") data for 104 individuals (207 record entries); an EIDS lookup table; and BMIS data base records for 2,191 individuals for the post-injunction period of January 1, 2018, to August 8, 2018 (11,578 record entries). Vick Decl., ¶¶ 20-21. On August 30, 2018, Defendants produced a list of BMIS data fields; on November 16, 2018, Defendants produced supplemental BMIS data base records for 10,858 individuals for the period of January 4, 2016, to October 30, 2018 (73,901 record entries); on December 18, 2018, Defendants produced supplemental spreadsheets with additional bond data; and on February 14, 2019, Defendants produced supplemental RCA data to the extent such records existed. Id. And Defendants have produced to Plaintiffs the recordings of four redetermination hearings held in 2018 – after the issuance of the preliminary injunction -- on February 14th, February 15th, April 3rd, and April 17th. Id. ¶ 22.

## III. DISCUSSION

It cannot be disputed that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *see also Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("A trial court has wide discretion in setting the limits of discovery." (internal quotation marks and citation omitted).)  Likewise, the trial court has the inherent power to allow discovery to establish a party's noncompliance with one of its judgments. *California Dept. of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033-34 (9th Cir. 2008). "[T]he kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that need to show actual noncompliance.  If significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Levitt*, 523 F.3d at 1034 (footnote omitted); *see also Damus v. Nielsen*, 328 F.R.D. 1, 4-5 (D.C. D.C. 2018) (granting limited, random sampling discovery where Plaintiffs "raised significant questions of noncompliance" with preliminary injunction); *Blackberry Ltd. v. Typo Prods. LLC*, 2014 WL 4136586, at *5 (N.D. Cal. Aug. 21, 2014) (granting discovery where Plaintiff raised "serious questions … regarding [Defendant's] possible violations of the preliminary injunction").

In our case, Rule 26(b)(1) of the Federal Rules of Civil Procedure governs discovery:[1]

---

[1] As the parties note, Rule 26(e)(1) regarding supplemental discovery is also applicable. Rule 26(e)(1) provides: "A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that *in some material respect* the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B) (emphasis added).

> … Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1) (emphasis added). In other words, "[i]nformation is discoverable under the revised Rule 26(b)(1) if it is relevant to any party's claim or defense *and* is proportional to the needs of the case." *Advisory Comm. Notes to the 2015 Amendment to Rule 26* (emphasis added). "The present amendment restores the proportionality factors to their original place in defining the scope of discovery. This change reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses or objections." Id.

Moreover, Rule 26(b)(2)(C) *requires* restrictions or limitations to discovery in certain circumstances: "On motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, and less expensive; (ii) the party seeking discovery has

had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C) (emphasis added).

Some courts have concluded that "the 2015 amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery…. Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit discovery that it determines is not proportional to the needs of the case," considering the multiple factors set forth above. *McKinney/Pearl Restaurant Partners, LP v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 243 (N.D. Tex. Jan. 8, 2016). Other courts have characterized Rule 26(b) slightly differently, concluding "the trial court must apply a balancing of interests approach to the Rule[:] … Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *United Parcel Serv. Co. v. DNJ Logistic Group, Inc.*, 2018 WL 3199475, at *10 (W.D. Ky. 2018) (citations and internal quotation marks omitted).

Regardless of the approach, it is clear that "[t]he 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality. The fundamental principle of amended Rule 26(b)(1) is that lawyers must size and shape their discovery requests to the requisites of a case." *Roberts*

*v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. Jan. 11, 2016) (citations omitted). Taking into consideration all of the factors listed in Rule 26(b)(1) and (b)(2)(C), the ultimate question under the Rule is "whether the burden … of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1), 26(b)(2)(C)(iii).

(i) <u>RPDs No. 10 (DOJ) and No. 25 (DHS)</u>

As an initial matter, the Special Master does not find that Plaintiffs have raised significant or serious questions of Defendants' noncompliance with the preliminary injunction. The deposition statements by IJ Maggard are ambiguous, at best. And Plaintiffs have not identified a single class member who, since the issuance of the preliminary injunction, has had a non-compliant detention hearing or redetermination hearing -- unlike the Plaintiffs in *Leavitt*, who submitted evidence of at least twelve non-compliant cases, *id.*, 523 F.3d at 1035, and the Plaintiffs in *Blackberry*, who submitted testimonial and other evidence of noncompliance, 2014 WL 4136586, at *3-*5. Plaintiffs also have not introduced any statistical information showing the preliminary injunction has not had any effect, based on the percentage of detainees who are not released or remain detained, unlike the plaintiffs in *Damus*, 328 F.R.D. at 4. In short, Plaintiffs have not made any showing that the new document requests are relevant to demonstrating Defendants' noncompliance with the preliminary injunction. Plaintiffs' failure to show Defendants' noncompliance with the preliminary injunction is not fatal, in itself, to Plaintiffs' motion to compel; however, it is a factor to consider in determining proportionality or limitations on the discovery.

The Special Master also finds that Plaintiffs have not shown that Defendants' productions

to date are incomplete or incorrect "*in some material respect,*" within the meaning of Rule 26(e). Thus, the Special Master cannot conclude that Plaintiffs have shown Defendants have an obligation to supplement any previous productions of documents.

