1  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclusocal.org
2  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
3  Los Angeles, California 90017
   Telephone: (213) 977-5232
4  Facsimile: (213) 915-0219

5  *Attorneys for Plaintiffs-Petitioners*

6  *Additional Counsel for Plaintiffs
    and Defendants on Following Page*
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| XOCHITL HERNANDEZ, CESAR MATIAS, for themselves and on behalf of a certified class of similarly situated individuals,<br><br>*Plaintiffs-Petitioners,*<br><br>v.<br><br>MERRICK GARLAND, U.S. Attorney General, et al.,<br><br>*Defendants-Respondents.* | Case No. 5:16-00620-JGB-KK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Hearing Date: December 6, 2021<br>Hearing Time: 9 a.m.<br>Complaint Filed: April 6, 2016<br><br>Honorable Jesus G. Bernal |

MICHAEL TAN (*pro hac vice*)
mtan@aclu.org
JUDY RABINOVITZ (*pro hac vice*)
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

STEPHEN KANG (SBN 292280)
skang@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0783
Facsimile: (415) 395-0950

DOUGLAS A. SMITH (SBN 290598)
dougsmith@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave, 25th Floor
Los Angeles, California 90071
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

MATTHEW E. SLOAN (SBN 165165)
matthew.sloan@skadden.com
ASHLEY PHILLIPS (SBN 318397)
ashley.phillips@skadden.com
WINSTON P. HSIAO (SBN 273638)
winston.hsiao@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 S. Grand Ave, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5276
Facsimile: (213) 621-5276

*Attorneys for Plaintiffs-Petitioners*

BRIAN C. WARD (IL 6404236)
brian.c.ward@usdoj.gov
KATHERINE J. SHINNERS (DC 978141)
Katherine.J.Shinners@usdoj.gov
Senior Litigation Counsel
COURTNEY E. MORAN (CA 288394)
courtney.e.moran@usdoj.gov
OZLEM B. BARNARD (NY 4350583)
ozlem.b.barnard@usdoj.gov
DHRUMAN Y. SAMPAT (NJ 270892018)
dhruman.y.sampat@usdoj.gov

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4023

*Attorneys for the Defendants-Respondents*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

**TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................... 1

II.  BACKGROUND TO THE AGREEMENT ..................................................... 2

III. THE TERMS OF THE SETTLEMENT AGREEMENT. ................................. 3

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THE AGREEMENT BECAUSE IT MEETS THE STANDARDS OF RULE 23(E) ......................... 5

    A.  The Agreement Provides the Class with Substantial Benefits and Avoids the Risk and Expense of Further Litigation. .................................................. 6

    B.  The Agreement Is the Product of Arms-Length Negotiations Between Well-Informed and Experienced Counsel. ..................................................... 7

    C.  The Proposed Notice Plan Provides Reasonable Notice to Class Members. ............................................................................................................ 8

V.   CONCLUSION ........................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Casas-Castrillon v. Dep't of Homeland Security,*
  535 F.3d 942 (9th Cir. 2008) .................................................................................. 5

*Chavez v. Netflix, Inc.,*
  162 Cal. App. 4th 43 (2008) .................................................................................. 9

*Churchill Vill. v. GE,*
  361 F.3d 566 (9th Cir. 2004) .................................................................................. 8

*Dunk v. Ford Motor Co.,*
  48 Cal. App. 4th 1794 (1996) ................................................................................ 9

*Franco-Gonzalez v. Holder,*
  No. CV-10-02211 (C.D. Cal. Apr. 23, 2013) ......................................................... 5

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ................................................................................ 8

*Hernandez v. Sessions,*
  872 F.3d 976 (9th Cir. 2017) .................................................................................. 2

*In re Lorazepam & Clorazepate Anittrust Litig.,*
  No. MDL 1290(TFH), 99MS276(TFH), Civ. 99-0790(TFH), 2003 WL 22037741 (D.D.C. June 16, 2003) ...................................................................... 8

