UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-620 JGB (KKx)** | Date | January 24, 2022 |
| Title | *Xochitl Hernandez et al. v. Merrick Garland et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 357); and (2) VACATING the January 31, 2022 Hearing (IN CHAMBERS)**

Before the Court is a motion for preliminary approval of class action settlement filed by Plaintiffs Xochitl Hernandez and Cesar Matias (collectively, "Plaintiffs"), jointly with Defendants. ("Motion," Dkt. No. 357.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of this matter, the Court GRANTS the Motion and VACATES the January 31, 2022 hearing.

## I.  BACKGROUND

On April 6, 2016, Plaintiffs Cesar Matias and Xochitl Hernandez filed a complaint, for themselves and on behalf of a class of similarly situated individuals, against Defendants Loretta Lynch, Juan P. Osuna, Jeh Johnson, Sarah R. Saldana, David Jennings, James Janecka, Christina Holland, Carlos Roja, Jon Briggs, Mike Krueger, and Sandra Hutchens. ("Complaint," Dkt. No. 1.) The Complaint asserts four causes of action: (1) Violation of the Immigration and Nationality Act; (2) Violation of the Due Process Clause of the Fifth Amendment; (3) Violation of the Equal Protection Guarantee of the Fifth Amendment; and (4) Violation of the Excessive Bail Clause of the Eighth Amendment.

On November 10, 2016, the Court certified a class of "[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California." ("Class Certification Order," Dkt. No. 84 at 19, 27.) That same day, the Court also entered a class-wide

preliminary injunction requiring Defendants U.S. Immigration and Customs Enforcement ("ICE") and the Executive Office of Immigration Review ("EOIR"), when setting, re-determining, or reviewing the terms of any person's release under § 1226(a), to (1) consider the person's financial ability to pay a bond; (b) not set bond at a greater amount than that needed to ensure the person's appearance; and (c) consider whether the person may be released on alternative conditions of supervision, alone or in combination with a lower bond amount, that are sufficient to mitigate flight risk. (Dkt. No. 85 at § I.1.)

On October 2, 2017, the U.S. Court of Appeals for the Ninth Circuit affirmed the preliminary injunction order, holding that Plaintiffs were likely to succeed on the merits of their claim under the Fifth Amendment's Due Process Clause and that "due process likely requires consideration of financial circumstances and alternative conditions of release." Hernandez v. Sessions, 872 F.3d 976, 990-91 (9th Cir. 2017).

On May 21, 2019, the Court granted the parties' joint request for referral to a voluntary settlement conference, referring the case to Magistrate Judge Laurel Beeler of the U.S. District Court for the Northern District of California. Hernandez v. Barr, 3:19-mc-80145-LB (N.D. Cal. May 31, 2019) (Dkt. No. 1.)

The parties jointly filed the instant Motion and supporting papers on October 25, 2021.

## II. LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014). A court may certify a class if the plaintiff demonstrates that the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness,

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure, unless otherwise noted.

reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III. PROPOSED SETTLEMENT CLASS

The parties finalized and executed the class action settlement agreement on October 25, 2021. ("Agreement," Dkt No. 357-3, at 25.) The Agreement defines "Class Member(s)" as "individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an ICE officer or immigration judge in the Central District of California." (Id. § I.G.) Previously, on November 10, 2016, the Court certified a functionally identical class of "[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California." (See Class Certification Order.)

Accordingly, for purposes of settlement only, the Court finds that the prerequisites for a class action under Rule 23(a) and 23(b)(2) have been preliminarily satisfied for the same reason as the Court found in its order granting Plaintiffs' Motion for Class Certification. (Id.)

### IV. SETTLEMENT AGREEMENT

**A. Agreement Summary**

The Agreement sets forth procedures for determining bond and conditions of release in this District that are consistent with both this Court's preliminary injunction order and the Ninth Circuit's decision affirming that order.

The Agreement sets forth procedures for ICE custody determinations, immigration judge ("IJ") custody redeterminations, and appeals of custody determinations and redeterminations. (Agreement § III.) For individuals detained within the District under § 1226(a) who are eligible for release on bond, ICE—when setting or reviewing the terms of a detainee's release—will (1) consider the detainee's financial circumstances and financial ability to pay a bond; (2) not set bond at a greater amount than necessary to ensure the detainee's appearance at all future immigration proceedings, including for removal if so ordered; and (3) consider whether the detainee may be released on alternative conditions of release, alone, or in combination with a bond, that are sufficient to mitigate flight risk. Id. § III.A.1.

