MICHAEL KAUFMAN (SBN 254575)
mkaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5232
Facsimile: (213) 915-0219

*Attorneys for Plaintiffs-Petitioners*

*Additional Counsel for Plaintiffs
 on Following Page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| XOCHITL HERNANDEZ, CESAR MATIAS, for themselves and on behalf of a certified class of similarly situated individuals, <br><br> *Plaintiffs-Petitioners,* <br><br> v. <br><br> MERRICK GARLAND, U.S. Attorney General, et al., <br><br> *Defendants-Respondents.* | Case No. 5:16-00620-JGB-KK <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES** <br><br> Hearing Date: March 28, 2022 <br> Hearing Time: 9:00 a.m. <br> Complaint Filed: April 6, 2016 <br><br> Honorable Jesus G. Bernal |

1   MICHAEL TAN (*pro hac vice*)
    mtan@aclu.org
2   JUDY RABINOVITZ (*pro hac vice*)
    jrabinovitz@aclu.org
3   AMERICAN CIVIL LIBERTIES FOUNDATION
    IMMIGRANTS' RIGHTS PROJECT
4   125 Broad Street, 18th Floor
    New York, New York 10004-2400
5   Telephone: (212) 549-2618
    Facsimile: (212) 549-2654
6
    STEPHEN KANG (SBN 292280)
7   skang@aclu.org
    AMERICAN CIVIL LIBERTIES FOUNDATION
8   IMMIGRANTS' RIGHTS PROJECT
    39 Drumm Street
9   San Francisco, California 94111
    Telephone: (415) 343-0783
10  Facsimile: (415) 395-0950

11  DOUGLAS A. SMITH (SBN 290598)
    dougsmith@mayerbrown.com
12  MAYER BROWN LLP
    350 S. Grand Ave, 25th Floor
13  Los Angeles, California 90071
    Telephone: (213) 229-9500
14  Facsimile: (213) 625-0248

15  MATTHEW E. SLOAN (SBN 165165)
    matthew.sloan@skadden.com
16  ASHLEY PHILLIPS (SBN 318397)
    ashley.phillips@skadden.com
17  WINSTON P. HSIAO (SBN 273638)
    winston.hsiao@skadden.com
18  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 S. Grand Ave, Suite 3400
19  Los Angeles, California 90071
    Telephone: (213) 687-5276
20  Facsimile: (213) 621-5276

21
    *Attorneys for Plaintiffs-Petitioners*
22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

BACKGROUND ........................................................................................... 1

    I.    Factual and Procedural History ............................................. 1

    II.   Terms of the Settlement Agreement ...................................... 4

ARGUMENT ............................................................................................... 6

    I.    Plaintiffs Are Entitled to an Award of Fees under EAJA ................... 8

    II.   Plaintiffs' Fees and Costs are Reasonable under EAJA ....................... 9

         A.   ACLU Attorneys are Entitled to Enhanced Rates ................... 10

         B.   Plaintiffs' Lodestar is Reasonable .............................................. 11

    III.  All Other Factors Support the Reasonableness of Plaintiffs' Request for Fees and Costs .................................................... 14

CONCLUSION ........................................................................................... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arroyo v. United States Dep't of Homeland Sec.*,
2020 WL 1228665 (C.D. Cal. Jan. 2, 2020).............................................8, 11, 16

*Barrios v. Cal. Interscholastic Fed'n*,
277 F.3d 1128 (9th Cir. 2002) ........................................................................ 8

*Casas-Castrillon v. Dep't of Homeland Sec.*,
535 F.3d 942 (9th Cir. 2008) ......................................................................... 5

*Castillo v. Nielsen*,
2020 WL 2840065 (C.D. Cal. June 1, 2020) .............................................11, 17

*Comm'r, I.N.S. v. Jean*,
496 U.S. 154 (1990) .................................................................................... 12

*Costa v. Comm'r of Soc. Sec. Admin.*,
690 F.3d 1132 (9th Cir. 2012) ..................................................................... 12

*Cox v. Clarus Mktg. Grp., LLC*,
291 F.R.D. 473 (S.D. Cal. 2013) .................................................................... 9

*Franco-Gonzales v. Holder*,
767 F.Supp. 2d 1034 (C.D. Cal. 2010) ........................................................5, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................14, 17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..................................................................................11, 12

*Hernandez v. Kovacevich*,
2005 WL 2435906 (E.D. Cal. Sept. 30, 2005) ................................................. 9

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) .......................................................................3, 9

*Higher Taste, Inc. v. City of Tacoma*,
717 F.3d 712 (9th Cir. 2013) ......................................................................... 8

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ........................................................... 14, 17

*Love v. Reilly*,
    924 F.2d 1492 (9th Cir. 1991) ............................................................... 9

