1  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclusocal.org
2  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
3  Los Angeles, California 90017
   Telephone: (213) 977-5232
4  Facsimile: (213) 915-0219

5  *Attorneys for Plaintiffs-Petitioners*

6  *Additional Counsel for Plaintiffs*
   *and Defendants on Following Page*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  XOCHITL HERNANDEZ, CESAR          )   Case No. 5:16-00620-JGB-KK
    MATIAS, for themselves and on     )
13  behalf of a certified class of    )   **MEMORANDUM OF POINTS AND**
    similarly situated individuals,   )   **AUTHORITIES IN SUPPORT OF**
14                                     )   **JOINT MOTION FOR FINAL**
                                       )   **APPROVAL OF SETTLEMENT**
           *Plaintiffs-Petitioners,*  )   **AGREEMENT**
15                                     )
              v.                       )   Hearing Date: March 28, 2022
16                                     )   Hearing Time: 9:00 a.m.
                                       )   Complaint Filed: April 6, 2016
17  MERRICK GARLAND, U.S.              )
    Attorney General, et al.,          )
18                                     )
           *Defendants-Respondents.*   )   Honorable Jesus G. Bernal
19  _____)

20

21

22

23

24

25

26

27

28

MICHAEL TAN (*pro hac vice*)
mtan@aclu.org
JUDY RABINOVITZ (*pro hac vice*)
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

STEPHEN KANG (SBN 292280)
skang@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0783
Facsimile: (415) 395-0950

DOUGLAS A. SMITH (SBN 290598)
dougsmith@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave, 25th Floor
Los Angeles, California 90071
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

MATTHEW E. SLOAN (SBN 165165)
matthew.sloan@skadden.com
ASHLEY PHILLIPS (SBN 318397)
ashley.phillips@skadden.com
WINSTON P. HSIAO (SBN 273638)
winston.hsiao@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 S. Grand Ave, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5276
Facsimile: (213) 621-5276

*Attorneys for Plaintiffs-Petitioners*

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

SAMUEL GO
Assistant Director

BRIAN C. WARD (IL 6404236)
brian.c.ward@usdoj.gov
KATHERINE J. SHINNERS (DC 978141)
Katherine.J.Shinners@usdoj.gov
Senior Litigation Counsel

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

1   COURTNEY E. MORAN (CA 288394)
    courtney.e.moran@usdoj.gov
2   OZLEM B. BARNARD (NY 4350583)
    ozlem.b.barnard@usdoj.gov
3   DHRUMAN Y. SAMPAT (NJ 270892018)
    dhruman.y.sampat@usdoj.gov
4   Trial Attorneys
    U.S. Department of Justice
5   Office of Immigration Litigation
    District Court Section
6   P.O. Box 868 Ben Franklin Station
    Washington, DC 20044
7   Telephone: (202) 532-4023

8   *Attorneys for the Defendants-Respondents*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND AND TERMS OF THE AGREEMENT ........................... 1

III.    THE SETTLEMENT MEETS THE STANDARDS FOR FINAL
        APPROVAL .................................................................................................. 3

        A.    The Agreement Provides the Class with Substantial Benefits and
              Avoids the Risk and Expense of Further Litigation. ........................... 3

        B.    The Agreement Is the Product of Arms-Length Negotiations
              Between Well-Informed and Experienced Counsel. ........................... 4

        C.    Presence of Government Participants. .................................................. 6

        D.    Reaction of Class Members Supports Approval of the Settlement. ..... 6

IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED. ... 6

V.      CONCLUSION .............................................................................................. 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 5, 6

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    2003 WL 22037741 (D.D.C. June 16, 2003) ...................................... 5

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................. 4

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................... 3

**Statutes**

Immigration and Nationality Act, 8 U.S.C. § 1226(a) ........................... 1, 7

**Other Authorities**

28 C.F.R. § 0.45(k) .............................................................................. 5

Fed. R. Civ. P. 23(a) ........................................................................... 6, 7

Fed. R. Civ. P. 23(b) ........................................................................... 6, 7

Fed. R. Civ. P. 23(e) ........................................................................... 1, 3

U.S. Department of Justice, Office of Immigration Litigation, District
    Court Section Organizational Chart ................................................. 5

## I.     INTRODUCTION

On January 24, 2022, the Court issued an order preliminarily approving the parties' Settlement Agreement and Release ("the Agreement"). ECF No. 365. The Agreement provides procedures for setting bond and conditions of release for individuals detained under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). ECF No. 357-3. The proposed settlement was the product of arms-length negotiations, conducted with the assistance of Magistrate Judge Laurel Beeler, and is, in the view of Class Counsel, in the best interests of the Settlement Class.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties now seek the Court's final approval of the Agreement. The proposed settlement satisfies all the standards necessary for court approval. The Court should grant final approval of the settlement, grant final certification of the Settlement Class, and provide for continuing jurisdiction to enforce the terms of the settlement.

## II.    BACKGROUND AND TERMS OF THE AGREEMENT

The parties summarized the claims at issue, the lawsuit's procedural history, and terms of the Agreement in their Joint Motion for Preliminary Approval. *See* ECF No. 357-1 at 2-5. The Court recounted this history in its order preliminarily approving the Agreement.[1] ECF No. 365 at 1-7. In the interest of judicial economy, the parties will not repeat that history again here.

This Court granted Plaintiffs' unopposed motion for preliminary approval on January 24, 2022, conditionally certifying the Settlement Class and preliminary

---

[1] Subsequent to the Court's preliminary approval of the Settlement Agreement, the parties corrected an administrative error within a sentence at Section III-B-2 at page 7 of the Settlement Agreement by inserting "1226(a)" after "under" in the following sentence: "This Agreement does not alter the existing process for determining whether an alien detained under 1226(a) is eligible for release." This change does not alter the content of the Agreement, but for purposes of keeping the record clean, the parties submit a copy of the updated Settlement Agreement here. *See* Final Settlement Agreement attached as Exhibit A.

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

1  finding that the Settlement Agreement is fair, reasonable, and adequate. *See* ECF
2  No. 365 at 10. The Court also approved parties' proposed notice plan and the form
3  of parties' class notice as meeting the requirements of Federal Rule of Civil
4  Procedure 23, and set the schedule for objections and a fairness hearing for
5  purposes of final approval of the class settlement. *See id*.