Nevertheless, RPDs No. 10 to Defendant DOJ and No. 25 to DHS appear to be relevant to the parties' claims and defenses, including whether a permanent injunction is required and, if so, the proper scope of the permanent injunction. The Special Master concludes, however, that the RPDs, *as drafted,* are overly broad, not proportional to the needs of the case, and seek some information of limited relevancy to the parties' claims and defenses.[2] Accordingly, the Special has limited the document requests to address these problems and to assure that the burden of the proposed discovery does not outweigh its likely benefit. Specifically, the Special Master finds the temporal period "*between January 1, 2012 and the date of production*" is overly broad and disproportionate to the needs of the case; rather, the period should be from October 2, 2017 -- the date the Ninth Circuit affirmed the preliminary injunction -- to the present. Further, the Special Master finds that documents regarding "*representation by counsel,*" "*merits appeals*" and "*appearances for removal proceedings and removal*" have limited relevancy, if any, to the gravamen of Plaintiffs' claims and, thus, are overly broad and disproportionate to the needs of

---

[2] In making this ruling, the Special Master finds no merit to Defendants' argument that the District Court, by setting reporting requirements in Part II of the preliminary injunction, intended to preclude or limit discovery related to the preliminary injunction. First, the preliminary injunction does not address ongoing discovery and second, even if the requirement of a status report was intended to be an initial limitation, it has now been one year since the Status Report was filed. *Cf. Palmer v. Rice*, 231 F.R.D. 21, 26-27 (D.C. D.C. Sept. 9, 2005) (allowing Plaintiffs additional discovery under Rule 56(f) despite termination of reporting requirements).

the case; thus, these types of documents should be stricken from the requests.[3]

In reaching these conclusions, the Special Master considered the factors set forth in Rule 26(b)(1) and (b)(2)(C); the lack of evidence showing Defendants' noncompliance with the preliminary injunction; the relatively small and discrete certified District-wide class under Section 1226(a), which ranged from 262 to 296, as of February 16, 2018; the extensive documentary information Defendants have produced to date under the Discovery Order, most of which covers the time period from January 1 2012 through 2017, Vick Decl. ¶¶ 16-22; Defendants' production of some documentary information for the period since the issuance of the preliminary injunction, id. ¶¶ 20-22; and that responses to some of the new discovery would be duplicative of responses already produced, id. ¶ 15.

For the foregoing reasons, Plaintiffs' motion to compel responses from Defendants DOJ and DHS to RPD Nos. 10 and 25, respectively, **is granted as limited above**.

(ii) RPD No. 14 (DOJ).

RPD No. 14 to Defendant DOJ seeks ROPs for 40 detainees identified in Defendants' Status Report of February 2018, which discovery is intended to supplement 200 ROPs Defendants previously produced under the Discovery Order. This discovery request is relevant to Plaintiffs' claims; reviewing a random sample of post-injunction ROPs may assist Plaintiffs in determining whether the preliminary injunction has been effective and, thus, the scope of the

---

[3] At oral argument, Plaintiffs contended that the Ninth Circuit's opinion in *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) supports their request for information about "*merits appeals*." The Special Master disagrees, and reminds the parties that discovery in this action cannot properly be used to discover information relevant to other litigation.

permanent injunction or whether a permanent injunction needs to be different than the preliminary injunction. This is especially so since the preliminary injunction does not require Defendants to make ongoing reports.

Despite the relevancy of Plaintiffs' request, the Special Master must determine whether ROP No. 14 is proportional within the meaning of Rule 26(b)(1) or must be limited within the meaning of Rule 26(b)(2)(C). Here, the Special Master is concerned that, although Defendants have already produced ROPs for four detainees who have had detention hearings or redetermination hearings since the issuance of the preliminary injunction, Plaintiffs do not discuss or explain how the four ROPs have been helpful – or not – in assessing the efficacy of the preliminary injunction. This failure somewhat undermines the relevancy determination. In reality, are the post-injunction ROPs relevant to determining the effect of the preliminary injunction? Further, Plaintiffs fail to explain how or why they seek "40" ROPs as a random sample -- as opposed to "10" or "20" or "30." However, since Defendants oppose any request for ROPs – and Defendants have not met their burden to show complying with the request outweighs its likely benefit -- the Special Master finds Plaintiffs' request is proportional to the needs of the case in light of the factors set forth in Rule 26(b)(1) and 26(b)(2(C), as well as the factors considered above in limiting RPD Nos. 10 and 25. Thus, Plaintiffs' motion to compel the production of documents from DOJ to RPD No. 14 **is granted.**

## ORDER

1. Plaintiffs' motion to compel documents regarding implementation of the preliminary injunction is granted, in part, and denied in part:

   (a) the motion is granted, as limited above, to Request for Production of Documents No. 10 to Defendant Department of Justice and Request for Production of Documents No. 25 to Defendant Department of Homeland Security, and Defendants shall produce to Plaintiffs documents responsive to these requests, as limited, no later than ten (10) days from the date of this Order; and

   (b) the motion is granted to Request for Production of Documents No. 14 to Defendant Department of Justice, and Defendant Department of Justice shall produce the responsive documents to Plaintiffs, no later than ten (10) days from the date of the Order herein.

  2. The Case Manager shall promptly file and serve this Order on the parties and the District Court.

Date: March 25, 2019      By: _____
1220059390.9B         Hon. Rosalyn Chapman (Ret.),
            Special Master