*In re M.L. Stern Overtime Litig. (JMA),*
  No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ............................................................................................................... 5

*Officers for Justice v. Civil Serv. Com.,*
  688 F.2d 615 (9th Cir. 1982) .................................................................................. 6

*Rodriguez v. Marin,*
  No. CV-07-03239 (C.D. Cal. Aug. 6, 2013) .......................................................... 4

*Rodriguez v. W. Publ'g,*
  563 F.3d 948 (9th Cir. 2009) .................................................................................. 6

*Vasquez v. Coast Valley Roofing, Inc.,*
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) .................................................................. 6

**Statutes, Regulations, and Rules**

8 U.S.C. § 1226(a) ................................................................................................ *passim*

28 C.F.R. § 0.45(k) (2013) ............................................................................................. 7

Fed. R. Civ. P. 23(e)(1) ................................................................................................... 8

## I. INTRODUCTION

The parties respectfully request that the Court preliminarily approve the parties' Settlement Agreement and Release ("the Agreement").[1] The Agreement arises out of litigation to establish procedures for setting bond and conditions of release for individuals detained under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). Plaintiffs filed this lawsuit, on behalf of themselves and similarly situated individuals, alleging that the government failed to adequately consider individuals' ability to pay a bond and alternative, non-monetary conditions of supervision when setting conditions of release under § 1226(a) and that this violated the INA and the U.S. Constitution. This Court entered a preliminary injunction order requiring the government to consider these factors when making custody determinations, and that order was affirmed by the Ninth Circuit. If the Court approves the Agreement, Defendants will continue providing these procedures when setting bond and conditions of release under § 1226(a). In return, Plaintiffs agree to refrain from seeking permanent injunctive relief and release Defendants from the settled claims.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the parties now request that the Court preliminarily approve the Agreement; approve the form and plan of notice; and schedule a final fairness hearing, as set forth in the attached stipulated order ("Proposed Order"). The Agreement qualifies for preliminary approval, as set forth below. The Agreement provides the Class with the essential elements of the relief sought in this case, and the proposed form and plan of notice provides the best notice that is practicable under the circumstances. The Court should therefore preliminarily approve the Agreement, and approve the form and plan of notice.

---

[1] The Settlement Agreement and associated documents are attached as Exhibit A to this Motion.

## II. BACKGROUND TO THE AGREEMENT

The underlying dispute that this Agreement resolves concerns the appropriate procedures for determining bond and conditions of release for noncitizens detained under 8 U.S.C. § 1226(a) in the Central District of California. Plaintiffs Xochitl Hernandez and Cesar Matias filed the instant action alleging that Defendants failed to consider immigration detainees' ability to pay and alternative, non-monetary conditions of release when setting bonds under § 1226(a), violating their rights under the Constitution and the INA. Plaintiffs sought habeas, declaratory, and injunctive relief on behalf of themselves and a class of similarly situated immigration detainees.

On November 10, 2016, the Court certified a class of "[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California." (ECF 84 at 19, 27). On the same date, the Court also entered a class-wide preliminary injunction requiring Defendants U.S. Immigration and Customs Enforcement ("ICE") and the Executive Office of Immigration Review ("EOIR"), when setting, re-determining, and/or reviewing the terms of any person's release under § 1226(a), to (1) consider the person's financial ability to pay a bond; (b) not set bond at a greater amount than that needed to ensure the person's appearance; and (c) consider whether the person may be released on alternative conditions of supervision, alone or in combination with a lower bond amount, that are sufficient to mitigate flight risk. (ECF 85 at § I.1).

On October 2, 2017, the U.S. Court of Appeals for the Ninth Circuit affirmed the preliminary injunction order, holding that Plaintiffs were likely to succeed on the merits of their claim under the Fifth Amendment's Due Process Clause and that "due process likely requires consideration of financial circumstances and alternative conditions of release." *Hernandez v. Sessions*, 872 F.3d 976, 990-91 (9th Cir. 2017). Since that time, the parties have engaged in

extensive fact discovery, including written discovery; the production of files, transcripts, and database information for Class Members; the preparation of expert reports; and numerous depositions.