In making the initial custody determination, ICE will ask the detainee to explain his or her financial circumstances. (Id. § III.A.4.ii.) ICE may evaluate the detainee's financial circumstances based on testimony alone or on documentation or other evidence when the officer determines such evidence is necessary to evaluate the detainee's financial ability to pay a bond. (Id.)

Similarly, when conducting custody redetermination hearings for individuals detained pursuant to section 1226(a) within the District, if an IJ determines that the detainee is eligible for release on bond, the IJ will (1) consider the detainee's financial circumstances and financial ability to pay a bond; (2) not set bond at a greater amount than necessary to ensure the detainee's appearance at all future immigration proceedings, including for removal if so ordered; and (3) consider whether the detainee may be released on alternative conditions of release, alone or in combination with a lower bond, that are sufficient to mitigate flight risk. (Id. § III.B.1.)

The IJ must affirmatively inquire into the detainee's financial circumstances and make an individualized assessment of the detainee's current ability to pay the bond amount to be set. (Id. § III.B.4.) In assessing a detainee's ability to pay, the IJ should consider all relevant evidence in the record—including any information solicited by ICE—and may inquire into any additional evidence presented relevant to an ability to pay. (Id. § III.B.5-6.) The IJ may assess a detainee's financial circumstances based on their sworn testimony alone or, where necessary, may require the detainee to provide corroborative evidence concerning the detainee's financial circumstances. (Id. § III.B.7.)

When rendering a decision in which a bond is set, if the parties have not stipulated to the bond amount or conditions of release, the IJ should explain why—whether orally or in writing—the bond amount is appropriate in view of any evidence of the detainee's financial circumstances. The IJ should also explain why he or she did or did not order alternative conditions of supervision. (Id. § III.B.10.2.) Class Members may appeal an IJ's custody or bond determination to the Board of Immigration Appeals ("BIA"), including an IJ's assessment of the Class Member's financial ability to pay a bond and what, if any, conditions of release are necessary to mitigate flight risk and ensure the alien's future appearance. (Id. § III.C.2.)

The Agreement provides for the distribution to ICE and IJs of a notice, guidelines, and instructions regarding implementation of the Agreement, as well as training on the Agreement's requirements. (Id. § IV.) The Agreement also states that ICE and EOIR will provide periodic data reports to Class Counsel for a default period of four years to allow Class Counsel to monitor the Agreement's implementation. (Id. § V.) Should the Court make no findings of non-compliance during the first three years that the Agreement is in effect, Defendants will not be obligated to produce data reports covering the fourth year. (Id. § V.G.3.)

Lastly, the Agreement provides that when the Parties request that the Court enter final approval of the Agreement, Class Counsel will file a separate motion for Court approval of attorneys' fees in the sum of $1,600,000.00, as well as costs up to the sum of $148,975.72.

Defendants shall not oppose Class Counsel's motion for fees and costs in those amounts. (Id. § XII.)

### B. Additional Settlement Terms

#### 1. Settlement Class Members

The Agreement defines "Class Member(s)" as "individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an ICE officer or immigration judge in the Central District of California." (Id. § I.G.)

#### 2. Attorneys' Fees and Costs

At the time the parties jointly request that the Court enter the Final Approval Order and Judgment, Class Counsel shall also file a separate written motion for Court approval of attorneys' fees and costs. Class Counsel shall seek Court approval of a fee award in the sum of $1,600,000.00, as well as costs up to the sum of $148,975.72. (Id. § XII.) Defendants shall not oppose Class Counsel's motion for fees and costs in those amounts. (Id.)

Upon approval of Class Counsel's motion for fees and costs, and within 60 days of the date upon which the Agreement shall become effective (the "Effective Date"), Defendants shall pay to Class Counsel the sum of $1,600,000.00 to settle and resolve any claims by Plaintiffs or Class Counsel for attorneys' fees related to this Action under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other statute. (Id.)