*McGinnis v. Kentucky Fried Chicken of Cal.*,
    51 F.3d 805 (9th Cir. 1994) ................................................................ 14

*Nadarajah v. Holder*,
    569 F.3d 906 (9th Cir. 2009) .............................................................. 11

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San
    Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................... 6, 9, 17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1987) ........................................................................... 14

*Perdue v. Kenny A., ex rel., Winn*,
    559 U.S. 542 (2010) ........................................................................... 11

*Raziano v. Albertson's LLC*,
    2021 WL 3473575 (C.D. Cal. Feb. 8, 2021) ......................................... 7

*Rodriguez v. Marin*,
    No. CV-07-03239 (C.D. Cal. Aug. 6, 2013) .......................................... 5

*Scarborough v. Principi*,
    541 U.S. 401 (2004) ............................................................................. 8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................... 6, 13

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit
    Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ....................................................... 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................ 10

**Statutes**

8 U.S.C. § 1226(a) .......................................................................... 1, 4, 5

iii

28 U.S.C. § 2412(d)(1) ................................................................................8

28 U.S.C. § 2412(d)(1)(A) ..........................................................................7

Equal Access to Justice Act, 28 U.S.C. § 2412 ................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23(e) ...................................................................................6

Fed. R. Civ. P. 23(h) .............................................................................8, 17

The Parties have reached a Settlement Agreement ("Agreement") to fully resolve this matter. ECF 357. Under the terms of the Agreement, Defendants have agreed to pay attorneys' fees to Plaintiffs' counsel in the amount of $1,600,000 and to submit Plaintiffs' request for $148,975.72 in costs to the Bureau of the Fiscal Service for reimbursement of taxable costs. Through this unopposed motion, Plaintiffs seek the Court's approval of the agreed-upon fees.

The agreed-upon fees amount, which reimburses Plaintiffs' counsel for some, but not all, out-of-pocket expenses and actual hours expended litigating this matter, is fair and reasonable in light of the extraordinary results obtained through this litigation, the extensive effort expended by Plaintiffs' counsel, the difficulty and complexity of the litigation, and the experience and skill of Plaintiffs' counsel.

For these reasons, and as further detailed below, the Court should grant the Parties' agreed-upon award of $1,600,000 in fees and up to $148,975.72 in costs.

## BACKGROUND

### I.   Factual and Procedural History

Plaintiffs Xochitl Hernandez and Cesar Matias filed the instant action on April 6, 2016, alleging that Defendants fail to consider immigration detainees' ability to pay and alternative, non-monetary conditions of release when setting bonds under 8 U.S.C. § 1226(a) in violation of their rights under the Constitution and the Immigration and Nationality Act ("INA"). ECF 1. Plaintiffs sought habeas, declaratory, and injunctive relief on behalf of themselves and a class of similarly situated immigration detainees in the Central District of California.

Plaintiffs' counsel engaged in extensive pre-litigation factual and legal research necessary to the case. This work included reviewing publicly available information about Defendants' custody review procedures and discovery produced in related litigation. Counsel also interviewed numerous attorneys who represent individuals in removal procedures and noncitizens subject to the challenged policies and procedures, including by traveling to the Adelanto Detention Facility

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

and the Santa Ana City Jail on multiple occasions to meet with detained noncitizens. Plaintiffs' counsel also performed extensive legal research on potential legal claims and framing of the presented issues. *See* Kaufman Decl. ¶6.

Shortly after filing the complaint, Plaintiffs' counsel prepared and filed motions for class certification and for a preliminary injunction. Before the motions were heard, Defendants filed a motion to dismiss the case, which Plaintiffs opposed. Plaintiffs' counsel spent considerable time researching, compiling, and drafting the motions for class certification and for a preliminary injunction, and opposition to Defendants' motion to dismiss. Plaintiffs' counsel also spent a significant amount of time preparing for the hearing on the motions. *Id*. ¶7.

On November 10, 2016, this Court issued an order denying Defendants' motion to dismiss and granting Plaintiffs' motions for class certification and for a preliminary injunction. ECF 85. The class-wide preliminary injunction requires Defendants U.S. Immigration and Customs Enforcement ("ICE") and the Executive Office of Immigration Review ("EOIR"), when setting, re-determining, and/or reviewing the terms of any person's release under § 1226(a), to (a) consider the person's financial ability to pay a bond; (b) not set bond at a greater amount than that needed to ensure the person's appearance; and (c) consider whether the person may be released on alternative conditions of supervision, alone or in combination with a lower bond amount, that are sufficient to mitigate flight risk. ECF 85 at § I.1.