6      The parties have complied in all respects with the proposed notice plan.
7  Specifically, as described in greater detail in the accompanying declarations,
8  information about the settlement, including the class notice was distributed in the
9  following ways:

10  • Defendants posted the Notice to the Class in all housing units in
11    detention facilities where Class Members are detained in the District for
12    longer than 72 hours, in an area prominently visible to immigration
13    detainees;

14  • Defendants posted the Notice to the Class and this Settlement Agreement
15    on the EOIR website;

16  • Defendants distributed the Notice to the Class and this Settlement
17    Agreement to the individuals and organizations on EOIR's current List of
18    Pro Bono Legal Service Providers in the District;

19  • Plaintiffs posted the Notice to the Class and the Settlement Agreement on
20    the ACLU of Southern California website;

21  • Plaintiffs distributed Notice to the Class and the Settlement Agreement to
22    legal service providers through the listservs of the American Immigration
23    Lawyers Association, the Los Angles County Bar Association's
24    Immigration Section, and the Southern California Detention Advocates.

25  *See* EOIR Decl., ¶¶2-3; ICE Decl. ¶2; Kaufman Decl. ¶3.

26  //
27  //
28  //

2

**III.   THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL**

A court may approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement warrants approval, courts consider the following non-exhaustive factors: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted).

The Agreement here satisfies these governing legal standards and should be approved.

**A.   The Agreement Provides the Class with Substantial Benefits and Avoids the Risk and Expense of Further Litigation.**

The Agreement resolves a substantial set of disputed questions of law and fact regarding the procedures required to ensure that bond hearings for Class Members are conducted consistent with constitutional and statutory requirements. The Agreement implements the procedures required by this Court in its preliminary injunction order, and affirmed by the Ninth Circuit—namely, consideration, by ICE and immigration judges ("IJs"), of Class Members' ability to pay when setting bond and alternative conditions of release.

The Agreement guarantees Class Members significant benefits. The Agreement requires that, in setting or reviewing the terms of a Class Member's release, ICE and the IJ consider each Class Member's financial circumstances and financial ability to pay a bond; not set bond at a greater amount than necessary to ensure the Class Member's appearance at all future immigration proceedings,

including for removal if so ordered; and consider whether the Class Member may be released on alternative conditions of release, alone or in combination with a bond, that are sufficient to mitigate flight risk. Exh. 1, §§ III.A.1, III.B.1. It requires that ICE and the IJ affirmatively inquire into Class Members' ability to pay and identifies facts and evidence that are relevant to this inquiry. *Id*. §§ III.A.4, III.B.5-7. The Agreement further requires that the IJ, when rendering a decision in which a bond is set (if the parties have not stipulated to the conditions of release), should explain why, whether orally or in writing, the bond amount is appropriate in light of the Class Member's financial circumstances and why he or she did or did not order alternative conditions of supervision. *Id*. § III.B.10. Class Members may seek review of the IJ decision from the BIA. *Id*. § III.C.2.

In addition to providing Class Members significant benefits, the Agreement will avoid significant expense and delay in the litigation. The parties have vigorously litigated this matter for over four years, including several years of discovery. Should the case go forward, the parties anticipate substantial expert discovery; briefing and argument on cross-motions for summary judgment; a possible trial; and a possible appeal to the Ninth Circuit. Thus, the Agreement will avoid significant expense and time through the favorable resolution of Class Members' claims.

## B.     The Agreement Is the Product of Arms-Length Negotiations Between Well-Informed and Experienced Counsel.

The Agreement was the product of extensive, good-faith negotiations between the parties under the supervision of Magistrate Judge Laurel Beeler. Under these circumstances, the Court should presume the fairness of arms-length settlements reached by experienced counsel. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (observing that "[p]arties represented by

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation").

Counsel for both parties have extensive experience with similar actions, which further supports approval of the Agreement. Plaintiffs' counsel has substantial experience with class actions, civil rights actions, complex litigation and immigration litigation, including litigation on behalf of individuals in immigration detention. And certainly no one has more experience defending lawsuits raising constitutional and statutory claims related to ICE and EOIR than Defendants' counsel at the United States Department of Justice. *See* 28 C.F.R. § 0.45(k).[2] The opinion of the parties' experienced counsel "should be afforded substantial consideration" in reviewing this Agreement. *See In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290(TFH), 99MS276(TFH), Civ. 99-0790(TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003).

The Settlement is the product of extensive, non-collusive negotiation between Counsel for both parties. Prior to those negotiations, the parties vigorously litigated this case for several years, litigating a motion for a preliminary injunction and an appeal of this Court's preliminary injunction order, and engaging in extensive discovery. The parties have negotiated the Agreement since the summer of 2019, including numerous in-person settlement conferences with Judge Beeler, telephonic conferences, and exchanges of draft settlement agreements, and are extremely familiar with the issues. The parties' significant litigation and negotiations over these issues further supports approval of the Agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of

---

[2]     *See also* U.S. Department of Justice, Office of Immigration Litigation, District Court Section Organizational Chart, http://www.justice.gov/civil/oil/dcs/oil-dcs.html.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

1  plaintiffs' claims").

2      **C.    Presence of Government Participants.**

3          To the extent this factor is significant, the Defendants are all governmental

4  officials sued in their official capacities and are using limited public resources.

5  This Settlement preserves those public resources by rendering further litigation

6  unnecessary, properly balances the concerns of the EOIR and ICE with the

7  interests of the Class, avoids the time and expense of further litigation, and results

8  in a benefit to the public as a whole.

9      **D.    Reaction of Class Members Supports Approval of the Settlement.**

10         The Named Plaintiffs were apprised of the terms of the Settlement and

11  approved of the Settlement Agreement prior to the filing of the Motion for

12  Preliminary Approval of the Settlement. *See* ECF Nos. 357-11, 357-12.

13         The lack of objections submitted by other Class members also supports final

14  approval of the Agreement. The Notice to the Class was broadly publicized,

15  including through posting in detention centers in which Class members are held, on

16  government and NGO websites, and through the listservs that reach the vast

17  majority of attorneys and advocates working with Class members. Despite this

18  widespread dissemination, no Class member or any member of the public has

19  objected to the settlement. This is likely because the Agreement affords significant

20  protections to Class members and is consistent with the Ninth Circuit's decision

21  upholding the preliminary injunction in this case, which has been in place for more

22  than four years.

23  **IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS**

24          **WARRANTED.**

25         A court may certify a settlement class if a plaintiff demonstrates that all of

26  the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at

27  least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ.

28  P. 23; *Hanlon*, 150 F.3d at 1019.

The proposed Settlement Class is defined as "individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an ICE officer or immigration judge in the Central District of California." ECF No. 357-3 (§ I.G.). As this Court observed in preliminarily approving the Agreement, the definition of the Settlement Class is nearly identical to the class this Court certified on November 10, 2016. *See* ECF No. 84 at 19 (certifying a class of "[a]ll individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an U.S. Immigration and Customs Enforcement officer or an Immigration Judge in the Central District of California").