On May 21, 2019, this Court granted the parties' joint request for referral to a voluntary settlement conference, referring the case to Magistrate Judge Laurel Beeler of the U.S. District Court for the Northern District of California. *Hernandez v. Barr*, 3:19-mc-80145-LB (N.D. Cal. May 31, 2019) (ECF 1). Since that time, the parties have engaged in extensive, arms-length negotiations regarding the terms of the Agreement and attorneys' fees and costs. The parties reached final agreement on January 19, 2021.

### III. THE TERMS OF THE SETTLEMENT AGREEMENT

The Agreement sets forth procedures for determining bond and conditions of release in this District that are consistent with both this Court's preliminary injunction order and the Ninth Circuit's decision affirming that order.

The Agreement sets forth procedures for ICE custody determinations, immigration judge ("IJ") custody redeterminations, and appeals of custody determinations and redeterminations. Exh. A, § III. For individuals detained under § 1226(a) within the District who are eligible for release on bond, when setting or reviewing the terms of a detainee's release, ICE will (1) consider the detainee's financial circumstances and financial ability to pay a bond; (2) not set bond at a greater amount than necessary to ensure the detainee's appearance at all future immigration proceedings, including for removal if so ordered; and (3) consider whether the detainee may be released on alternative conditions of release, alone or in combination with a bond, that are sufficient to mitigate flight risk. *Id*. § III.A.1. In making the initial custody determination, ICE will ask the detainee to explain his or her financial circumstances, and may evaluate the detainee's financial circumstances based on testimony alone or based on documentation or other evidence when the officer determines such evidence is necessary to evaluate the

detainee's financial ability to pay a bond. *Id*. § III.A.4.ii.

Similarly, when conducting custody redetermination hearings for individuals detained under § 1226(a) within the District, if an IJ determines that the detainee is eligible for release on bond, the IJ will (1) consider the detainee's financial circumstances and financial ability to pay a bond; (2) not set bond at a greater amount than necessary to ensure the detainee's appearance at all future immigration proceedings, including for removal if so ordered; and (3) consider whether the detainee may be released on alternative conditions of release, alone or in combination with a lower bond, that are sufficient to mitigate flight risk. *Id*. § III.B.1.

The IJ must affirmatively inquire into the detainee's financial circumstances and make an individualized assessment of the detainee's current ability to pay the bond amount to be set. *Id*. § III.B.4. In assessing a detainee's ability to pay, the IJ should consider all relevant evidence in the record, including any information solicited by ICE, and may inquire into any additional evidence presented relevant to an ability to pay. *Id*. § III.B.5-6. The IJ may assess a detainee's financial circumstances based on their sworn testimony alone or, where necessary, may require the detainee to provide corroborative evidence concerning the detainee's financial circumstances. *Id*. § III.B.7. When rendering a decision in which a bond is set, if the parties have not stipulated to the bond amount or conditions of release, the IJ should explain why, whether orally or in writing, the bond amount is appropriate in light of any evidence of the detainee's financial circumstances. The IJ should also explain why he or she did or did not order alternative conditions of supervision. *Id*. § III.B.10.[2] Class Members may appeal an IJ's custody or bond

---

[2] Because the Agreement does not alter the existing process for determining whether an individual is eligible for release, the Agreement applies to both initial bond hearings conducted under § 1226(a) and bond hearings for cases of prolonged detention, authorized pursuant to *Rodriguez v. Marin*, No. CV-07-03239 (C.D. Cal.

(cont'd)

4
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

determination to the Board of Immigration Appeals ("BIA"), including an IJ's assessment of the Class Member's financial ability to pay a bond and what, if any, conditions of release are necessary to mitigate flight risk and ensure the alien's future appearance. *Id.* § III.C.2.