Separately, Defendants agree to submit Plaintiffs' request for $ 148,975.72 in costs to the Bureau of the Fiscal Service within 10 days of the Effective Date for payment from the Judgment Fund of whatever portion of Plaintiffs' cost request the Bureau determines is reimbursable as taxable costs under 28 U.S.C. § 1920. (Id.) Such payment shall settle and resolve any claims by Plaintiffs or Class Counsel for costs related to this Action under 28 U.S.C. § 2412. (Id.)

#### 3. Release

Class Members will release the Government from all claims that were asserted on behalf of the Class arising from or related to the facts and circumstances alleged in the lawsuit. ("Notice," Dkt. No. 357-8, at 3.) The Parties agree that this Release shall not apply to claims that arise or accrue after the termination of this Agreement, claims challenging a Class Member's ongoing detention on an individualized basis, or claims unrelated to the claims asserted by Plaintiffs in this action. (Agreement § II.A.)

//
//
//
//

4. **Notice**

   Within 10 business days of the date of the Preliminary Approval:

   - EOIR Defendants will post the Notice to the Class and this Settlement Agreement in appropriate places on public EOIR websites

   - Plaintiffs will post the Notice to the Class and this Settlement Agreement in appropriate places on the website of the ACLU of Southern California

   - EOIR Defendants will distribute the Notice to the Class and this Settlement Agreement to the individuals and organizations on EOIR's current List of Pro Bono Legal Service Providers in the District

   - Plaintiffs will distribute the Notice to the Class and this Settlement Agreement to immigration attorneys through the local American Immigration Lawyers' Association listserv; and

   - ICE Defendants will post the Notice to the Class in all housing units in Facilities where Class Members are detained in the District for longer than 72 hours, in an area prominently visible to immigration detainees.

(Id. § VII.A-B.)  The Notice to the Class shall remain posted, and shall be maintained or replaced with new copies as needed, until the Court issues an order finally approving or rejecting the Settlement.  (Id. § VII.B.)  A Class Member may object to the proposed Settlement or Class Counsel's application for an award of attorneys' fees by filing a written objection with the Court.  (Id. § VII.C.)  The Parties shall request that Class Members be provided at least 30 days to submit objections to the Court after the Notice to the Class is posted.  (Id. § VII.D.)

Within 10 business days following the Court's entry of the Final Approval Order and Judgment, ICE shall provide the Notice of Final Settlement in English and Spanish, substantially in the form of Exhibit 6 (see Dkt. No. 357-9), by posting it in all housing units in the Facilities where Class Members are housed for longer than 72 hours, in an area prominently visible to immigration detainees.  (Id. § VII.F.)  The Notice of Final Settlement shall remain posted, and shall be maintained or replaced with new copies as needed, for one year following the Effective Date.  (Id.)

The proposed Notice itself is nine pages long.  (See Notice.)  It is written in clear language and advises class members of the purpose of the Notice, describes the proposed Agreement, and provides instructions for objecting.  (Id.)

//
//
//

5. Implementation: Guidelines, Trainings, and Forms

Within 10 business days of the Effective Date, Defendants will:

- distribute guidelines and instructions to all ICE officers who conduct initial custody determinations for Class Members in the District and to all immigration judges who conduct custody redetermination hearings for Class Members in the District—these guidelines and instructions will be substantially in the form attached as Exhibits 2 and 3 to this Agreement, and they will explain how to conduct custody determinations or redeterminations in compliance with this Agreement;

- distribute to all ICE attorneys who represent ICE in custody redetermination hearings in immigration court in the District a copy of the notice, guidelines, and instructions discussed above for their reference; and

- distribute a copy of the Ninth Circuit's decision, Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017), the notice and the guidelines, substantially in the form attached as Exhibits 2 and 3 to this Agreement to all ICE officers who conduct initial custody determinations in the Ninth Circuit (outside the District); all immigration judges who conduct custody redetermination hearings in the Ninth Circuit (outside the District); and all ICE attorneys who represent ICE in custody redetermination hearings in immigration court in the Ninth Circuit (outside the District).

(Id. § IV.A.1-3.)

ICE will conduct training for ICE officers who conduct custody determinations and EOIR will conduct training for immigration judges who conduct custody redetermination hearings for Class Members in the District. These trainings will cover the requirements of this Agreement. (Id. § IV.B.)