Defendants subsequently filed an interlocutory appeal of the Court's order to the Ninth Circuit Court of Appeals and sought a stay pending appeal. Plaintiffs' counsel expended a significant amount of time opposing Defendants' motion for a stay and on Plaintiffs' merits briefing at the Ninth Circuit, as well as preparing for oral argument. *See* Kaufman Decl. ¶8. On October 2, 2017, the Ninth Circuit affirmed the preliminary injunction order, holding that Plaintiffs were likely to succeed on the merits of their claims because "due process likely requires

1   consideration of financial circumstances and alternative conditions of release."

2   *Hernandez v. Sessions*, 872 F.3d 976, 990-91 (9th Cir. 2017). Following the Ninth

3   Circuit's decision, Plaintiffs' counsel expended considerable time advising class

4   members of their rights, conducting trainings, and observing class member bond

5   hearings conducted under the preliminary injunction. *See* Kaufman Decl. ¶9.

6       Over the next several years, the parties engaged in extensive discovery.

7   Plaintiffs' counsel prepared document requests, interrogatories, and requests for

8   admission, reviewed and summarized produced documents, and conducted several

9   depositions. Plaintiffs' counsel also prepared, filed, and vigorously litigated several

10  motions to compel Defendants to conduct adequate searches and produce

11  documents responsive to Plaintiffs' discovery requests. As a result of these efforts,

12  the Court subsequently appointed a Special Master to oversee discovery at

13  Defendants' expense. Plaintiffs' counsel also responded to extensive requests for

14  production, interrogatories, and requests for admission that Defendants served on

15  the Plaintiffs. Plaintiffs' counsel also prepared for and defended depositions of the

16  Named Plaintiffs. *Id*. ¶10.

17      Although this case settled before the completion of expert discovery,

18  Plaintiffs' counsel also dedicated a significant amount of time preparing expert

19  reports. Plaintiffs retained three experts to provide their opinions in this matter.

20  Plaintiffs' counsel conducted substantial research to identify the experts, develop

21  the proposed expert reports, and provide the experts with discovery and other

22  factual materials on which the reports would be based. *Id*. ¶11.

23      Beginning in July 2019, the parties engaged in serious arms-length

24  settlement discussions under the supervision of Magistrate Judge Laurel Beeler of

25  the Northern District of California. Plaintiffs' counsel prepared a detailed

26  settlement conference statement, engaged in a series of settlement conferences in

27  person and by phone, and reviewed and provided feedback on a multitude of

28  settlement proposals. Plaintiffs' counsel also discussed and sought feedback on the

1    proposed and final settlement terms with class members. Plaintiffs' counsel also

2    prepared lengthy settlement documents, including the Settlement Agreement,

3    preliminary and final approval motions, class notices, and proposed final approval

4    order. *Id*. ¶¶12-13.

5        On January 24, 2022, this Court granted the Parties' joint motion for

6    preliminary approval of the Agreement. ECF 365.

7    **II.    Terms of the Settlement Agreement**

8        The Agreement sets forth procedures for determining bond and conditions of

9    release in this District that are consistent with both this Court's preliminary

10   injunction order and the Ninth Circuit's decision affirming that order.

11       The Agreement sets forth procedures for ICE custody determinations,

12   immigration judge ("IJ") custody redeterminations, and appeals of custody

13   determinations and redeterminations. ECF 357-3 § III. For individuals detained

14   under § 1226(a) within the District who are eligible for release on bond, when

15   setting or reviewing the terms of a detainee's release, ICE will (1) consider the

16   detainee's financial circumstances and financial ability to pay a bond; (2) not set

17   bond at a greater amount than necessary to ensure the detainee's appearance at all

18   future immigration proceedings, including for removal if so ordered; and (3)

19   consider whether the detainee may be released on alternative conditions of release,

20   alone or in combination with a bond, that are sufficient to mitigate flight risk. *Id*.

21   § III.A.1. In making the initial custody determination, ICE will ask the detainee to

22   explain his or her financial circumstances, and may evaluate the detainee's

23   financial circumstances based on testimony alone or based on documentation or

24   other evidence when the officer determines such evidence is necessary to evaluate

25   the detainee's financial ability to pay a bond. *Id*. § III.A.4.ii.

26       Similarly, when conducting custody redetermination hearings for individuals

27   detained under § 1226(a) within the District, if an IJ determines that the detainee is

28   eligible for release on bond, the IJ will (1) consider the detainee's financial

1 circumstances and financial ability to pay a bond; (2) not set bond at a greater

2 amount than necessary to ensure the detainee's appearance at all future

3 immigration proceedings, including for removal if so ordered; and (3) consider

4 whether the detainee may be released on alternative conditions of release, alone or

5 in combination with a lower bond, that are sufficient to mitigate flight risk. *Id*.

6 § III.B.1.