For the reasons set forth in the Court's prior order, certification of the Settlement Class is warranted here. The Settlement Class is so numerous that joinder is impracticable; there are common questions of law and fact; the Named Plaintiffs' claims are typical; the Named Plaintiffs can adequately protect the interest of the Settlement Class; and the Class is ascertainable. *Id*. at 18-19 (citing Fed. R. Civ. P. 23(a)). Additionally, the Settlement Class meets the several of the requirements of Rule 23(b): Defendants maintain generally applicable policies and practices such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"; separate individual actions by Class members would risk "inconsistent or varying adjudications that would establish incompatible standards of conduct"; and individual actions would risk adjudications that, "as a practical matter, would be dispositive of the interests" of nonparty class members. *Id*. at 26-27 (citing FRCP 23(b)(2), (b)(1)(A), (b)(1)(B)).

## V.    CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant final approval of the settlement, grant final certification of the Settlement Class, and provide for continuing jurisdiction to enforce the terms of the settlement.

//

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

Dated:  March, 14, 2022                    By: __/s/_Michael Kaufman_____
                                           MICHAEL KAUFMAN
                                           Counsel for Plaintiffs


Dated:  March, 14, 2022                    By: __/s/_Brian Ward_____
                                           BRIAN WARD
                                           Counsel for Defendants

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

EXHIBIT A

1  MICHAEL KAUFMAN (SBN 254575)
   mkaufman@aclusocal.org
2  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
3  Los Angeles, California 90017
   Telephone: (213) 977-5232
4  Facsimile: (213) 915-0219

5  *Attorneys for Plaintiffs-Petitioners*

6  *Additional Counsel for Plaintiffs*
   *and Defendants on Following Page*

7

8

9                  **UNITED STATES DISTRICT COURT**

10            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  XOCHITL HERNANDEZ,                )
    CESAR MATIAS, for themselves     )
13  and on behalf of a certified class )   CIVIL ACTION NO. 5:16-00620-JGB-KK
    of similarly situated individuals, )
14                                     )
        *Plaintiffs-Petitioners*,      )
15                                     )   **SETTLEMENT AGREEMENT AND**
    v.                                 )   **RELEASE**
16                                     )
    MERRICK GARLAND,                   )
17  U.S. Attorney General, et al.,     )
                                       )
18      *Defendants-Respondents*.      )
                                       )
19                                     )
                                       )
20  _____   )

21

22

23

24

25

26

27

28

MICHAEL TAN (*pro hac vice*)
mtan@aclu.org
JUDY RABINOVITZ (*pro hac vice*)
JRabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

STEPHEN KANG (SBN 292280)
skang@aclu.org
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0783
Facsimile: (415) 395-0950

DOUGLAS A. SMITH (SBN 290598)
dougsmith@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave, 25th Floor
Los Angeles, California 90071
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

MATTHEW E. SLOAN (SBN 165165)
matthew.sloan@skadden.com
ASHLEY PHILLIPS (SBN 318397)
ashley.phillips@skadden.com
WINSTON P. HSIAO (SBN 273638)
winston.hsiao@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 S. Grand Ave, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5276
Facsimile: (213) 621-5276


*Attorneys for Plaintiffs-Petitioners*


BRIAN C. WARD (IL 6404236)
brian.c.ward@usdoj.gov
KATHERINE J. SHINNERS (DC 978141)
Katherine.J.Shinners@usdoj.gov
Senior Litigation Counsel
COURTNEY E. MORAN (CA 288394)
courtney.e.moran@usdoj.gov
OZLEM B. BARNARD (NY 4350583)
ozlem.b.barnard@usdoj.gov
DHRUMAN Y. SAMPAT (NJ 270892018)
dhruman.y.sampat@usdoj.gov

SETTLEMENT AGREEMENT AND RELEASE

Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4023

*Attorneys for the Defendants-Respondents*

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs in the above-captioned matter, Xochitl Hernandez and Cesar Matias, on behalf of themselves and all Class Members of the certified class they represent (collectively "Plaintiffs"), and Defendants Merrick Garland, Attorney General, Jean King, Acting Director, Executive Office for Immigration Review ("EOIR"), Alejandro Mayorkas, Secretary, Department of Homeland Security ("DHS"), Tae Johnson, Acting Director, Immigration and Customs Enforcement ("ICE"), David A. Marin, Field Office Director, Los Angeles Field Office of ICE, and James Janecka, Warden, Adelanto Detention Facility, (collectively, "Defendants" and with Plaintiffs "the Parties"), through their counsel, enter into this Class Action Settlement Agreement and Release ("Agreement"), as of the date it is executed by all Parties (the "Agreement Date") and effective upon approval of the Court pursuant to Federal Rule of Civil Procedure 23(e).

WHEREAS:

A.  On April 6, 2016, Plaintiffs commenced a civil action on behalf of themselves and all others similarly situated against Defendants, now-captioned *Hernandez v. Barr,* United States District Court for the Central District of California, Case No. 5:16-cv-00620-JGB-KK (the "Action") and sought class certification, appointment of Class Counsel, and declaratory, injunctive, and habeas corpus relief.

B.  On November 10, 2016, the United States District Court for the Central District of California certified the proposed class under Federal Rules of Civil Procedure 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2), consisting of "All individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an ICE officer or an immigration judge in the Central District of California," and appointed American Civil Liberties Union ("ACLU") of Southern California, ACLU Immigrants' Rights Project, and Skadden, Arps, Slate, Meagher & Flom LLP as Class Counsel.

C.  Plaintiffs and Defendants have conducted discussions and arms-length negotiations regarding a compromise and settlement of the Action with a view to settling all matters in dispute.

D.    Defendants deny all liability with respect to the Action, deny that they have engaged in any wrongdoing, deny the allegations in the Complaint, deny that they committed any violation of law, deny that they acted improperly in any way, and deny liability of any kind to the Plaintiffs, but have agreed to the settlement and dismissal of the Action with prejudice to: (i) avoid the expense and inconvenience of additional, potentially protracted litigation; and (ii) finally put to rest and terminate the Action and any and all Settled Claims as defined in Section I.O.

E.    Considering the benefits that Plaintiffs will receive from settlement of the Action and the risks of litigation, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to class members. Plaintiffs have agreed that Defendants shall be released from the Settled Claims pursuant to this Agreement; and have agreed to dismissal with prejudice of all Settled Claims as defined in Section I.O.

NOW, THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Parties to this Agreement, through their respective attorneys, subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Parties from this Agreement, that the Settled Claims shall be compromised, settled, forever released, barred, and dismissed with prejudice, upon and subject to the following terms and conditions:

## I.    DEFINITIONS:

Wherever used in this Agreement, the following terms have the meanings set forth below:

A.    "Action" means the civil action captioned *Hernandez v. Barr*, United States District Court for the Central District of California, Case No. 5:16-cv-00620-JGB-KK.