The Settlement provides for the distribution to ICE and IJs of a notice, guidelines, and instructions regarding implementation of the Agreement, as well as training on the requirements of the Agreement. *Id.* § IV. The Agreement also provides that ICE and EOIR will provide periodic data reports to Class Counsel for a default period of four years to allow Class Counsel to monitor the implementation of the Agreement. *Id.* § V. Should the Court make no findings of non-compliance during the first three years the Agreement is in effect, Defendants will have no obligation to produce data reports covering the fourth year. *Id.* § V.G.3.

Finally, the Agreement provides that, when the Parties request that the Court enter final approval of the Agreement, Class Counsel will file a separate motion for Court approval of attorneys' fees in the sum of $1,600,000 and costs up to the sum of $148,975.72. Defendants shall not oppose Class Counsel's motion for fees and costs in those amounts. *Id.* § XII.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE AGREEMENT BECAUSE IT MEETS THE STANDARDS OF RULE 23(e).

The Court should preliminarily approve the Agreement because it easily "falls within the range of possible judicial approval." *In re M.L. Stern Overtime Litig.* (JMA), No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9-10 (S.D. Cal. Apr. 13, 2009) (internal quotation marks and citation omitted). When

---

Aug. 6, 2013), *Franco-Gonzalez v. Holder*, No. CV-10-02211 (C.D. Cal. Apr. 23, 2013), and *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), to the extent these cases remain good law. *Id.* § III.B.2 n.1.

reviewing a settlement for preliminary approval, the Court may consider the same factors that it will balance at that Fairness Hearing, *see, e.g., Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124-26 (E.D. Cal. 2009), which include: (1) "the strength of plaintiffs' case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed, and the stage of the proceedings;" and (6) "the experience and views of counsel." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The Court should presume the fairness of arms-length settlements reached by experienced counsel. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

### A. The Agreement Provides the Class with Substantial Benefits and Avoids the Risk and Expense of Further Litigation.

The Agreement resolves a substantial set of disputed questions of law and fact regarding the procedures required to ensure that bond hearings for Class Members are conducted consistent with constitutional and statutory requirements. The Agreement implements the procedures required by this Court in its preliminary injunction order, and affirmed by the Ninth Circuit—namely, consideration, by ICE and IJs, of Class Members' ability to pay when setting bond and alternative conditions of release.

The Agreement guarantees Class Members significant benefits. The Agreement requires that, in setting or reviewing the terms of a Class Member's release, ICE and the IJ consider each Class Member's financial circumstances and financial ability to pay a bond; not set bond at a greater amount than necessary to ensure the Class Member's appearance at all future immigration proceedings, including for removal if so ordered; and consider whether the Class Member may be released on alternative conditions of release, alone or in combination with a

bond, that are sufficient to mitigate flight risk. Exh. A, §§ III.A.1, III.B.1. It requires that ICE and the IJ affirmatively inquire into Class Members' ability to pay and identifies facts and evidence that are relevant to this inquiry. *Id*. §§ III.A.4, III.B.5-7. The Agreement further requires that the IJ, when rendering a decision in which a bond is set (if the parties have not stipulated to the conditions of release), should explain why, whether orally or in writing, the bond amount is appropriate in light of the Class Member's financial circumstances and why he or she did or did not order alternative conditions of supervision. *Id*. § III.B.10. Class Members may seek review of the IJ decision from the BIA. *Id*. § III.C.2.

In addition to providing Class Members significant benefits, the Agreement will avoid significant expense and delay in the litigation. The parties have vigorously litigated this matter for over four years, including several years of discovery. Should the case go forward, the parties anticipate substantial expert discovery; briefing and argument on cross-motions for summary judgment; a possible trial; and a possible appeal to the Ninth Circuit. Thus, the Agreement will avoid significant expense and time through the favorable resolution of Class Members' claims.