Furthermore, consistent with this Agreement, ICE and EOIR may, but are not required to, develop forms or worksheets for a Class Member to voluntarily complete and submit, which ICE officers or immigration judges may consider when assessing a Class Member's financial circumstances. (Id. § IV.C.)

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). To determine whether a settlement agreement meets these standards, the court considers several factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental

participant; and the reaction of the class members to the proposed settlement." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Here, the parties reached this settlement after intensive arms-lengths negotiation. (Motion at 8.) The parties have vigorously litigated this action for over four years and, accordingly, have conducted extensive discovery for years. (Id. at 7.) In fact, the parties have negotiated the Agreement since mid-2019, including through numerous in-person settlement conferences with Judge Beeler, telephonic conferences, and exchanges of draft settlement agreements. (Motion at 8.)

Based on the Motion, it appears that each side has a clear idea of the strengths and weaknesses of their respective cases, such that the extent of discovery completed and the stage of the proceedings weigh in favor of preliminary approval. See Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.").

### B. Benefits to the Class

The Agreement provides Class Members significant benefits. The Agreement helps ensure that bond hearings for Class Members are conducted consistent with constitutional and statutory requirements. In particular, the Agreement implements the procedures required by this Court in its preliminary injunction order and affirmed by the Ninth Circuit—namely, consideration by ICE and IJs of Class Members' ability to pay when setting bond and alternative conditions of release. (Motion at 6.) For example, among other requirements, the Agreement necessitates that, in setting or reviewing the terms of a Class Member's release, ICE and the IJ

consider each Class Member's financial circumstances and financial ability to pay a bond; not set bond at a greater amount than necessary to ensure the Class Member's appearance at all future immigration proceedings, including for removal if so ordered; and consider whether the Class Member may be released on alternative conditions of release, alone or in combination with a bond, that are sufficient to mitigate flight risk. (Motion at 6-7.) Accordingly, the Court finds that the Agreement provides meaningful relief to the Class Members, which supports preliminary approval.

### C. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

The parties assert that the Agreement will avoid significant expense and delay in the litigation. They anticipate that, should the case go forward, there will be substantial expert discovery; briefing and argument on cross-motions for summary judgment; a possible trial; and a possible appeal to the Ninth Circuit. (Id. at 7.)

The Court believes that the risk, expense, and likely duration of further litigation weigh in favor of preliminary approval. Without the Agreement, the parties would be required to litigate the ultimate merits of the case—a long and expensive process. Overall, these factors weigh in favor of preliminary approval.

### D. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, Class Counsel recommends the settlement, stating that it is both fair and reasonable. (Dkt. No. 357-2 ¶ 10.) The Court therefore finds that this factor weighs in favor of preliminary approval.

### E. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

Plaintiffs assert that settlement negotiations were conducted at arms-length. (Motion at 7.) Plaintiffs engaged in extensive discovery and contend that they are "extremely" familiar with the issues. (Id. at 8.) The Court is persuaded that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) (internal quotation marks omitted). Furthermore, the parties' significant litigation and negotiations over the issues in this action, and

the absence of evidence suggesting misconduct by the negotiators or improper incentives for certain class members over others, further supports preliminary approval of the Agreement.

On balance, the factors above support preliminary approval of the Agreement. The Agreement is potentially fair, adequate, and reasonable.

### VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Preliminary Approval, and VACATES the January 31, 2022 hearing. The Court ORDERS as follows:

1. The Settlement Agreement is preliminarily approved as potentially fair, reasonable, and adequate.

2. The following Settlement Class is certified for settlement purposes only: "individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an ICE officer or immigration judge in the Central District of California."

3. The Proposed Notice Plan and Notice to the Class described in Section VII of the Agreement are approved.

4. The Court authorizes distribution of the Class Notice to the Settlement Class members in accordance with the Agreement.

5. The Objection Date is 30 days after the Notice to the Class is posted. The Class Notice shall be posted, as described in the Agreement, within 10 days of the entry of this order.

6. The hearing date for the Final Fairness Hearing is hereby set for Monday, March 28, 2022, at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

**IT IS SO ORDERED.**