7       The IJ must affirmatively inquire into the detainee's financial circumstances

8 and make an individualized assessment of the detainee's current ability to pay the

9 bond amount to be set. *Id*. § III.B.4. In assessing a detainee's ability to pay, the IJ

10 should consider all relevant evidence in the record, including any information

11 solicited by ICE, and may inquire into any additional evidence presented relevant

12 to an ability to pay. *Id*. § III.B.5-6. The IJ may assess a detainee's financial

13 circumstances based on their sworn testimony alone or, where necessary, may

14 require the detainee to provide corroborative evidence concerning the detainee's

15 financial circumstances. *Id*. § III.B.7. When rendering a decision in which a bond

16 is set, if the parties have not stipulated to the bond amount or conditions of release,

17 the IJ should explain why, whether orally or in writing, the bond amount is

18 appropriate in light of any evidence of the detainee's financial circumstances. The

19 IJ should also explain why he or she did or did not order alternative conditions of

20 supervision. *Id*. § III.B.10.[1] Class Members may appeal an IJ's custody or bond

21 determination to the Board of Immigration Appeals ("BIA"), including an IJ's

22 assessment of the Class Member's financial ability to pay a bond and what, if any,

23

---

24 [1] Because the Agreement does not alter the existing process for determining
whether an individual is eligible for release, the Agreement applies to both initial

25 bond hearings conducted under § 1226(a) and bond hearings for cases of prolonged

26 detention, authorized pursuant to *Rodriguez v. Marin*, No. CV-07-03239 (C.D. Cal. Aug. 6, 2013), *Franco-Gonzales v. Holder*, 767 F.Supp. 2d 1034 (C.D. Cal. 2010),

27 and *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), to

28 the extent these cases remain good law. *Id*. § III.B.2 n.1.

1  conditions of release are necessary to mitigate flight risk and ensure the alien's

2  future appearance. *Id*. § III.C.2.

3      The Settlement provides for the distribution to ICE and IJs of a notice,

4  guidelines, and instructions regarding implementation of the Agreement, as well as

5  training on the requirements of the Agreement. *Id*. § IV. The Agreement also

6  provides that ICE and EOIR will provide periodic data reports to Class Counsel for

7  a default period of four years to allow Class Counsel to monitor the

8  implementation of the Agreement. *Id*. § V. Should the Court make no findings of

9  non-compliance during the first three years the Agreement is in effect, Defendants

10  will have no obligation to produce data reports covering the fourth year. *Id*. §

11  V.G.3.

12  **ARGUMENT**

13      Plaintiffs have successfully litigated claims under the United States

14  Constitution for which an award of reasonable attorneys' fees and costs is

15  authorized under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and

16  have entered into a Settlement Agreement granting full, fair, and adequate relief to

17  all class members. As part of that settlement, the parties have also agreed upon

18  Plaintiffs' entitlement to attorneys' fees and costs in the amount of $1,600,000 in

19  fees, and up to $148,975.72 in costs. Like other aspects of a class-action

20  settlement, that agreement is subject to court approval under Rule 23(e). *Staton v.*

21  *Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

22      In approving agreed-upon fees and costs, as with other aspects of a

23  settlement,

24      the court's intrusion upon what is otherwise a private consensual
   agreement negotiated between the parties to a lawsuit must be limited

25      to the extent necessary to reach a reasoned judgment that the
   agreement is not the product of fraud or overreaching by, or collusion

26      between, the negotiating parties, and that the settlement, taken as a
   whole, is fair, reasonable and adequate to all concerned.

27  *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d

28

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

615, 625 (9th Cir. 1982); *Raziano v. Albertson's LLC*, No. LA-CV-19004373-JAK-ASX, 2021 WL 3473575, at *9 (C.D. Cal. Feb. 8, 2021). As set forth below, based on the relief obtained in the Settlement Agreement, and Plaintiffs' counsel's lodestar, the Settlement Agreement's provision for $1,600,000 in fees, and up to $148,975.72 in costs, is "fair, reasonable, and adequate to all concerned," in light of the extraordinary results obtained through this litigation, the extensive effort expended by Plaintiffs' counsel, the difficulty and complexity of the litigation, and the experience and skill of Plaintiffs' counsel.

Based on the relief in the Settlement Agreement, Plaintiffs are entitled to an award of fees and costs. Under EAJA, "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . .including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Plaintiffs establish both prerequisites for a fees award. First, Plaintiffs qualify as a "prevailing party" because they successfully obtained a preliminary injunction, and—assuming that the Court approves the Agreement—secured a substantial, judicially enforceable settlement on behalf of the class. Second, Defendants' underlying conduct, as well their litigation positions, were not substantially justified, and there are no other special circumstances that make an award unjust.