B.    "Agreement Date" means the date this Agreement is executed by all Parties.

C.    "Complaint" means the class action complaint Plaintiffs filed on April 6, 2016.

D.    "Court" is the United States District Court for the Central District of California.

E.   "Effective Date of Settlement" or "Effective Date" means the date upon which this Agreement shall become effective, as set forth in Section VIII below.

F.   "Plaintiff(s)" means Xochitl Hernandez, Cesar Matias, and the Class Members of the certified class they represent.

G.   "Class Member(s)" means individuals who are or will be detained pursuant to 8 U.S.C. § 1226(a) on a bond set by an ICE officer or immigration judge in the Central District of California.

H.   "Plaintiffs' Counsel" or "Class Counsel" means the American Civil Liberties Union ("ACLU") of Southern California, the ACLU Immigrants' Rights Project, and Skadden, Arps, Slate, Meagher & Flom LLP.

I.   "Defendants" means William P. Barr, Attorney General, James McHenry, Director, EOIR, Chad F. Wolf, Acting Secretary, DHS, Matthew T. Albence, Deputy Director and Senior Official Performing the Duties of the Director, ICE, David Marin, Field Office Director, Los Angeles Field Office of ICE Enforcement and Removal Operations, and James Janecka, Warden, Adelanto Detention Facility, and their predecessors and successors.

J.   "District" means the Central District of California.

K.   "Final Approval Hearing" means a hearing set by the Court to (i) determine the fairness, adequacy, and reasonableness of the Agreement; (ii) determine that the Agreement and associated Settlement satisfy all requirements of Federal Rule of Civil Procedure 23, and all other applicable law; (iii) resolve any objections to the Settlement; and (iv) enter the Final Approval Order and Judgment.

L.   "Final Approval Order" means the Final Approval Order attached hereto as Exhibit 1, which the parties shall file with the Court pursuant to Section VII.E.

M.   "Final Approval Order and Judgment" means the Final Approval Order along with the Court's entry of judgment in this Action.

N.   "Notice Date" means the date that notice is provided to Class Members pursuant to Section VII.B.

O.   "Settled Claims" means all claims for declaratory and injunctive relief that were asserted, or could have been asserted, by Plaintiffs on behalf of themselves and the Class Members in this Action based on the facts and

circumstances alleged in the Complaint, including but not limited to claims that Defendants' alleged failure to consider Class Members' ability to pay and alternative conditions of release, in violation of Class Members' constitutional rights under the Due Process Clause of the Fifth Amendment, the Equal Protection Clause of the Fifth Amendment, the Excessive Bail Clause of the Eighth Amendment, and Class Members' statutory rights under 8 U.S.C. § 1226. "Settled claims" also includes any claim for attorneys' fees or costs related to this Action. "Settled claims" do not include any claim challenging, on an individual basis, a Class Member's detention. "Settled claims" also do not include claims unrelated to the claims asserted by Plaintiffs in this action. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (unrelated claims brought by immigration detainees in the Central District of California detained under authority of Section 1226(a)).

P.   "Settlement" means the settlement provided for in this Agreement.

## II.   RELEASE: SCOPE AND EFFECT OF RELEASE

A.   As of the Effective Date, Plaintiffs, on behalf of themselves, their heirs, executors, administrators, representatives, attorneys, successors, assigns, agents, affiliates, and partners, and any persons they represent, by operation of any final judgment entered by the Court, fully, finally, and forever release, relinquish, and discharge the Defendants of and from any and all of the Settled Claims. The Parties agree and acknowledge that this Release shall not apply to claims that arise or accrue after the termination of this Agreement, claims challenging a Class Member's ongoing detention on an individualized basis or claims unrelated to the claims asserted by Plaintiffs in this action.

B.   This Agreement is subject to and contingent upon Court approval under Rule 23(e) of the Federal Rules of Civil Procedure.

## III.   PROCEDURES FOR ICE CUSTODY DETERMINATIONS, IJ CUSTODY REDETERMINATIONS, AND APPEALS OF CUSTODY DETERMINATIONS AND REDETERMINATIONS

Defendants agree to conduct ICE custody determinations, IJ custody redeterminations, and appeals as follows:

A. <u>ICE custody determinations</u>

1. For all aliens detained under 8 U.S.C. § 1226(a) within the District who are eligible for release on bond, when setting or reviewing the terms of an alien's release, ICE will:

   i. Consider the alien's financial circumstances and financial ability to pay a bond;

   ii. Not set bond at a greater amount than necessary to ensure the alien's appearance at all future immigration proceedings, including for removal if so ordered; and

   iii. Consider whether the alien may be released on alternative conditions of release, alone or in combination with a bond, that are sufficient to mitigate flight risk.

2. This Agreement does not alter the existing process for determining whether an alien detained under § 1226(a) is eligible for release.

   i. Under the standard process, ICE must first determine whether the alien's release would pose a danger to persons or property.

      a. This Agreement does not require ICE to release any § 1226(a) detainee for whom it has determined that release would pose a danger to persons or property. *See* 8 C.F.R. § 236.1(c)(8); *Matter of Urena*, 25 I. & N. Dec. 140 (BIA 2009).

3. If ICE determines that a § 1226(a) detainee would not pose a danger to persons or property if released, ICE will then determine whether the alien is a flight risk. ICE may continue to rely on the non-exhaustive list of factors set forth in *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and any other provision of law as appropriate, to assess an alien's flight risk.

4. If ICE determines that there is a risk of flight, ICE will then determine whether there is an amount of bond, other conditions of release, or combination of bond and other conditions that would sufficiently mitigate the risk of flight.

   i. In making this determination for aliens eligible for release, ICE will consider the alien's financial ability to pay a bond and whether other

conditions of release, or a combination of a bond and other conditions, can sufficiently mitigate the risk of flight.

   ii. At a minimum, the detainee should be asked to explain his or her financial ability to pay a bond.

      a. Officers have discretion to ask any questions relevant to the detainee's financial ability to pay a bond.

      b. Any response or refusal to respond should be documented, in summary format, on the Form I-213 (Record of Deportable/Inadmissible Alien).

      c. An officer may evaluate an alien's financial circumstances based on testimony alone. However, ICE may, but need not ask, a detainee to produce documentation or other evidence if the officer determines it is necessary to evaluate a detainee's financial ability to pay a bond.

      d. ICE officers should consider the totality of the circumstances presented when determining the bond amount or other conditions of release.

5. This Agreement does not require ICE to set a bond if the ICE officer is satisfied that release on recognizance, or on alternative conditions of release, are sufficient to ensure the alien's appearance. However, if ICE sets a bond, with or without alternative conditions of release, the minimum bond amount remains the amount set by statute at 8 U.S.C. § 1226(a)(2), which is currently $1,500.