**B.    The Agreement Is the Product of Arms-Length Negotiations Between Well-Informed and Experienced Counsel.**

Counsel for both parties have extensive experience with similar actions, which further supports preliminary approval of the Agreement. Plaintiffs' counsel has substantial experience with class actions, civil rights actions, complex litigation and immigration litigation, including litigation on behalf of individuals in immigration detention. And certainly no one has more experience defending lawsuits raising constitutional and statutory claims related to ICE and EOIR than Defendants' counsel at the United States Department of Justice. *See* 28 C.F.R.

§ 0.45(k).[3] The opinion of the parties' experienced counsel "should be afforded substantial consideration" in reviewing this Agreement. *See In re Lorazepam & Clorazepate Anittrust Litig.*, No. MDL 1290(TFH), 99MS276(TFH), Civ. 99-0790(TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003).

The Settlement is the product of extensive, non-collusive negotiation between Counsel for both parties. Prior to those negotiations, the parties vigorously litigated this case for several years, litigating a motion for a preliminary injunction and an appeal of this Court's preliminary injunction order, and engaging in extensive discovery. The parties have negotiated the Agreement since the summer of 2019, including numerous in-person settlement conferences with Judge Beeler, telephonic conferences, and exchanges of draft settlement agreements, and are extremely familiar with the issues. The parties' significant litigation and negotiations over these issues further supports preliminary approval of the Agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims").

### C. The Proposed Notice Plan Provides Reasonable Notice to Class Members.

Under Federal Rule of Civil Procedure 23(e)(1), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Vill. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The Notice Plan in the Settlement easily fulfills these requirements. *See* Exh. A, § VII.

---

[3]     *See also* http://www.justice.gov/civil/oil/dcs/oil-dcs.html.

The Notice to the Class and Settlement Agreement will be distributed within ten (10) business days of the date of preliminary approval by: posting the Notice to the Class and Settlement Agreement on the EOIR and ACLU of Southern California websites; distribution of the Notice to the Class and this Settlement Agreement to the individuals and organizations on EOIR's current List of Pro Bono Legal Service Providers in this District and the local American Immigration Lawyers' Association listserv; and posting of the Notice to the Class in all housing units in detention facilities where Class Members are detained in the District for longer than 72 hours, in an area prominently visible to immigration detainees. The Notice to the Class shall remain posted, and shall be maintained or replaced with new copies as needed, until the Court issues an order finally approving or rejecting the Agreement. The Notice will include information regarding the eligibility requirements and procedures for relief for Class Members such that all Class Members will be able to make an informed decision whether to object to the Agreement. *See* Kaufman Decl. The Notice also directs Class Members to websites containing the full Agreement, should Class Members require more information to make an informed choice regarding whether to object. "Using a summary notice that direct[s] the class member wanting more information to a Web site containing a more detailed notice, and provide[s] hyperlinks to that Web site, [is] a perfectly acceptable manner of giving notice. . . ." *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 58 (2008).[4]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

A. Preliminarily approving the Agreement;

---

[4] California courts frequently rely on federal case law for the procedures and standards for approval of class settlements. *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 n.7 (1996).

B. Approving the Proposed Notice Plan and Notice to the Class described in Section VII of the Agreement, and attached thereto as Kaufman Decl.;

C. Setting the Objection Date as thirty (30) days after the Notice to the Class is posted;

D. Setting the date and time of the Fairness Hearing to be held twenty-one (21) days after the Objection Date, or as soon thereafter as the matter may be heard; and

E. Granting any further relief the Court deems just and proper.

Respectfully submitted,

Dated: October 25, 2021         By: /s/ Michael Kaufman
                                    MICHAEL KAUFMAN
                                    Counsel for Plaintiffs

Dated: October 25, 2021         By: /s/ Brian Ward
                                    BRIAN WARD
                                    Counsel for Defendants