The agreed-upon amount of fees and costs is also reasonable. Plaintiffs' request represents only a partial recovery of Plaintiffs' counsel's out-of-pocket expenses and expended time. As explained further below, Plaintiffs' counsel carefully scrutinized their billing records and exercised appropriate billing judgment to excise any non-compensable billing number, and voluntarily eliminated numerous billing records and costs for which they would be entitled recover under EAJA. The agreed-upon fees award represents, at a minimum, a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

1   19% reduction in Plaintiffs' compensable fees. Moreover, if forced to litigate to

2   final judgment, Plaintiffs would likely incur substantially more fees and costs for

3   which they would be entitled to recover. Plaintiffs' request for fees is therefore

4   reasonable under any measure, and should be approved under Rule 23(h).

5   **I.    Plaintiffs Are Entitled to an Award of Fees under EAJA**

6          Defendants' agreement to pay attorneys' fees and costs is reasonable,

7   because Plaintiffs would be entitled to attorneys' fees and costs by motion. Under

8   EAJA, a plaintiff who prevails in a lawsuit against the United States government or

9   any agency has the right to seek reasonable fees and expenses of counsel, unless

10  the Court finds that the position of the United States was substantially justified or

11  that special circumstances make such an award unjust. *See* 28 U.S.C. § 2412(d)(1);

12  *Scarborough v. Principi*, 541 U.S. 401 (2004).

13         Plaintiffs qualify as a "prevailing party" within the meaning of EAJA

14  because—assuming the Court approves the Agreement—they secured a substantial

15  and important settlement agreement, enforceable in and by this Court, that

16  materially changes the legal relationship between the parties. *See Barrios v. Cal.*

17  *Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (recognizing a party

18  prevails by obtaining enforceable judgment, consent decree, or judicially

19  enforceable settlement agreement). Additionally, Plaintiffs qualify as a "prevailing

20  party" because they obtained a class-wide preliminary injunction that afforded

21  substantial relief to hundreds of class members. *See Higher Taste, Inc. v. City of*

22  *Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013) (recognized that that "when a plaintiff

23  wins a preliminary injunction and the case is rendered moot by the defendant's

24  own actions," the plaintiff may qualify as a prevailing party); *Arroyo v. United*

25  *States Dep't of Homeland Sec*., SA-CV-19815-JGB-SHKX, 2020 WL 1228665 at

26  *3 (C.D. Cal. Jan. 2, 2020) (same).

27         There are no other circumstances that counsel against an award of fees.

28  Under EAJA, the government bears the burden of demonstrating that its position

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

1  was "substantially justified" such that an award of fees is not warranted. S*ee Love*

2  *v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). By not opposing this motion,

3  Defendants concede that they cannot meet this burden. Regardless, Defendants'

4  underlying conduct and litigation positions were not substantially justified. As the

5  Ninth Circuit found in upholding the class-wide preliminary injunction, "we cannot

6  understand why [Defendants] would ever refuse to consider financial

7  circumstances" or "alternatives to monetary bonds that would also serve the same

8  interest the bond requirement purportedly advances." *Hernandez*, 872 F.3d at 991.

9  This Court's underlying decision ordering the preliminary injunction likewise

10 makes clear that the Defendants' existing custody procedure fail to meet minimum

11 constitutional safeguards. (ECF 84.) Defendants also took numerous litigation

12 positions that were not substantially justified and unnecessarily increased the

13 length and burdensomeness of this litigation. This is made most evident by this

14 Court's appointment a Special Master to oversee discovery at Defendants'

15 expense, after Defendants failed to meet their discovery obligations. (ECF 182.)

16 **II.  Plaintiffs' Fees and Costs are Reasonable under EAJA**

17     The amount of fees and costs agreed to in the settlement is also reasonable.

18 Here, too, a trial court's role is only to ensure that the settlement "is not the

19 product of fraud or overreaching by, or collusion between, the negotiating parties,"

20 and that, "taken as a whole, [it] is fair, reasonable and adequate." *Officers for Just.*,

21 688 F.2d at 625; *accord Hernandez v. Kovacevich*, No. 1:04-cv-5515-OWW-DLB,

22 2005 WL 2435906, at *8 (E.D. Cal. Sept. 30, 2005) (in determining whether to

23 approve an agreed-upon fee, district court's task is "simply to determine whether

24 the negotiated fee is facially fair and reasonable"). An "agreement as to the

25 attorney fee award is accorded great weight" where it neither reduces the benefit

26 provided to the parties nor reflects any evidence of collusion. *Cox v. Clarus Mktg.*

27 *Grp., LLC*, 291 F.R.D. 473, 482 (S.D. Cal. 2013).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

1    The agreed-upon amount meets these standards for two primary reasons.

2  First, as the Court found in its order preliminarily approving the Agreement, "the

3  parties' significant litigation and negotiations over the issues in this action, and the

4  absence of evidence suggesting misconduct by the negotiators or improper

5  incentives for certain class members over others [] supports preliminary approval

6  of the Agreement." ECF 365 at 9-10. Similarly, the substantial litigation, and the

7  extensive relief provided to class members in the Settlement Agreement, make

8  clear the negotiated attorneys' fees cannot be the product of fraud or collusion.