6. ICE is not required to set a bond that the alien can afford in every case.

7. ICE is not required to release any § 1226(a) detainee for whom it has determined that no bond or alternative conditions of release would be sufficient to ensure the alien's appearance.

B. EOIR custody redeterminations

1. When conducting custody redetermination hearings for aliens detained under 8 U.S.C. § 1226(a) within the District, if an immigration judge determines that the alien is eligible for release on bond, the immigration judge will:

    i.   Consider the alien's financial circumstances and financial ability to pay a bond;

    ii.   Not set bond at a greater amount than necessary to ensure the alien's appearance at all future immigration proceedings, including for removal if so ordered; and

    iii.   Consider whether the alien may be released on alternative conditions of release, alone or in combination with a lower bond, that are sufficient to mitigate flight risk.

2.   This Agreement does not alter the existing process for determining whether an alien detained under Section 1226(a) is eligible for release.[1]

    i.   Immigration settlement judges should only set a bond or consider alternative conditions of release if the immigration judge finds that the alien is not a danger to persons or property or a threat to national security. *Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

    ii.   Immigration judges may continue to rely on the non-exhaustive list of factors set forth in *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and any other provision of law as appropriate, to assess an alien's dangerousness, threat to national security, and flight risk.

    iii.   Pursuant to 8 C.F.R. 1236.1, the alien bears the burden of proving that his or her flight risk can be mitigated by an appropriate bond or conditions for release.  However, in hearings held pursuant to *Rodriguez*, *Franco-Gonzalez*, and *Casas-Castrillon* (to the extent those decisions remain good law), the government bears the burden of

---

[1] The Agreement therefore applies to both initial bond hearings conducted under § 1226(a) and bond hearings for cases of prolonged detention, authorized pursuant to *Rodriguez v. Marin*, CV-07-03239 (C.D. Cal. Aug. 6, 2013), *Franco-Gonzalez v. Holder*, CV-10-02211 (C.D. Cal. Apr. 23, 2013) and *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), to the extent these cases remain good law.

proving the individual is a flight risk or danger by clear and convincing evidence.

3. If the immigration judge determines that the alien is not a threat to national security and not a danger to persons or property, the immigration judge will then consider whether the individual is a flight risk, and if not, consider whether the alien may be released on his or her own recognizance. If the alien is determined to be a flight risk, the immigration judge will then consider whether the alien can be released on:

   i.   Alternative conditions of release without a bond;

   ii.   A bond; or

   iii.   Alternative conditions of release in combination with a lower bond.

An immigration judge has the authority to grant the alien's release on alternative conditions of release alone or in combination with a lower bond.

4. When an immigration judge decides that an alien is eligible for release on bond, he or she must affirmatively inquire into the alien's financial circumstances and make an individualized assessment of the alien's current ability to pay the bond amount to be set.

5. In assessing an alien's ability to pay, immigration judges should consider all relevant evidence in the record, including any information solicited by ICE.

6. Immigration judges may also inquire into any additional evidence presented relevant to an ability to pay, including but not limited to:

   i.   The alien's individual income and employment history;

   ii.   Income of the alien's spouse or domestic partner;

   iii.   Assets available to pay a monetary bond amount, including personal or real property in the United States or abroad;

   iv.   Other expenses, debts, or circumstances that would impair ability to pay.

7. An immigration judge may assess an alien's financial circumstances based on the alien's sworn testimony alone or, where necessary, the immigration judge may require the alien to provide corroborative evidence concerning the alien's financial circumstances. In addition to the alien's sworn testimony, other relevant evidence may include, but is not limited to:

   i. Documentation concerning the alien's (or the alien's spouse's or domestic partner's) wages, salary, or other earnings, including pay stubs, bank records, tax returns, or similar documents;

   ii. Evidence of monthly mortgage or rental payments;

   iii. Evidence of debts such as medical expenses and child-support or care expenses;

   iv. Evidence of any other assets in the United States or abroad.

8. When setting, re-determining, or reviewing the terms of any Class member's release, the immigration judge cannot set a bond at a greater amount than needed to ensure the alien's appearance. The immigration judge must also consider whether alternative conditions of supervision, alone or in combination with a lower bond, may suffice to mitigate flight risk.

9. This Agreement does not require an immigration judge to set a bond that the alien can afford. There may be limited circumstances in which the bond amount necessary to mitigate flight risk, alone or in combination with conditions of release, is more than the Class Member can afford.

10. When rendering a decision in which a bond is set, if the parties have not stipulated to the bond amount or conditions of release, the Immigration Judge should explain why, whether orally or in writing, the bond amount is appropriate in light of any evidence of the alien's financial circumstances. The Immigration Judge should also explain why he or she did or did not order alternative conditions of supervision.

i.   All bond hearings conducted pursuant to the Agreement shall be recorded and made available on the same terms as any other immigration court hearing pursuant to Defendant's policies and practices for requesting records and subject to the rules and regulations under the Privacy Act, the Freedom of Information Act, and any other law as applicable.

11.   The immigration judge is not required to release any § 1226(a) detainee for whom he or she has determined that no bond or alternative conditions of release would be sufficient to ensure the alien's appearance.

12.   Nothing in this Agreement changes the requirement that if an immigration judge sets a bond, the bond cannot be less than the amount set by statute at 8 U.S.C. § 1226(a)(2), which is currently $1,500. *See* 8 U.S.C. § 1226(a)(2).

13.   Nothing in this Agreement changes the provisions at 8 C.F.R. § 1003.19(e), which permits, after an initial bond redetermination, an alien to request in writing a subsequent bond redetermination hearing if the alien can show that his or her circumstances have changed materially since the prior bond redetermination.

i.   An alien may request a subsequent bond redetermination under 8 C.F.R. § 1003.19(e), if there has been a material change in his or her financial circumstances. Nothing in this agreement requires the immigration judge to find that any change in financial circumstances constitutes a "material" change for the purpose of 8 C.F.R. § 1003.19(e).

14.   Nothing in this Agreement changes the provisions at 8 C.F.R. § 1236.1(d)(1), (d)(2) for the amelioration of terms of release from an immigration judge or the ICE Enforcement and Removal Operations ("ERO") district director.

C.   Appeals

1.   Class Members who receive a custody or bond determination from ICE may seek review of that decision, including ICE's assessment of the alien's financial ability to pay a bond, in determining what, if any, conditions of release are necessary to mitigate flight risk and ensure the

alien's future appearance, before an immigration judge in accordance with 8 C.F.R. §§ 1003.19, 1236, and any other applicable law as appropriate.

2. Class Members may appeal an immigration judge's custody or bond determination, including an immigration judge's assessment of the alien's financial ability to pay a bond, in determining what, if any, conditions of release are necessary to mitigate flight risk and ensure the alien's future appearance, to the Board of Immigration Appeals in accordance with 8 C.F.R. §§ 1003.19, 1003.38, 1236, and any other applicable law governing appeals of bond determinations, as appropriate.