9    Second, the agreed-upon amount of attorneys' fees and costs reflect a

10  reduction from Plaintiffs' lodestar, and an amount Plaintiffs might reasonably be

11  awarded in a litigated fee motion. *C.f. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

12  1050 (9th Cir. 2002) (using lodestar calculation as a cross-check on the

13  reasonableness of a common-fund fee award). The agreed-upon award of

14  $1,600,000 in fees, and up to $148,975.72 in costs, would unquestionably be fair

15  and reasonable under governing EAJA standards.

16  **A.   ACLU Attorneys are Entitled to Enhanced Rates**

17    Plaintiffs' counsel from the ACLU and ACLU of Southern California are

18  entitled to enhanced rates due to their distinctive knowledge and specialized skill

19  that was necessary to litigate this case. Plaintiffs' claims involve complex issues of

20  constitutional and immigration law affecting detained noncitizens. So far as

21  counsel are aware, this is the first case in the country to consider if and how the

22  Constitution's limitations on wealth discrimination apply to the immigration

23  detention system. The case also involved complex procedural and jurisdictional

24  issues, including whether the case could be maintained as a class action. There are

25  few attorneys with the experience, knowledge, and expertise to litigate such

26  procedurally and substantively complex claims related to the immigration system.

27  *See* Kaufman Decl. ¶¶14, 16.

28  //

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

Certain of Plaintiffs' counsel from the ACLU and ACLU of Southern California who contributed to this litigation over the past six years (Ahilan Arulanantham, Michael Kaufman, Michael Tan, Stephen Kang, Celso Perez and David Hausman) all possess distinctive knowledge and expertise in litigating complex constitutional claims related to the immigration system. *See* Kaufman Decl. ¶¶22-39 (describing experience, knowledge, and skill of Mr. Arulanantham and Mr. Kaufman); Tan Decl. ¶¶3-26 (same, for Mr. Tan, Mr. Kang, Mr. Perez and Mr. Hausman). Numerous courts, including this one, have awarded enhanced rates to these counsel for their work in complex litigation involving the immigration system. *See Arroyo*, 2020 WL 1228665; Kaufman Decl. ¶¶53-56 (collecting cases); Tan Decl. ¶10, 16 (same). Because Defendants do not contest the accuracy or reasonableness of the Plaintiffs' evidence, Plaintiffs have established their right to enhanced rates for these counsel. *See Castillo v. Nielsen*, No. 5:18-CV-01317-ODW-KESX, 2020 WL 2840065, at *6 (C.D. Cal. June 1, 2020) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits") (citation omitted).

## B. Plaintiffs' Lodestar is Reasonable

"The amount of attorneys' fees awarded under EAJA must be reasonable." *Nadarajah v. Holder*, 569 F.3d 906, 910 (9th Cir. 2009). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A., ex rel.*, *Winn*, 559 U.S. 542, 552 (2010). "Where a plaintiff has obtained excellent results, his attorney should recover . . . all hours reasonably expended on the litigation . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is known as the lodestar. *Id.* at 433. Attorney's fees for hours that are not "reasonably

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

1   expended" or that are "excessive, redundant, or otherwise unnecessary" are not

2   compensable. *See id.* at 434; *see also Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161

3   (1990) (holding *Hensley* applies to EAJA cases). However, in determining what

4   constitutes a reasonable fee award under the EAJA, "courts should generally defer

5   to the 'winning lawyer's professional judgment as to how much time he was

6   required to spend on the case.'" *See Costa v. Comm'r of Soc. Sec. Admin.*, 690

7   F.3d 1132, 1136 (9th Cir. 2012) (quoting *Moreno v. City of Sacramento*, 534 F.3d

8   1106, 1112 (9th Cir. 2008)).

9        Plaintiffs' requested lodestar is reasonable. Plaintiffs request an award of

10  $1,600,000 in attorneys' fees and up to $148,975.72 in costs. In an effort to

11  compromise and obtain the benefits afforded to the Settlement Class, Plaintiffs

12  substantially discounted their claim for attorneys' fees under their lodestar and are

13  requesting an award that is well below the amount they would have sought in a

14  motion for attorneys' fees after the resolution of this case. The total fees incurred

15  by all timekeepers across the three organizations that served as co-counsel in this

16  case is $1,980,118.43, based upon the hours expended, multiplied by the

17  reasonable hourly rates of counsel and taking into account a significant exercise of

18  billing judgment. The agreed-upon attorneys' fee award of $1,600,000 therefore

19  reflects a substantial 19 percent reduction from the reduced lodestar amount,

20  exclusive of costs. *See* Kaufman Decl. ¶43.