3. Nothing in this Agreement alters an alien's rights under 8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38, to appeal a bond decision by an immigration judge, or an immigration judge's order on a request for amelioration under 8 C.F.R. § 1236.1(d)(3).

## IV. IMPLEMENTATION

A. Notice and guidelines

1. Within ten (10) business days of the Effective Date, Defendants will distribute to all ICE officers who conduct initial custody determinations for Class Members in the District and to all immigration judges who conduct custody redetermination hearings for Class Members in the District guidelines and instructions, substantially in the form attached as Exhibits 2 and 3 to this Agreement, on how to conduct custody determinations or redeterminations in compliance with this Agreement.

2. Within ten (10) business days of the Effective Date, Defendants will distribute to all ICE attorneys who represent ICE in custody redetermination hearings in immigration court in the District a copy of the notice, guidelines, and instructions discussed above for their reference.

3. Within ten (10) business days of the Effective Date, Defendants will distribute a copy of the Ninth Circuit's decision, *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), the notice and the guidelines, substantially in the form attached as Exhibits 2 and 3 to this Agreement to all ICE officers who conduct initial custody determinations in the Ninth Circuit

(outside the District); all immigration judges who conduct custody redetermination hearings in the Ninth Circuit (outside the District); and all ICE attorneys who represent ICE in custody redetermination hearings in immigration court in the Ninth Circuit (outside the District).

    a.  Although the notice and guidelines are being distributed to the ICE officers, ICE attorneys, and immigration judges outside of the District, the Parties agree this Agreement only applies to Class Members detained pursuant to 8 U.S.C. § 1226(a) on a bond set by ICE or an immigration judge in the Central District of California.

B.  <u>Training</u>

    i.  ICE will conduct training for ICE officers who conduct custody determinations and EOIR will conduct training for immigration judges who conduct custody redetermination hearings for Class Members in the District. These trainings will cover the requirements of this Agreement.

    ii.  ICE will have exclusive discretion over the type, content, and frequency of trainings for ICE officers.

    iii.  EOIR will have exclusive discretion over the type, content, and frequency of trainings for immigration judges.

1.  Defendants shall produce to Plaintiffs all non-privileged portions of ICE and EOIR written training materials that cover the requirements of this Agreement that are distributed to trainees within the first six months after the Effective Date. Defendants shall produce the materials no later than seven months after the Effective Date.

C.  <u>Forms</u>

1.  Consistent with this Agreement, ICE and EOIR may, but are not required to, develop forms or worksheets for a Class Member to voluntarily complete and submit, which ICE officers or immigration judges may consider when assessing a Class Member's financial circumstances.

    i.  If ICE and/or EOIR elect to develop a form or worksheet, such forms or worksheets shall be developed under and subject to the normal agency procedures for promulgating official governmental forms.

*See, e.g.,* 44 U.S.C. § 3501 *et seq.* (Paperwork Reduction Act); 5
U.S.C. § 552a *et seq.* (Privacy Act).

## V.   REPORTING

A.   Following the Effective Date, EOIR will provide Class Counsel with the
IDNassocbond for each class member identified on ICE's class report.

B.   If EOIR ceases its monthly posting[2] of "EOIR Case Data" at justice.gov/eoir
during the reporting period under this Agreement or no longer provides all the
fields, EOIR will provide Class Counsel with reports containing the following
data fields, or their substantive equivalent if these fields change names or
cease being used in the future, for Class Members detained in the Central
District of California:

1.   Bond Charging Doc Date;

2.   Bond Update Date;

3.   Bond Update Time;

4.   Bond Input Date;

5.   Bond Input Time;

6.   Bond Base City Code;

7.   Bond Base City Name;

8.   Bond Hearing Loc Code;

9.   Bond IJ Name;

10.  Bond Dec Code;

11.  Bond Dec Date;

12.  Initial Bond Amount;

---

[2] Any delay in the posting of EOIR's monthly "EOIR Case Data" shall not be
considered a per se breach of this Agreement or require Defendants EOIR to produce
a report containing the data fields in subsection B above. The additional reporting
under subsection B above is only triggered in the event that (1) EOIR permanently
ceases to post the "EOIR Case Data," (2) delays in posting the "EOIR Case Data" for
more than three months, or (3) other prolonged delays posting the "EOIR Case Data"
without sufficient justification.

13. Bond Release Conditions Changed;

14. Bond Hearing Medium;

15. Bond Request Date;

16. Initial Bond Hearing Date;

17. Initial Bond Hearing Time;

18. New Bond Amount;

19. Bond Appeal Reserved;

20. Appeal Not Filed;

21. Bond Appeal Due Date;

22. Schedule Hearing Location;

23. Bond Type;

24. Bond Filing Method;

25. Bond Filing Party;

26. Bond Decision Due Date;

27. Charge;

28. Appl_code;

29. Appl_recd_date;

30. Appl_dec;

31. Idnproceeding;

32. Ij_code;

33. Absentia;

34. Comp_date;

35. Other_comp;

36. Dec_code;

37. Case_type;

38. Base_city_code;

39. Custody;

40. Input_date;

41. Nat;

42. Lang;

43. AttorneyAddress1;

44. AttorneyAddressCity;

45. AttorneyAddressState;

46. AttorneyAddressZip;

47. AttorneyName;

48. AttorneyPhone;

49. Asylum type;

50. Zipcode;

51. DatAppealFiled;

52. DatBIAAppeal;

53. DatBIADecision;

54. StrBIADecision;

55. Strappealtype;

56. Strfiledby;

57. Strcustody;

58. Strbiadecisiontype;

59. Strappealcategory;

60. Datattorneye27.

C.  To the extent feasible, EOIR will use best efforts to develop a database field to record non-monetary conditions of release ordered by immigration judges. Within one year after the Effective Date, EOIR shall provide a declaration from an EOIR official to Class Counsel attesting to the date that the field was added, will be added or—if EOIR determines such a field will not be added—explain what efforts were made to develop the database field and provide an

explanation as to why such a field will not be added. If such a data field is added, EOIR shall report to Class Counsel the date the field was added. Following the Effective Date, ICE will provide Class Counsel with reports containing the following data fields, or their substantive equivalent if these fields change names or cease being used in the future, for Class Members detained in the Central District of California:

1.   Alien File Number;

2.   Family Name;

3.   Given Name;

4.   DETLOC;

5.   Detention Facility Name;

6.   Detention Book In Date;

7.   Detention Book Out Date;

8.   Detention Facility Length of Stay;

9.   Detention Stay Final Release Reason;

10.  Total Length of Stay Days;

11.  Case Category;

12.  Case Status;

13.  Departed Date;

14.  Criminal Level;

15.  Apprehension Date;

16.  Processing Disposition.

D.   Because of the limitations of Defendants' databases, Defendants cannot guarantee that the data it produces contains a list of all current Class Members at a given time.

   a.  With the initial production, Defendants will provide a written explanation as to how they identified the Class members included in the data set. That explanation will be detailed enough to allow the reader to replicate the identification of class members from the full database. If

the process changes at any time with any subsequent report, Defendants will provide an updated written explanation as to how they identified Class members included in the data set.