21       Plaintiffs have attached a declaration setting forth a summary of the position,

22  rates, hours, and lodestar for each biller from the ACLU of Southern California,

23  the ACLU, and Skadden, as well as their costs. *Id*. ¶46. In addition, Plaintiffs have

24  provided copies of detailed billing records for each of the billers for whom they

25  seek compensation. *See* Kaufman Decl. Exh. A.

26       The records reflect Plaintiff counsel's exercise of billing judgment. Counsel

27  reviewed the time entries and removed or reduced items, some of which were

28  identified as non-compensable and many of which were legally compensable that

could have been included in an attorneys' fees motion. Specifically, Plaintiffs excluded hours spent onboarding new attorneys, factual or legal research related to claims not ultimately litigated, time on some projects where we determined that it was appropriate to reduce the total compensation sought for time spent on that particular task, and research time by those employed as summer associates. Plaintiffs also eliminated billing entries for discovery motions on which Defendants prevailed, as well as the second depositions of the Named Plaintiffs that the Court ordered. In attempt to reach an agreement, Plaintiffs also discounted the lodestar for attorneys from Skadden by five percent. Plaintiffs' lodestar also does not include hours billed after December 2019, and thus does not reflect the significant hours spent negotiating, finalizing, and executing the parties' Settlement Agreement or drafting pleadings including the motions for preliminary and final approval. *See* Kaufman Decl. ¶¶47, 49, 50.

Additionally, during settlement negotiations, Plaintiffs provided Defendants with searchable files of the billing records supporting their lodestar, allowing Defendants to scrutinize Plaintiffs' billing in detail and raise any objections to either billing practices or specific entries. The parties engaged in several rounds of negotiations over fees, which included conferring over Defendants' objections to several categories of billing records and numerous individual billing records. After several months of negotiations, the parties arrived at the final settlement amount.

Courts have recognized that a defendant may be "interested only in disposing of the total claim asserted against it [,] and . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense . . . ." in cases in which a class action settlement calls for payment of attorneys' fees in addition to a monetary payment to class members. *Staton*, 327 F.3d at 964 (citations and quotations omitted). By contrast, this case presented no monetary claims, so the only monetary payment required in the Agreement is Plaintiffs' attorneys' fees. Defendants therefore retained a strong interest in scrutinizing the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

1   reasonableness of fees and seeking reductions through the negotiations, as is

2   reflected by Defendants' detailed objections to Plaintiffs' billing records and the

3   Parties' extensive negotiations over fees. The fact that the settlement amount

4   resulted from arms-length negotiations overseen by a federal Magistrate Judge

5   provides an additional indicator of reasonableness.

6       Finally, Plaintiffs would likely incur substantial additional fees and costs if

7   forced to litigate to final judgment. Plaintiffs almost certainly would have

8   prevailed on some or all of their claims, in light of the Ninth Circuit's ruling

9   upholding the preliminary injunction. Plaintiffs have therefore settled for

10  substantially less in fees than they would have obtained after final judgment,

11  making their requested award all the more reasonable.

12  **III.  All Other Factors Support the Reasonableness of Plaintiffs' Request for**

13        **Fees and Costs**

14      While there is a "strong presumption . . .  that the lodestar figure represents a

15  reasonable fee," *see Pennsylvania v. Delaware Valley Citizens' Council for Clean*

16  *Air*, 478 U.S. 546, 565 (1987), courts also consider additional factors, such as those

17  enunciated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) and

18  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998). However, the

19  Court need only discuss the relevant factors and those not already subsumed within

20  the lodestar calculation. *See, e.g.*, *McGinnis v. Kentucky Fried Chicken of Cal.*, 51

21  F.3d 805, 809 (9th Cir. 1994). Here, the pertinent *Kerr* and *Hanlon* factors are: (1)

22  the obtained results; (2) time and labor required; (3) the novelty and difficulty of

23  the questions involved and required skill to perform the service properly; (4) the

24  risk of nonpayment; (5) counsel's experience, reputation, and ability; (6) reaction

25  of the settlement class; (7) the "undesirability" of the case; and (8) awards in

26  similar cases.

27      Each of these factors strongly supports the reasonableness of Plaintiffs'

28  request for fees and costs. *First*, the Settlement Agreement provides substantial

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

1   relief for current and future class members. As described above, the Agreement

2   requires Defendants to adopt procedures to ensure that immigration officials

3   consider a class member's ability to pay and non-monetary conditions of release—

4   precisely the procedures that Plaintiffs sought in their complaint. It also requires

5   Defendants to produce substantial monitoring information that will help Plaintiffs

6   ensure that class members get the benefit of the bargain. The Agreement likely

7   provides more relief than Plaintiffs could secure in court. *See* Kaufman Decl. ¶4.