E.  Prior to producing the data to Plaintiffs, Defendants may remove any records relating to aliens whom United States Citizenship and Immigration Services identifies as having a banner or flag based on 8 U.S.C. § 1367.

F.  Frequency of reports

   1.  Defendants will produce quarterly data reports covering four years following the Effective Date.

   2.  Each data report will cover a period of three consecutive months in the same fiscal year.

   3.  If the Court has made no findings of non-compliance by Defendants during the first three years following the Effective Date, Defendants will have no obligation to produce data reports covering the fourth year following the Effective Date.

   4.  Defendants will produce the data within four months after the three-month data period covered by the reports. However, a delay in producing the data reports shall not be considered to be a per se breach of the settlement agreement, if there are unforeseen circumstances that justify the delay.

G.  Protective order

   1.  Defendants' production of data and any documents under this settlement agreement is contingent on the Parties entering, filing, and receiving Court approval of a protective order, substantially in the form attached at Exhibit 4, governing production and use of any database records, documents, or information produced under this Agreement.

   2.  Because the database records and any documents contemplated by this Agreement may contain sensitive personally identifiable information and other sensitive information, any database records and any documents produced under this Agreement will be marked as Confidential under the protective order, and the use, dissemination, and retention of these database records will be restricted as set out in the protective order.

SETTLEMENT AGREEMENT AND RELEASE

17

## VI.   DISPUTE RESOLUTION

A.   The Court will retain jurisdiction to supervise the implementation of this Agreement or to enforce its terms, and the terms of this Agreement shall be incorporated into the Order of the Court approving the Agreement. The Parties agree to the following dispute resolution mechanisms:

1.   Should counsel for either party believe in good faith that the other party has failed to implement or comply with specific terms of this Agreement, counsel shall promptly notify counsel for the opposing side, in writing, of the specific grounds upon which non-compliance is alleged.

2.   Any allegations of violations of this Agreement must be substantiated with specific detailed information about the violations sufficient to enable the responding party to investigate and respond.

3.   The responding Party shall respond in writing within a reasonable period, but no later than thirty (30) calendar days and provide the responding Party's position and any action it has taken or intends to take to address the alleged non-compliance. The Parties shall negotiate in good faith in an effort to resolve any remaining disputes. The Parties agree to make good faith attempts to resolve the issues informally, including a good faith attempt to agree on a reasonable date by which to cure instances of non-compliance.

4.   If the Parties have exhausted the process set out in the preceding paragraph and the complaining Party believes that the alleged instances of non-compliance have not been remedied, the complaining party shall notify the responding party in writing and request that the Parties meet and confer.

5.   The Parties shall then meet and confer telephonically within fifteen (15) business days of the complaining Party's notice, or on some other mutually agreed upon date, and attempt to arrive at an amicable resolution of the dispute. If the Parties are unable to resolve the dispute informally, upon mutual agreement of the parties, the Parties may refer any unresolved dispute to a mediator agreed upon by the Parties. Any request or communication to a mediator or potential mediator to begin the

mediation process must be a joint request or communication from both Parties.

6. The Parties agree that the mediation process described in this section shall be conducted confidentially and that no public disclosure shall be made regarding the mediation process at any time before, during, or after the mediation process, except that the final result of the mediation may be disclosed. Any documents or information disclosed by either Party during the mediation process shall not be admissible in any judicial proceeding. All statements or conclusions of the mediator shall not be admissible in any subsequent judicial proceeding.

7. If the Parties do not reach resolution under the procedures of Paragraphs 1-6, either party may file a motion requesting that the Court resolve the dispute.

B. The Parties agree that any action or proceeding to enforce the terms of this Agreement shall be brought exclusively in the United States District Court for the Central District of California. The Court in this proceeding shall have the power to award such relief and issue such judgments as the Court deems proper.

C. The Parties will endeavor to avoid using the dispute resolution process set forth in this section to address allegations of temporary or *de minimis* breaches of the Agreement.

## VII. TERMS OF ORDER FOR NOTICE, HEARING, AND FINAL JUDGMENT

A. Concurrently with their filing of this Agreement, Class Counsel and Defendants' Counsel shall jointly apply to the Court for Preliminary Approval of the Settlement provided for in this Agreement and entry of a Preliminary Approval Order. Such Preliminary Approval will seek approval of a Notice to the Class substantially in the form appended hereto as Exhibit 5, as well as a finding that the following satisfies the publication requirements of Federal Rule of Civil Procedure 23.

B. Within ten (10) business days of the date of the Preliminary Approval, (i) EOIR Defendants will post the Notice to the Class and this Settlement Agreement in appropriate places on public EOIR websites; (ii) Plaintiffs will

post the Notice to the Class and this Settlement Agreement in appropriate places on the website of the ACLU of Southern California; (iii) EOIR Defendants will distribute the Notice to the Class and this Settlement Agreement to the individuals and organizations on EOIR's current List of Pro Bono Legal Service Providers in the District; (iv) Plaintiffs will distribute the Notice to the Class and this Settlement Agreement to immigration attorneys through the local American Immigration Lawyers' Association listserv; and (iv) ICE Defendants will post the Notice to the Class in all housing units in Facilities where Class Members are detained in the District for longer than 72 hours, in an area prominently visible to immigration detainees. The Notice to the Class shall remain posted, and shall be maintained or replaced with new copies as needed, until the Court issues an order finally approving or rejecting the Settlement. The Party designated above to provide notice shall bear the cost of providing that notice.

C.   A Class Member may object to the proposed Settlement or Class Counsel's application for an award of attorneys' fees by filing a written objection with the Court.

D.   The Parties shall request that Class Members be provided at least thirty (30) days to submit objections to the Court after the Notice to the Class is posted.

E.   If the Settlement contemplated by this Agreement is approved by the Court, counsel for the Parties shall request that the Court enter a Final Approval Order and Judgment substantially in the form appended hereto as Exhibit 1.

F.   Within ten (10) business days following the Court's entry of the Final Approval Order and Judgment, ICE shall provide the Notice of Final Settlement in English and Spanish, substantially in the form appended hereto as Exhibit 6, by posting it in all housing units in the Facilities where Class Members are housed for longer than 72 hours, in an area prominently visible to immigration detainees. The Notice of Final Settlement shall remain posted, and shall be maintained or replaced with new copies as needed, for one year following the Effective Date.

G.   Should the Court enter an order preliminarily approving the settlement that is different from the Preliminary Approval Order, attached as Exhibit 7, or an order finally approving the settlement that is different from the Final Approval

Order, attached as Exhibit 1, the Parties shall meet and confer in good faith regarding the differences and shall either accept the Court's orders as written or use their best efforts to undertake whatever efforts are necessary to obtain Court orders satisfactory to both Parties.

## VIII.  EFFECTIVE DATE OF SETTLEMENT; TERMINATION

A.   The Effective Date shall be the date when all of the following shall have occurred: (a) entry of the Preliminary Approval Order; (b) approval by the Court of this Agreement, following notice to the Class and a fairness hearing, as prescribed by Federal Rule of Civil Procedure 23; and (c) entry by the Court of Final Judgment, in all material respects in the form appended hereto as Exhibit 1.

B.   If the Court does not approve the Agreement, or the Court's approval of the Agreement or the Final Judgment is reversed, vacated, or terminated, on appeal, the Parties' good-faith adherence to the terms of this Agreement prior to reversal, vacatur, or termination shall not be considered unlawful.

C.   Defendants or Plaintiffs shall have the right to terminate this Agreement  if (a) the Court's declines to enter the Preliminary Approval Order or modifies that Preliminary Approval Order in any material respect; (b) the Court declines to approve the Settlement embodied in this Agreement or any material part of it; (c) the Court's declines to enter the Final Judgment or modifies the Final Judgment in any material respect; or (d) the Court of Appeals or the United States Supreme Court's reverses, vacates, or modifies in any material way the Final Judgment.  Notice of termination must be provided in writing ("Termination Notice") to all other Parties and within thirty (30) days of the event triggering the right to terminate.

D.   Except as otherwise provided herein, if the Settlement is terminated or modified in any material respect or fails to become effective for any reason, then the Settlement shall be without prejudice and none of its terms shall be effective or enforceable; the Parties to this Agreement shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the Agreement Date; and except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. If the Settlement is terminated or modified

in any material respect, the Parties shall be deemed not to have waived, not to have modified, or not to be estopped from asserting any additional defenses or arguments available to them.

## IX.  TERMINATION OF OBLIGATIONS

Unless earlier terminated by operation of Section VIII.C, the obligations of this Agreement shall terminate five (5) years from the Effective Date.

## X.  NO ADMISSION OF WRONGDOING

A.  This Agreement, whether or not executed, and any proceedings taken pursuant to it:

1.  Shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against Class Members, consistent with the Constitution and laws of the United States, and applicable regulations;

2.  Shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by the Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing of the Defendants; or any admission by the Defendants of any violations of, or failure to comply with, the Constitution, laws or regulations; and

3.  Shall not be offered or received against the Defendants as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any substantive rights or causes of action against any of the Parties to this Agreement, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, Defendants may refer to it and rely upon it to effectuate the liability protection granted them hereunder.

SETTLEMENT AGREEMENT AND RELEASE

22

## XII.   ATTORNEYS' FEES AND COSTS

A.   When Parties jointly request that the Court enter the Final Approval Order and
Judgment, Class Counsel shall also file a separate written motion for Court
approval of attorneys' fees and costs. Class Counsel shall seek Court approval
of a fee award in the sum of $1,600,000.00 and costs up to the sum of
$ 148,975.72. Defendants shall not oppose Class Counsel's motion for fees
and costs in those amounts.

B.   Upon approval of Class Counsel's motion for fees and costs, and within 60
days of the Effective Date, Defendants shall pay to Class Counsel the sum of
$1,600,000.00 to settle and resolve any claims by Plaintiffs or Class Counsel
for attorneys' fees related to this Action under the Equal Access to Justice Act,
28 U.S.C. § 2412, or any other statute.

   1.   Defendants shall deliver this payment by direct wire transfer into Class
   Counsel's designated account. Class Counsel shall provide Defendants all
   information necessary to accomplish the direct wire transfer within five
   days of the Effective Date.

C.   Separately, Defendants agree to submit Plaintiffs' request for $ 148,975.72 in
costs to the Bureau of the Fiscal Service within 10 days of the Effective Date
for payment from the Judgment Fund of whatever portion of Plaintiffs' cost
request the Bureau determines is reimbursable as taxable costs under 28
U.S.C. § 1920. *See* 28 U.S.C. §§ 2412, 2414; 31 U.S.C. § 1304. Such payment
shall settle and resolve any claims by Plaintiffs or Class Counsel for costs
related to this Action under 28 U.S.C. § 2412.

D.   The Parties agree to this settlement of attorneys' fees and costs to avoid
further litigation and the costs and risks associated with litigating a request for
fees and costs.

E.   Plaintiffs and Class Counsel, on behalf of themselves, their heirs, executors,
administrators, representatives, attorneys, successors, assigns, agents,
affiliates, and partners, and any persons they represent, by operation of any
final judgment entered by the Court, fully, finally, and forever release,
relinquish, and discharge the Defendants of and from any and all claims for
attorneys' fees and costs related to this Action.

# XIII.  ADDITIONAL PROVISIONS

A.   This Agreement, and the obligations incurred herein, shall be in full and final disposition of the Action with prejudice, including any and all Settled Claims against Defendants. On the date the Court issues the Final Approval Order and Judgment, Plaintiffs shall be deemed to have fully, finally, and forever released, relinquished, and discharged Defendants of and from any and all Settled Claims.

B.   All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

C.   This Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Action, and no representations, warranties, or inducements have been made by any party hereto other than those contained and memorialized in such documents.

D.   This Agreement may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all parties hereto or their successors-in-interest.

E.   This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the parties to this Agreement shall exchange among themselves original signed counterparts.

F.   This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

G.   The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

H.   This Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized by the Parties that this Agreement is the result of negotiations between the Parties and that all Parties have contributed substantially and materially to the preparation of this Agreement.

I.   All counsel and any other person executing this Agreement and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken under the Agreement to effectuate its terms.

J.   Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of this Agreement and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

For and on behalf of Defendants:

EXECUTED this 25th day of October, 2021.

_/s/ Brian Ward_____

**BRIAN C. WARD**
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-9121
(202) 305-7000 (fax)
brian.c.ward@usdoj.gov

**Counsel for Defendants**

SETTLEMENT AGREEMENT AND RELEASE

25

For and on behalf of Plaintiffs and the Class:

EXECUTED this 25th day of October, 2021.

 /s/ Michael Kaufman
**MICHAEL KAUFMAN**
American Civil Liberties Union
of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232
(213) 915-0219 (fax)
mkaufman@aclusocal.org

**Counsel for Plaintiffs**