8       *Second*, as set forth above and in the accompanying declarations, Plaintiffs'

9   counsel invested significant time and effort into this case over the prior seven

10  years, including conducting extensive pre-litigation investigation and legal

11  research, preparing for and securing class certification and a class-wide

12  preliminary injunction, defeating Defendants' motion to dismiss, prevailing in a

13  Ninth Circuit appeal, and conducting extensive fact and expert discovery over

14  several years. *See* Kaufman Decl. ¶¶5-13.

15      *Third*, this was a novel and complex case that required the skill of

16  experienced litigators. As discussed above, this is a precedent-setting case that

17  raised novel and complex issues of constitutional, immigration, and class action

18  law. This is reflected in the Ninth Circuit's published decision upholding the

19  Court's class-wide preliminary injunction, which has been cited as precedent in

20  hundreds of cases and secondary sources. *See* Kaufman Decl. ¶14.

21      *Fourth*, Plaintiffs' counsel faced a risk of nonpayment. This case was taken

22  on a fully contingent basis. If Plaintiffs did not prevail, counsel would receive no

23  compensation. Even if they did prevail, Plaintiffs would not be entitled to fees if

24  the government could demonstrate that their position was substantially justified or

25  there were other factors that would make an award unjust under EAJA. Although

26  Plaintiffs were not concerned about their ability to collect if they were successful,

27  the risk lay in establishing that the underlying conduct by Defendants was illegal

28  and, if so, the appropriate remedy.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES

1    *Fifth*, as set forth above, Plaintiffs' counsel are highly qualified and

2    experienced litigators with extensive experience litigating class actions and other

3    complex litigation in the constitutional law, civil rights, and immigration arenas,

4    with specific expertise in immigration detention.

5    *Sixth*, no class member has objected to the Agreement, despite the Parties'

6    extensive efforts to notify class members and their counsel about the Court's

7    preliminary approval of the Agreement. The lack of objections, along with the

8    Named Plaintiffs' express approval of the terms of the Agreement, is in an

9    indication of class approval of the settlement. *See. e.g., In re Toys R Us-Delaware,*

10   *Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438,

11   456 (C.D. Cal. 2014) (citing *Churchill Village, L.L.C. v. General Electric*, 361

12   F.3d 566, 577 (9th Cir. 2004) ("The negligible number of opt-outs and objections

13   indicates that the class generally approves of the settlement.").

14   *Seventh*, although this case raises important and novel constitutional

15   questions, this type of litigation is typically considered "undesirable" by attorneys.

16   The vast majority of immigration detainees lack an attorney in their immigration

17   cases; even fewer can find counsel for civil rights actions. This unfortunate reality

18   is the result of a confluence of factors: most detainees are indigent and lack the

19   resources to pay an attorney; detention centers, including in the Central District,

20   are located in remote regions far from most attorneys; detainees' vulnerability to

21   removal from the United States; and numerous legal impediments make it

22   challenging to bring and prevail in civil rights actions on behalf detained

23   noncitizens. *See* Kaufman Decl. ¶17. Moreover, for the reasons discussed above,

24   there are very few attorneys with the specialized knowledge and expertise

25   necessary to litigate constitutional claims on behalf of detained immigrants.

26   *Eighth*, this award is commensurate with awards in similar cases. Courts in

27   this District have issued substantial fee awards for similar cases that involved

28   dramatically less litigation. *See, e.g.*, *Arroyo*, 2020 WL 1228665 at *6 (awarding

16

$144,876.04 in attorneys' fees and costs for a case that involved less than five months of active litigation); *Castillo*, 2020 WL 2840065, at *1 (awarding $190,718.89 in fees and costs for a case that involved less than five months of active litigation). In cases involving more extensive litigation, courts have awarded comparable or far greater attorneys' fees than Plaintiffs seek here. For example, in another case in this District concerning the constitutional and statutory rights of detained immigrants, the district court approved a settlement of $9,500,000. *See* Order Approving Parties' Settlement Agreement Resolving Plaintiffs' Motion for Attorneys' Fees and Costs, ECF 866, *Franco-Gonzales v. Holder*, 767 F.Supp. 2d 1034 (C.D. Cal. 2010). The requested fees and costs therefore fit comfortably within the range of awards in similar cases.

In sum, the *Kerr* and *Hanlon* factors all support the reasonableness of the Parties' agreed-upon award of fees and costs.

## CONCLUSION

For the foregoing reasons, the parties' agreement in the Settlement Agreement for Defendants to pay attorneys' fees of $1,600,000 and up to $148,975.72 in costs, is manifestly "not the product of fraud or overreaching by, or collusion between, the negotiating parties," and is, "taken as a whole, … fair, reasonable and adequate." *Officers for Just.*, 688 F.2d at 625; Plaintiffs therefore request that the Court approve the agreed-upon award pursuant to Rule 23(h).


Dated: March 14, 2022                    By:   /s/ *Michael Kaufman*____
                                         MICHAEL KAUFMAN
                                         Counsel for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES